UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND, LONDON, AND LEXINGTON DIVISIONS

IN RE:                                                         CHAPTER 11

LICKING RIVER MINING, LLC, *et al.*                            CASE NO. 14-10201

       DEBTORS IN POSSESSION                                   JOINTLY ADMINISTERED

---

**DEBTORS' MOTION FOR AN ORDER (A) APPROVING BIDDING PROCEDURES
AND RELATED DEADLINES; (B) SCHEDULING DATE AND TIME FOR SALE
HEARING; (C) APPROVING FORM AND MANNER OF NOTICE OF SAME;
(D) APPROVING FORM AND MANNER OF NOTICE OF PROPOSED ASSUMPTION
AND ASSIGNMENT OR REJECTION OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND RELATED CURE CLAIMS; AND (E) APPROVING
SHORTENED NOTICE AND EXPEDITED HEARING ON THE SAME**

---

Come Licking River Resources, Inc., Licking River Mining, LLC, S. M. & J., Inc., J.A.D.

Coal Company, Inc., Fox Knob Coal Co., Inc., U.S. Coal Corporation, Harlan County Mining,

LLC, Oak Hill Coal, Inc., Sandlick Coal Company, LLC, and U.S. Coal Marketing, LLC, as

debtors and debtors in possession (collectively, the "Debtors"), by counsel, and pursuant to

11 U.S.C. §§ 105, 363, 365, and all other applicable law, hereby move the Court for entry of an

Order (the "Bidding Procedures Order"): (A) approving bidding procedures and related

deadlines; (B) scheduling the date and time for a final sale hearing; (C) approving the form and

manner of service of notice of the sale hearing, bidding procedures, and deadlines pursuant to

Fed. R. Bankr. P. 2002, 6004, and 6006; (D) approving the form and manner of service of notice

of the proposed assumption and assignment or rejection of certain executory contracts and

unexpired leases and related procedures for determination of cure claims; and (E) approving

shortened notice and expedited hearing on the same (the "Bidding Procedures Motion" or

"Motion"). In support of this Motion, the Debtors respectfully state as follows:

1

## JURISDICTION AND VENUE

1.      On May 22, 2014, an involuntary petition seeking relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") was filed against Licking River Mining, LLC ("LR Mining").  On May 23, 2014, involuntary petitions seeking relief under Chapter 11 of the Bankruptcy Code were filed against Licking River Resources, Inc. ("LRR") and Fox Knob Coal Co., Inc. ("Fox Knob").  On June 3, 2014, an involuntary petition seeking relief under Chapter 11 of the Bankruptcy Code was filed against S. M. & J., Inc. ("SM&J").  On June 4, 2014, an involuntary petition seeking relief under Chapter 11 of the Bankruptcy Code was filed against J.A.D. Coal Company, Inc. ("JAD," and with LR Mining, LRR, Fox Knob, and SM&J, the "Subsidiary Debtors").  On June 10, 2014, an involuntary petition seeking relief under Chapter 11 of the Bankruptcy Code was filed against U.S. Coal Corporation ("U.S. Coal").[1]

2.      On June 12, 2014, the Court entered an order for relief in each of the Subsidiary Debtors' bankruptcy cases.  On June 27, 2014, the Court entered an order for relief in U.S. Coal's bankruptcy case.

3.      On June 13, 2014, the Court entered an Order [Doc 91] directing the joint administration of the Subsidiary Debtors' bankruptcy cases.  On June 27, 2014, the Court entered an Order [U.S. Coal Doc 48] directing that the bankruptcy case of U.S. Coal be jointly administered with the Subsidiary Debtors' bankruptcy cases.  On November 19, 2014, the Court entered an Order [Doc 658] directing that the bankruptcy cases of Harlan County Mining, LLC ("Harlan"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company, LLC ("Sandlick"), and

---

[1] Hereinafter, the Subsidiary Debtors and U.S. Coal are collectively referred to as the "Original Debtors."

U.S. Coal Marketing, LLC ("USCM," and collectively with Harlan, Oak Hill, and Sandlick, the "Additional Debtors") be jointly administered with the Original Debtors' bankruptcy cases.

4.     No trustee or examiner has been appointed in the Chapter 11 cases of any of the Debtors.  An Official Committee of Unsecured Creditors (the "Committee") was appointed in the Original Debtors' bankruptcy cases on June 18, 2014 [*See* Doc 145].

5.     On September 15, 2014, the Committee filed a Motion [Doc 468] requesting, among other things, that the Court compel the Original Debtors to file Chapter 11 petitions for the Additional Debtors, which are subsidiaries of U.S. Coal.

6.     On October 27, 2014, the Court entered an Order [Doc 574] that authorized, compelled, and directed the Original Debtors to file Chapter 11 petitions for the Additional Debtors.  On November 4, 2014, voluntary Chapter 11 petitions were filed for each of the four Additional Debtors as directed by the Court.

7.     The Debtors all continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

8.     This Court has jurisdiction over all of the Debtors' Chapter 11 cases under 28 U.S.C. §§ 157 and 1334.   This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (M), and (O).

9.     The Debtors all maintain their principal places of business in Fayette County, Kentucky.  Accordingly, venue for all of the Debtors' Chapter 11 cases is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

10.     Information regarding the Debtors' businesses and operations can be found in the Declaration of John Collins in Support of the Debtors' First Day Pleadings [Doc 13], the

3

Declaration of John Collins Regarding the Motion of the Official Committee of Unsecured Creditors for an Order Compelling the Debtors to File Chapter 11 Petitions for Non-Debtor Subsidiaries [Doc 542] and the Declaration of John Collins in Support of the First Day Pleadings of the Additional Debtors, each of which is fully incorporated herein by reference.

### The JAD Debtors' Assets

11.     The JAD Debtors'[2] assets (the "JAD Assets" or "Assets") are primarily comprised of all the real and personal property of such Debtors including equipment, real estate, coal reserves, and executor contracts.  A schedule of the JAD Assets is annexed hereto as Exhibit 1.  The contemplated Sale Process (as defined below) would include assumption and assignment of the unexpired non-residential real property leases (each an "Unexpired Lease") and equipment leases (the "Equipment Leases" and with the Unexpired Leases, the "Leases") connected with each of the three Debtors' operations, as well as assumption and assignment of the JAD Debtors' executor contracts (each, and "Executory Contract"), with Qualified Bidders(s) selecting the Leases and/or Executory Contracts that they would seek to be assigned along with the JAD Assets.  Any assumption and assignment of the Leases and/or executor Contracts is subject to payment of all Court-determined Allowed Cure Amounts[3] (as described below) and consideration of any objections to assumption and assignment filed by any party to the Leases and/or Contracts.

12.     The Debtors believe that a sale procedure for selling the JAD Debtors' Assets as described herein as a going concern, including the consideration of assumption and assignment, or rejection, of certain executory contracts and unexpired leases (collectively, the "Sale

---

[2]     JAD, Fox Knob, and Sandlick Coal Company, LLC are collectively referred to herein as the "JAD Debtors."

[3]     All capitalized terms used herein and not otherwise defined have the meaning given to them in the Bidding Procedures attached to the Bidding Procedures Order as Exhibit A or, if not defined in Exhibit A, then as defined in the Bankruptcy Code, unless the context clearly requires otherwise.

Process"), is in the best interest of the Debtors' estates.  After extensive analysis, it appears that

the JAD Debtors will experience significant operational losses in the upcoming months due to

increased mining costs as a result of certain geological issues and a weakening coal market.

13.     Accordingly, the Debtors now seek to sell the JAD Debtors as a going concern.

However, to the extent such efforts are unsuccessful, the Debtors would propose to also seek

bids on subsets of the JAD Debtors' assets.

14.     In the exercise of their business judgment, the Debtors believe that a

going-concern Sale Process will maximize the value of the JAD Debtors' operations for the

benefit of the respective Estates, creditors, and all other stakeholders.  The Debtors have engaged

in extensive marketing of their assets in anticipation of this Sale Process.  The Debtors and their

advisors have contacted approximately two dozen parties who would potentially have an interest

in all or some of the JAD Debtors and/or all of the Debtors' assets.  The Debtors have executed

non-disclosure agreements with approximately one dozen parties.   Although none of these

discussions have resulted in a formalized offer at this time, the Debtors believe there is sufficient

interest in the JAD Debtors' assets to justify an orderly sale at this time.  Delaying this process

will only lead to additional administrative expense costs without a likelihood of realizing

additional value.

15.     The Debtors believe that they will generate interest and receive offers to purchase

substantially all of the JAD Debtors' assets as a going concern through the Sale Process.  The

Debtors, with the advice of their professionals, believe that time is of the essence in proceeding

with a going concern Sale Process at this time on an expedited basis.  As set forth below, in the

event that the Debtors are unsuccessful in achieving a going concern sale for the JAD Debtors'

assets, the Debtors would propose that they sell the JAD Debtors' Assets on a piecemeal basis to maximize the value of those assets for the respective Estates.

## LIENS AFFECTING THE ASSETS

16.    The liens and encumbrances on the JAD Assets, other than those held by equipment lenders, can generally be described as follows:

## JAD Sellers

17.    Aubra Paul Dean, Carl E. McAfee, Julia McAfee (the "JAD Sellers") received a portion of the purchase price for the sale of the JAD Debtors to U.S. Coal in the form of notes, which were subsequently amended and restated as part of the 2011 Refinancing:

- Second Amended and Restated Convertible Note, dated December 7, 2011, of J.A.D. Coal Company, Inc., in the original principal amount of $2,852,578, held by the estate of Aubra Paul Dean ("Dean JAD Seller Note");

- Second Amended and Restated Convertible Note, dated December 7, 2011, of J.A.D. Coal Company, Inc., in the original principal amount of $2,852,578, held by Carl E. McAfee and Julia McAfee as tenants by the entirety ("McAfee JAD Seller Note");

- Second Amended and Restated Promissory Note, dated December 7, 2011, of J.A.D. Coal Company, Inc., in the original principal amount of $500,000, held by the estate of Aubra Paul Dean ("Dean Value Differential Note"); and

- Second Amended and Restated Promissory Note, dated December 7, 2011, of J.A.D. Coal Company, Inc., in the original principal amount of $500,000, held Carl E. McAfee and Julia McAfee as tenants by the entirety ("McAfee Value Differential Note").

18.    The Dean JAD Seller Note and the McAfee JAD Seller Note are secured by a first priority lien (subject to those of Existing Lenders (as defined below), to the extent still existing)

on the assets of, and stock/interests of, the companies constituting the JAD Debtors pursuant to

the following agreements:[4]

- Security Agreement, dated April 15, 2008, among JAD, Sandlick, Fox Knob, Carl and Julia McAfee and Aubra Paul Dean (granting a security interest in equipment and interests in real estate); and

- Security Agreement, dated April 15, 2008, among the Companies, Carl and Julia McAfee, and Aubra Paul Dean (granting a security interest in the stock/interests of the JAD, Fox Knob, and Sandlick subsidiaries).

### East Coast Miner LLC

19.     The Debtors are parties to the following credit agreement and note with East

Coast Miner LLC ("ECM I"):

- Second Amended and Restated Credit Agreement, dated August 29, 2008, among U.S. Coal, as borrower, LRR, LR Mining, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan, and USCM, as guarantors, Wilmington Trust Company ("WTC"), as collateral agent, and ECM I, as lender, subsequently assigned to ECM I (as amended, the "ECM I Credit Agreement"); and

- Amended and Restated Secured Note, dated September 30, 2009, made by U.S. Coal in favor of ECM I in the original principal amount of $24,018,269.60 (the "ECM I Note").[5]

20.     The Debtors are parties to the following security agreements under the ECM I

Credit Agreement:  (i) Amended and Restated Security Agreement, dated August 29, 2008, made

by U.S. Coal, LRR, LRM, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan and USCM, as

grantors, in favor of WTC, as collateral agent (as amended, the "ECM I Security Agreement");

and (ii) certain mortgages and deeds of trust.

---

[4]     The Dean Value Differential Note and the McAfee Value Differential Note are unsecured.

[5]     The note that eventually became the EMC I Note was originally issued in the face amount of $13 million pursuant to a secured note with Fursa Alternative Strategies, LLC.  The principal amount grew to $24 million as a result of a series of refinancings.

21.     Pursuant to the ECM Security Agreement, each grantor granted WTC, as collateral agent, a security interest in all of its rights, title and interest in and to all of its property and assets, whether then owned or thereafter acquired.

22.     The security interests of ECM I in the assets and stock/interests of the entities in the JAD Division are subject to the JAD Intercreditor Agreements (as defined below).

### East Coast Miner II LLC

23.     The Debtors are parties to the following credit agreement and note with East Coast Miner II LLC ("ECM II"):

- Credit Agreement, dated December 7, 2011, among U.S. Coal, JAD, Sandlick and Fox Knob, as borrowers, LRR, Oak Hill, SM&J, LR Mining, Harlan, and USCM, as guarantors, WTC, as collateral agent, and ECM II, as lender (the "ECM II Credit Agreement");

- Secured Note, dated December 7, 2011, made by U.S. Coal in favor of ECM II in the original principal amount of $1,322,406.38; and

- Secured Note, dated December 7, 2011, made by JAD, Sandlick and Fox Knob in favor of ECM II in the original principal amount of $5,407,016.22.

24.     The Debtors are parties to the following security agreements under the ECM II Credit Agreement: (i) Security Agreement, dated December 7, 2011, made by U.S. Coal, LRR, LRM, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan, and USCM, as grantors, in favor of WTC, as collateral agent (as amended, the "ECM II Security Agreement"); and (ii) certain mortgages and deeds of trust.

25.     Pursuant to the ECM II Security Agreement, each grantor granted WTC, as collateral agent, a security interest in all of its rights, title and interest in and to all of its property and assets, whether then owned or thereafter acquired.

26.    The security interests of ECM II in the assets and stock of the JAD Division are subject to the 2011 Stock Intercreditor Agreement and the 2011 Asset Intercreditor Agreement (as defined below).

### Dean McAfee Holdings, LLC

27.    At the time of the 2011 Refinancing, the Debtors required an additional $975,027.66 which was lent by Dean McAfee Holdings, LLC pursuant to a Note, dated December 7, 2011, by JAD to Dean McAfee Holdings, LLC, in the original principal amount of $975,027.66 (the "McAfee Note").

28.    Pursuant to the McAfee Note, a security interest in the assets of JAD, Fox Knob, and Sandlick, and in the stock and membership interests of these entities, was granted pursuant to (i) Security Agreement, dated December 7, 2011, among JAD, Fox Knob, Sandlick, and Dean McAfee Holdings, LLC; and (ii) Security Agreement, dated December 7, 2011, between U.S. Coal and Dean McAfee Holdings, LLC.

29.    Pursuant to the JAD Intercreditor Agreements (as defined below), the security interests were granted the same priority as those of the original notes of the JAD Sellers pursuant to the sale of the JAD Division to U.S. Coal.

### Goodwin and Goggin Secured Notes

30.    U.S. Coal also has the following outstanding secured notes in favor of Keith Goggin and Michael Goodwin:  (i) Third Amended and Restated 12% Secured Note due October 31, 2014, dated February 1, 2013, by U.S. Coal in favor of Keith Goggin in the aggregate principal amount of $1,097,620.03 (the "Goggin Note") and (ii) Third Amended and Restated 12% Secured Note due October 31, 2014, dated February 1, 2013, by U.S. Coal in favor of Michael Goodwin in the aggregate principal amount of $1,097,620.03 (the "Goodwin Note").

31.     The Goggin Note and the Goodwin Note are secured by liens on certain equipment and real estate of U.S. Coal and its subsidiaries pursuant to the following security agreements: (i) Security Agreement, dated as of February 1, 2013, made by U.S. Coal, JAD, Sandlick, Fox Knob, LRR, Oak Hill, SM&J, LR Mining, Harlan and USCM in favor of WTC, as collateral agent for Keith Goggin; (ii) Security Agreement, dated as of February 1, 2013, made by the Company, JAD, Sandlick, Fox Knob, LRR, Oak Hill, SM&J, LR Mining, Harlan and USCM in favor of WTC, as collateral agent for Michael Goodwin; and (iii) certain mortgages and deeds of trust.

32.     The Goggin Note and the Goodwin Note are not subject to any of the intercreditor agreements discussed below.

33.     The McAfees, Dean, and McAfee Holdings are collectively referred to herein as the "JAD Lenders."  ECM I, ECM II, Goggin, and Goodwin are collectively referred to herein as the "Licking River Lenders," and collectively with the JAD Lenders, the "Pre-Petition Lenders."

## Pryor Cashman Note

34.     In connection with a dispute related to legal fees incurred prior to the Relief Date, the Company and Pryor Cashman entered into that certain Settlement Agreement, dated March 4, 2013 (the "Pryor Cashman Settlement").  Pursuant to the Pryor Cashman Settlement, as part of the settlement for legal fees, pursuant to an arbitral award, the Company entered into the Secured Promissory Note, dated March 4, 2013, by the Company to Pryor Cashman, in the original principal amount of $2,204,714.13.

35.     Pursuant to a Security Agreement (the "Pryor Cashman Security Agreement") of even date with the Pryor Cashman Settlement, among the Company, LRR, Oak Hill, SM&J, LR Mining, JAD, Sandlick, Fox Knob and Pryor Cashman, the grantors granted a security interest to

Pryor Cashman in specified collateral including all personal and fixture property, all deposit accounts, all commercial tort claims, securities and all other investment property and general intangibles. The security interest granted under the Pryor Cashman Security Agreement is subordinate to the security interests that existed as of February 18, 2013 (which would include the interests discussed above), security interests that come into existence by no action of the grantors subsequent to such date, and purchase money security interests.

**Intercreditor Agreements**

36. The assets of the entities comprising the JAD Division (the "JAD Entities") are subject to two sets of intercreditor agreements, setting forth the priority among the different creditors:

- First Amended and Restated Intercreditor and Subordination Agreement, dated September 30, 2009, among JAD, Sandlick, Fox Knob, Aubra Paul Dean, Carl E. McAfee, Julia McAfee, CAMOFI Master LDC ("CAMOFI"), as agent for certain lenders, ECM I and WTC as collateral agent ("Prior Asset Intercreditor Agreement"); and

- Intercreditor and Subordination Agreement (Assets), dated December 7, 2011, among JAD, Sandlick, Fox Knob, ECM II, the JAD Sellers, Dean McAfee Holdings, LLC, ECM I and Wilmington Trust Company ("WTC") as collateral agent under the ECM I Credit Agreement and the ECM II Credit Agreement ("2011 Asset Intercreditor Agreement").

37. Additionally, the stock/membership interests of the JAD Entities are subject to two sets of intercreditor agreements, setting forth the priority among the different creditors:

- The Intercreditor and Subordination Agreement, dated April 15, 2008, among U.S. Coal, the JAD Sellers, CAMOFI, as agent for certain lenders, ECM I, as successor to JMB Capital Partners Master Fund, L.P., and Merrill Lynch Commodities, Inc. ("Prior Stock Intercreditor Agreement"); and

- Intercreditor and Subordination Agreement (Stock), dated December 7, 2011, among the Company, the JAD Sellers, ECM II, ECM I and WTC as collateral agent under the ECM I Credit Agreement and the ECM II Credit Agreement ("2011 Stock Intercreditor Agreement" and collectively with the Prior Asset Intercreditor

Agreement, Prior Stock Intercreditor Agreement, and the 2011 Intercreditor Agreement, the "JAD Intercreditor Agreements").

38.    The JAD Intercreditor Agreements divide the assets of the JAD Entities in existence as of April 15, 2008 (the "JAD Acquisition Date") into the following categories (which correspond to the defined terms used in the JAD Intercreditor Agreements and are collectively defined as the "JAD Collateral"):

- Existing Lender Collateral (i.e., all equipment and interests in real property owned by the JAD Entities on the JAD Acquisition Date subject to the liens of First Tennessee National Bank, CIT Financial, Powell Valley National Bank and their assigns (collectively, the "Existing Lenders")  and on which the JAD Sellers were granted a second lien security interest);

- Unencumbered Collateral (i.e., all equipment, fixtures and other personal property and coal reserves owned on the by the JAD Entities on the JAD Acquisition Date not subject to a security interest of any third party and on which the JAD Sellers were granted a first lien security interest); and

- Other Collateral (i.e., the right to receive a first lien security interest in the Existing Lender Collateral after repayment in full of debt held by Existing Lenders other than First Tennessee National Bank).

The respective categories are further subdivided into the following categories of collateral (which correspond to the defined terms used in the Prior Asset Intercreditor Agreement):

- Encumbered Centrecourt  Collateral (i.e., the portion of the Existing Lender Collateral in which CAMOFI has a security interest;

- Unencumbered Centrecourt  Collateral (i.e., the portion of the Unencumbered Collateral and Other Collateral in which CAMOFI has a security interest);

- Encumbered ECM Collateral (i.e., all Existing Lender Collateral other than Encumbered Centrecourt  Collateral); and

- Unencumbered ECM Collateral (i.e., all Unencumbered Collateral and all Other Collateral other than Unencumbered Centrecourt Collateral).

39.     The respective priorities of each of the lenders can be summarized as follows:

| Existing Lender Collateral | Encumbered Centrecourt Collateral | 1. Existing Lenders<br>2. JAD Sellers<br>WTC as collateral agent for ECM I and ECM II |
| --- | --- | --- |
| | Encumbered ECM Collateral | 1. Existing Lenders<br>2. JAD Sellers<br>WTC as collateral agent for ECM I and ECM II |
| Unencumbered Collateral; Other Collateral | Unencumbered Centrecourt Collateral | 1. JAD Sellers<br>2. WTC as collateral agent for ECM I and ECM II |
| | Unencumbered ECM Collateral | 1. JAD Sellers<br>2. WTC as collateral agent for ECM I and ECM II |
| JAD Wash Plant | 1. JAD Sellers<br>2. WTC as collateral agent for ECM I and ECM II | |

40.     In addition to the security interests described above, WTC, as collateral agent for ECM I and ECM II, has a security interest in substantially all of the assets of the JAD Entities that are not otherwise part of the JAD Collateral.

41.     Under the 2011 Stock Intercreditor Agreement, the priority of the lenders as to their respective security interests in the stock/membership interests of the JAD Entities are:  first, JAD Sellers and Dean McAfee Holdings, LLC, WTC as collateral agent for ECM I; and third, WTC as collateral agent for ECM II.

42.     The Licking River Lenders and the JAD Sellers shall be entitled to credit bid all or a portion of their respective claims against the JAD Debtors, without otherwise complying with the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

43.     Except as otherwise provided in the Successful Bidder's APA and subject to the approval of the Bankruptcy Court, all of JAD Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of all liens, claims, rights, interests, and encumbrances to the maximum extent permitted by 11 U.S.C. § 363, with such all liens, claims, rights, interests, and encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such all liens, claims, rights, interests, and encumbrances applied against the Assets.  The Debtors shall hold such proceeds in escrow and shall not be entitled to use such proceeds without the consent of the Licking River Lenders or the JAD Lenders, as applicable, or further order of the Court.

**RELIEF REQUESTED**

44.     The Debtors intend to sell substantially all of the JAD Debtors' Assets as a going-concern operation, including assumption and assignment of any related unexpired Leases and/or Contracts, to the highest or best bidder(s) through the Sale Process, pursuant to 11 U.S.C. §§ 363 and 365.  The Debtors believe that a sale as a going concern is in the best interests of the Debtors, their estates, creditors, employees, lessors, contract parties, and all other interested parties.

45.     In the event, however, that the Debtors are not able to sell the JAD Debtors' Assets as a going concern, the Debtors intend to sell those assets through an orderly piecemeal liquidation to maximize value for these estates and their constituents.

46.     By this Motion, the Debtors seek entry of the Bidding Procedures Order (the proposed form of which has been tendered herewith), which will, among other things: (A) establish the Bidding Procedures that will govern the Sale Process and deadlines for both as a going concern sale and as a piecemeal liquidation; (B) schedule the date(s) and time(s) for

14

hearing (the "Sale Hearing") to approve the sale of substantially all of the JAD Debtors' Assets (the "Sale") to the Qualified Bidder(s) that submit the Qualified Bid(s) that are deemed the highest and best bids (the "Successful Bidder(s)") to be submitted by the filing of subsequent motions (the "Sale Motions"); (C) approve the proposed form of and service of notice (the "Bidding Procedures Notice") for the Bidding Procedures process to all creditors, parties in interest and known prospective interested bidders; and (D) approve the form of and service of notice related to the assumption and assignment of certain unexpired leases and executory contracts and the process for determining Allowed Cure Claims and objections regarding assumption and assignment (the "Cure Claim Notice").

47.    The JAD Debtors believe that they can continue ordinary course operations of their businesses through:  (i) the use of existing cash flow and (ii) access to debtor in possession financing on the terms set forth in the financing Motion that was filed in these cases [Doc 668] until a sale is completed.

## BIDDING PROCEDURES

48.    As further described in the proposed Bidding Procedures (defined below), the Debtors anticipate filing a Sale Motion with Successful Bidder(s), on or before **February 9, 2015**, to seek approval of entry of a Sale Order permitting the Debtors to, among other things, consummate the sale of the JAD Debtors' Assets to a Successful Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 365(b) and (f). Under the Sale Order, the Debtors will also seek approval pursuant to 11 U.S.C. § 365 to assume and assign to the Successful Bidder(s) the Executory Contracts and Unexpired Leases that such Successful Bidder(s) has indicated it wants to take pursuant to 11 U.S.C. § 365.

49.    To ensure that the Debtors have maximized the value of the Assets, the Debtors propose certain bidding procedures and related deadlines (the "Bidding Procedures").  The

proposed Bidding Procedures are described in detail in <u>Exhibit A</u> to the proposed Bidding

Procedures Order, and are incorporated herein by reference.[6]

50.    To summarize, and as described in greater detail in the proposed Bidding

Procedures Order, the Debtors propose, in consultation with the Licking River Lenders, JAD

Lenders, and the Committee, to solicit parties to serve as, and to thereafter designate, Bidder(s)

for substantially all of the JAD Debtors' Assets on either a going concern or piecemeal basis.

The Debtors have had extensive discussions and negotiations with numerous parties expressing

interest in purchasing some or all of the JAD Debtors' Assets, and believe that there are parties

who intend to submit written offers in this Sale Process.

51.    The Debtors seek a Bidding Procedures Order that sets a deadline to submit all

final written proposed Bid(s) for any or all of the JAD Debtors' Assets by a deadline of

**January 21, 2015**.  While this is a short time frame, because of the extensive marketing in the

past and the degree to which prospective bidders are currently familiar with the JAD Debtors'

Assets, the Debtors believe that this time frame for final written offers is realistic and warranted.

The Debtors will thereafter identify and designate the best and highest bid (the "<u>Initial Bid</u>"), all

subject to higher and better offers and further approval by the Court at a Sale Hearing, and will

file a notice identifying the assets to be transferred and all material terms of the transaction (the

"<u>Initial Bid Notice</u>") on or before **January 26, 2015.**  The Debtors will thereafter hold an auction

on **February 2, 2015** at a location and time to be determined (the "<u>Auction</u>").  On or before

**February 9, 2015**, the Debtors will file a motion to seeking to approve the sale of the JAD

Debtors' assets to the bidder(s) with the highest and best bid(s) (the "<u>Successful Bidder(s)</u>") at

---

[6]    The Debtors would request that in light of the expedited nature of this process, that they be given the ability to amend or alter the sales process, bid requirements, auction procedures and/or timing, in consultation with the Committee, the Licking River Lenders, and JAD Lenders, without further order of the Court, in order to maximize the returns realized by any such sale.

the Auction (whether on a going concern or piecemeal basis) with a hearing to approve such motion on **February 27, 2015**.

52.     By this Motion, and as part of approval of the Bidding Procedures Order, the Debtors also seek the scheduling of the Sale Hearing, to consider approval of the Sale to any Successful Bidder(s), and of the assumption and assignment of any Executory Contracts and Unexpired Leases, on such date and time as is convenient for the Court, in order to give adequate and sufficient notice of the Sale Hearing.   The Debtors request the Sale Hearing be set for **February 27, 2015** at such time that is convenient for the Court, with an objection deadline of **February 23, 2015** (the "Objection Deadline").

53.     The Debtors propose to give notice of the Sale Process and the Bidding Procedures Order, which will include the date set for the Sale Hearing and the Objection Deadline, in the form and manner as set forth in the proposed Notice of Sale and Bidding Procedures attached as Exhibit B to the proposed Order, by service on all creditors and parties in interest, along with any known prospective interested bidders, brokers who have contacted or represented the Debtors in the past, and other known parties in interest.

54.     The Debtors propose to serve upon all counterparties to the Executory Contracts and Unexpired Leases that may be assumed and assigned (or rejected) in connection with the Sale the "Cure Claim Notice," the proposed form of which is attached as Exhibit C to the proposed Order, to be served along with the entered Bidding Procedures Order.  The exhibit attached to the Cure Claim Notice shall include the Debtors' calculation of the amount they believe must be paid to cure any default under each such Executory Contract and/or Unexpired Lease (the "Proposed Cure Amounts").  The Debtors reserve the right to amend and modify the Proposed Cure Amounts as necessary and applicable as they negotiate with any Cure Claimant.

Unless the non-debtor party to such an Executory Contract or Unexpired Lease files with the Bankruptcy Court and serves upon the Debtors, a timely objection (by the Objection Deadline) to its Proposed Cure Amount, such party shall be forever barred from objecting to the Cure Amount, and from asserting any additional cure or other amounts with respect to such Contract or Lease, and the Debtors shall be entitled to rely solely upon the Cure Amounts.  If an objection to a Proposed Cure Amount is filed in accordance with this paragraph, or objection to assumption and assignment, the Court will hear any objections at the Sale Hearing or such other date and time as the Court sets, and an order or orders will be entered determining all Allowed Cure Amounts.

55.     The Debtors submit that the notices proposed with respect to the Sale Process and the Bidding Procedures process, including the possible assumption and assignment of Executory Contracts and Unexpired Leases, are reasonably calculated to provide timely and adequate notice to the Debtors' creditors and parties in interest, to the counterparties to Executory Contracts and Unexpired Leases, and to those parties interested in bidding on the JAD Debtors' Assets. Accordingly, the Debtors submit that such notices constitute good and sufficient notice under the circumstances with respect to the Sale and the Bidding Procedures.

56.     The Sale Order(s) shall be negotiated with each respective Successful Bidder to their satisfaction, but are anticipated to provide at a minimum, among other things:  (a) that the transfer of the JAD Debtors' Assets by the Debtors to the Successful Bidder(s) and the assumption of the Unexpired Leases and/or Executory Contracts by the Successful Bidder (i) is or will be a legal, valid, and effective transfer of the JAD Debtors' Assets, (ii) vests or will vest in the Successful Bidder good title to the JAD Debtors' Assets free and clear of any and all liens, claims, interests, and encumbrances, except those expressly assumed by the Successful Bidder,

18

and (iii) constitutes a transfer for reasonably equivalent value and fair consideration under the

Bankruptcy Code and applicable law; (b) that all persons having a lien, claim, interest, or

encumbrance against the JAD Debtors' Assets are forever barred, estopped, and permanently

enjoined from pursuing such liens, claims, interests and encumbrances against the Successful

Bidder, any of its assets, property, successors or assigns or the JAD Debtors' Assets, except with

respect to the liabilities expressly assumed by the Successful Bidder; (c) that the contemplated

transactions are and were undertaken in good faith, as that term is defined pursuant to 11 U.S.C.

§ 363(m); (d) that the Court approves the other asset purchase agreement(s) submitted by a

Successful Bidder; and (e) that the Court has authorized the JAD Debtors to assume and assign

to the Successful Bidder certain Executory Contracts and Unexpired Leases pursuant to 11

U.S.C. §§ 105(a) and 365, provided that (i) all defaults of the JAD Debtors under such Contracts

and/or Leases arising or accruing prior to the date of the Sale Order have been or will promptly

be cured, and (ii) the Successful Bidder shall have no liability or obligation with respect to any

default or obligation arising or accruing with respect thereto prior to closing and/or assignment

of the Contracts and/or Leases to the Successful Bidder except as provided for in the asset

purchase agreements(s), and (iii) the Debtors have the authority to assume and assign under 11

U.S.C. § 365(f).  Other terms will be negotiated with each Successful Bidder.

57.    The Debtors request that the Bankruptcy Court determine that objections, if any,

to the Sale Motion(s) to each respective Successful Bidder and the Sale Order(s): (a) shall be in

writing; (b) shall conform to the Bankruptcy Rules and the Local Rules and Standing Orders of

this Court; (c) shall set forth (i) the specific nature of the objector's claims against or interests in

the Debtors' bankruptcy Estates, (ii) the basis for the objection, (iii) the specific grounds

therefor, and (iv) all evidence in support of said objection; and (d) shall be filed and served so as

to be received on or before a date certain (the Debtors propose the Objection Deadline of February 23, 2015), and that any person that does not comply with this paragraph shall not be heard at the Sale Hearing.

## APPLICABLE AUTHORITY

I.      **Approval of the Transactions for the Sale of the Assets is Warranted under 11 U.S.C. §§ 363(b)(1) and (f)(1).**

58.      11 U.S.C. § 363(b)(1) provides that "after notice and a hearing, [a debtor in possession] may use, sell, or lease, other than in the ordinary course of business, property of the estate." Where a debtor believes in the exercise of its business judgment, that such a use, sale, or lease of property of its bankruptcy estate is in the best interests of the debtor and its estate, the debtor may enter into such a transaction outside the ordinary course of business. *See, e.g., Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of . . . a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action." (citing *In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2d Cir. 1983)); *see also In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *Matter of Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984) (indicating that a debtor in possession "is required to justify the proposed [transaction] with sound business reasons" before it can use, sell, or lease property of the estate outside the ordinary course of business)).

59.      Generally, to obtain approval of a proposed sale of assets, the debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case. *In re Integrated Res. Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992). Evidence that a transaction involving the sale of estate property under 11 U.S.C. § 363 will be at fair market value supports the conclusion that the transaction is in the best interests of the estate.

*See In re Atlanta Packaging Prods.*, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("The courts have long recognized the need for competitive bidding at hearings on private sales. . . . Competitive bidding yields higher offers and thus benefits the estate.").

60.    Based on their business judgment, and after consultation with their professionals, secured lenders and the Committee, the Debtors' management has concluded that the going concern sale of the JAD Debtors' Assets, with the alternative to pursue piecemeal sale of such assets in the event the Debtors cannot close a going concern sale, pursuant to the proposed Bid Procedures will maximize the value of the JAD Debtors' Assets for the Debtors' respective estates.   Maximizing value is a sound business purpose that warrants authorizing the proposed sale.

61.    Any sale, whether for substantially all or some lesser subset of the JAD Assets, will be subject to competing bids, thereby enhancing the Debtors' abilities to receive the highest or otherwise best value for the JAD Debtors' Assets.   Consequently, the fairness and reasonableness of the consideration to be received will be demonstrated by a "market check" through the Court-approved and Court-governed Sale Process, which is the best means for establishing whether a fair and reasonable price is being paid.

62.    The Debtors will provide adequate notice of the Sale Process, the deadlines, and the hearings.  In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the JAD Debtors' Assets, and any others whose interests are potentially implicated by the proposed Sale and Assignment.

## II.    The Sale and Bidding Process is Reasonable and Appropriate.

63.    The disposition of the JAD Debtors' Assets, including the Executory Contracts and Unexpired Leases, pursuant to the proposed terms reflected in the proposed Bidding

Procedures Order, resulted from the Debtors' consultation with their professionals, major

secured lenders, and other parties in interest.  Conducting a marketing process in this manner

represents an accepted and routine method of selling property in the Chapter 11 context.

64.    All prospective interested parties will be provided with an opportunity to submit a

higher or otherwise better proposal, and if appropriate, the Debtors will conduct an auction in

order to seek to obtain the highest and best recovery.

65.    Against this background, the Debtors respectfully submit that the Sale Process

and Bidding Procedures are reasonable and appropriate.

### III.    The Successful Bidders should be Afforded the Protections of 11 U.S.C. § 363(m) and the Transactions Contemplated Should Carry the Protections of 11 U.S.C. § 363(n).

66. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

67.    While the Bankruptcy Code does not define "good faith," the Fourth Circuit has

"adopt[ed] the traditional equitable definition [of a good faith purchaser] that has been adopted

by various courts of appeal: 'one who purchases the assets for value, in good faith, and without

notice of adverse claims.'"  *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (citations

omitted).

68.    Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which

such sale was consummated, and may recover any costs, attorneys'
fees, or expenses incurred in avoiding such sale or recovering such
amount.

11 U.S.C. § 363(n).

69.    The Debtors submit that this Sale Process and the ultimate presentation of the

Sale Motion(s) with APA(s) will reflect a negotiated arm's-length process.  To the extent that the

JAD Debtors' Assets are sold to Successful Bidder(s), it will be because of a well-planned

competitive process and negotiations at arm's length to be concluded by an auction if there are

competing offers.  As a result of the foregoing, the Debtors will request at the Sale Hearing that

the Court make a finding that the Purchase Price to be paid by the Successful Bidder(s)

constitutes reasonably equivalent value and fair consideration under any applicable law.

70.    The Debtors will request in their Sale Motion(s) and at the Sale Hearing that this

Court make findings that the Successful Bidder(s) have purchased the JAD Debtors' Assets in

good faith within the meaning of 11 U.S.C. § 363(m).  Further, the Debtors will request that this

Court make findings that the APA(s) or any other asset purchase agreement reached as a result of

the Bidding Procedures necessarily will comprise an arm's-length, fairly negotiated transaction

that is entitled to the protections of 11 U.S.C. § 363(m).  The Debtors will further request that

this Court make findings that the transactions contemplated by the Sale Motion(s) are not

avoidable under 11 U.S.C. § 363(n).

**IV.    The Sale of the Assets Free and Clear of any Interests should be Authorized under
11 U.S.C. § 363(f).**

71.    To facilitate a sale of the JAD Debtors' Assets, the Debtors will request in their

Sale Motions authorization to sell the JAD Debtors' Assets, including Executory Contracts and

Unexpired Leases, free and clear of any and all liens, claims, interests, and encumbrances that

may be asserted against such JAD Debtors' Assets, with such liens, claims, interests, and encumbrances to attach to the Sale proceeds in order of priority.

72.     Under 11 U.S.C. § 363(f), a debtor in possession may sell property free and clear of any interest in such property if, among other things:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

73.     Section 363(f) of the Bankruptcy Code permits the sale of estate property free and clear of interests if any one of the five conditions above is met. *See, e.g., In re Laines*, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

74.     Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively. *See In re TWA, Inc*., 322 F.3d 283, 289 (3d Cir. 2003); *see also In re Leckie Smokeless Coal Co*., 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens."). Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace. *See In re TWA, Inc*., 2001 Bankr. LEXIS 723, at *8 - *10 (Bankr. D. Del. Mar. 27, 2001).

75.      In the Sale Process and in the anticipated Sale Motion(s), the Debtors will be requesting the Sale of the JAD Debtors' Assets by the Debtors to the Successful Bidder(s) to be free and clear of all interests, except for those specifically assumed by the Successful Bidder(s), which shall be transferred from the JAD Debtors' Assets to the proceeds of the Sale. Each Sale Motion will contain detail of the known interests in connection with the JAD Debtors' Assets related thereto. Accordingly, this Court should authorize the Debtors to sell the JAD Debtors' Assets, including all Executory Contracts and Unexpired Leases, free and clear of any and all interests that may be asserted by any party, except for those interests specifically assumed by the Successful Bidder(s), with any such interests attaching to the net proceeds of the Sale in the same order and priority and subject to the same defenses as they exist against the Assets. The Debtors shall hold such proceeds in escrow and shall not be entitled to use such proceeds without the consent of the Licking River Lenders or the JAD Lenders, as applicable.

## V.      Request for Expedited Hearing

76.      For the reasons set forth herein, the relief requested in the Motion is essential to the Debtors' continued operations. Accordingly, the Debtors believe that the Motion involves matters that require an expedited hearing and respectfully requests that the Court conduct such hearing on Wednesday, January 7, 2015, at 9:30 a.m. (ET), which is the January Omnibus Hearing date in these bankruptcy cases. The Debtors do not believe that the shortening of notice or the shortening of the time to object to this Motion will prejudice any creditor or party in interest.

77.      The Debtors are giving notice of the filing of this Motion and the expedited hearing thereon via first-class U.S. mail, postage prepaid, or electronic mail to the parties listed on Master Service List No. 8 [Doc 675-1] contemporaneously with the filing of this Motion.

25

78.     The Debtors request that service of notice on the parties stated above in the form and manner described herein be deemed adequate and appropriate under the circumstances and in full compliance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules of this Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Bidding Procedures Order, substantially in the form tendered herewith, which among other things (a) establishes the Bidding Procedures and Bidding Deadlines that will govern the sale and auction process, including, approving the date, time and format of the Auction; (b) schedules the Sale Hearing to approve the Sale(s) (to be sought by further motion); (c) approves the Notice of Sale and Bidding Procedures; (d) approves the Cure Claim Notice; (e) approves shortened notice and an expedited hearing on the same; and (f) grants such other and further relief to which the Debtors may justly be entitled.

<u>**NOTICE**</u>

Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Third Floor, Lexington, Kentucky, on January 7, 2015, at the hour of 9:30 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Amelia Martin Adams, Esq.
KY Bar No. 93038
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
aadams@dlgfirm.com
ldelcotto@dlgfirm.com

and

NIXON PEABODY LLP

/s/ Dennis J. Drebsky, Esq.
NY Bar No. 1181007
Christopher M. Desiderio, Esq.
NY Bar No. 4350633
437 Madison Avenue
New York, NY 10022-7039
Telephone:  (212) 940-3000
Facsimile:  (212) 940-3111
ddrebsky@nixonpeabody.com
cdesiderio@nixonpeabody.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

Z:\Bid Procedures Mot VFN 20141223.docx