UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND, LONDON, AND LEXINGTON DIVISIONS

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LICKING RIVER MINING, LLC, *et al.* | CASE NO. 14-10201 |
| DEBTORS IN POSSESSION | JOINTLY ADMINISTERED |

---

**DEBTORS' MOTION FOR AN ORDER (A) APPROVING BIDDING PROCEDURES
AND RELATED DEADLINES FOR LICKING RIVER DEBTORS' ASSETS;
(B) SCHEDULING DATE AND TIME FOR SALE HEARING; (C) APPROVING
FORM AND MANNER OF NOTICE OF SAME; AND (D) APPROVING FORM
AND MANNER OF NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT
OR REJECTION OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND RELATED CURE CLAIMS**

---

Come Licking River Resources, Inc., Licking River Mining, LLC, S. M. & J., Inc., J.A.D. Coal Company, Inc., Fox Knob Coal Co., Inc., U.S. Coal Corporation, Harlan County Mining, LLC, Oak Hill Coal, Inc., Sandlick Coal Company, LLC, and U.S. Coal Marketing, LLC, as debtors and debtors in possession (collectively, the "Debtors"), by counsel, and pursuant to 11 U.S.C. §§ 105, 363, 365, and all other applicable law, hereby move the Court for entry of an Order (the "Bidding Procedures Order"): (A) approving bidding procedures and related deadlines for the sale of all assets of Licking River Resources, Inc., Licking River Mining, LLC, Oak Hill Coal, Inc., and S. M. & J., Inc. (collectively, the "Licking River Debtors"); (B) scheduling the date and time for a final sale hearing; (C) approving the form and manner of service of notice of the sale hearing, bidding procedures, and deadlines pursuant to Fed. R. Bankr. P. 2002, 6004, and 6006; and (D) approving the form and manner of service of notice of the proposed assumption and assignment or rejection of certain executory contracts and unexpired leases and

related procedures for determination of cure claims (the "Bidding Procedures Motion" or

"Motion"). In support of this Motion, the Debtors respectfully state as follows:

## I.  JURISDICTION AND VENUE

1.      On May 22, 2014, an involuntary petition seeking relief under Chapter 11 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") was filed

against Licking River Mining, LLC ("LR Mining").   On May 23, 2014, involuntary petitions

seeking relief under Chapter 11 of the Bankruptcy Code were filed against Licking River

Resources, Inc. ("LRR") and Fox Knob Coal Co., Inc. ("Fox Knob").   On June 3, 2014, an

involuntary petition seeking relief under Chapter 11 of the Bankruptcy Code was filed against

S. M. & J., Inc. ("SM&J").   On June 4, 2014, an involuntary petition seeking relief under

Chapter 11 of the Bankruptcy Code was filed against J.A.D. Coal Company, Inc. ("JAD," and

with LR Mining, LRR, Fox Knob, and SM&J, the "Subsidiary Debtors").   On June 10, 2014, an

involuntary petition seeking relief under Chapter 11 of the Bankruptcy Code was filed against

U.S. Coal Corporation ("U.S. Coal").[1]

2.      On June 12, 2014, the Court entered an order for relief in each of the Subsidiary

Debtors' bankruptcy cases.   On June 27, 2014, the Court entered an order for relief in U.S.

Coal's bankruptcy case.

3.      On June 13, 2014, the Court entered an Order [Doc 91] directing the joint

administration of the Subsidiary Debtors' bankruptcy cases.   On June 27, 2014, the Court entered

an Order [U.S. Coal Doc 48] directing that the bankruptcy case of U.S. Coal be jointly

administered with the Subsidiary Debtors' bankruptcy cases.   On November 19, 2014, the Court

entered an Order [Doc 658] directing that the bankruptcy cases of Harlan County Mining, LLC

---

[1] Hereinafter, the Subsidiary Debtors and U.S. Coal are collectively referred to as the "Original Debtors."

("Harlan"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company, LLC ("Sandlick"), and

U.S. Coal Marketing, LLC ("USCM," and collectively with Harlan, Oak Hill, and Sandlick, the

"Additional Debtors") be jointly administered with the Original Debtors' bankruptcy cases.

4.      No trustee or examiner has been appointed in the Chapter 11 cases of any of the

Debtors.  An Official Committee of Unsecured Creditors (the "Committee") was appointed in the

Original Debtors' bankruptcy cases on June 18, 2014 [*See* Doc 145].

5.      On September 15, 2014, the Committee filed a Motion [Doc 468] requesting,

among other things, that the Court compel the Original Debtors to file Chapter 11 petitions for

the Additional Debtors, which are subsidiaries of U.S. Coal.

6.      On October 27, 2014, the Court entered an Order [Doc 574] that authorized,

compelled, and directed the Original Debtors to file Chapter 11 petitions for the Additional

Debtors.  On November 4, 2014, voluntary Chapter 11 petitions were filed for each of the four

Additional Debtors as directed by the Court.

7.      The Debtors all continue to operate their businesses and manage their properties

as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

8.      This Court has jurisdiction over all of the Debtors' Chapter 11 cases under 28

U.S.C. §§ 157 and 1334.    This matter constitutes a core proceeding under 28 U.S.C.

§§ 157(b)(2)(A), (M), (N), and (O).

9.      The Debtors all maintain their principal places of business in Fayette County,

Kentucky.  Accordingly, venue for all of the Debtors' Chapter 11 cases is proper in this District

under 28 U.S.C. §§ 1408 and 1409.

## II.  BACKGROUND

A.      **General Background**

10.      Information regarding the Debtors' businesses and operations can be found in the Declaration of John Collins in Support of the Debtors' First Day Pleadings [Doc 13], the Declaration of John Collins Regarding the Motion of the Official Committee of Unsecured Creditors for an Order Compelling the Debtors to File Chapter 11 Petitions for Non-Debtor Subsidiaries [Doc 542] and the Declaration of John Collins in Support of the First Day Pleadings of the Additional Debtors, each of which is fully incorporated herein by reference.

B.      **The Licking River Debtors' Assets**

11.      The Licking River Debtors' assets (the "LR Assets" or "Assets") are primarily comprised of all the real and personal property of such Debtors including equipment, real estate, coal reserves, executory contracts, and unexpired leases.  A schedule of the LR Assets is annexed hereto as Exhibit 1.   The contemplated Sale Process (as defined below) would include assumption and assignment of the unexpired non-residential real property leases (each an "Unexpired Lease") and equipment leases (the "Equipment Leases," and with the Unexpired Leases, the "Leases") connected with each of the four Licking River Debtors' operations, as well as assumption and assignment of the Licking River Debtors' executory contracts (each, an "Executory Contract" or "Contract"), with Qualified Bidders(s) selecting the Leases and/or Executory Contracts that they would seek to be assigned along with the LR Assets.   Any assumption and assignment of the Leases and/or Executory Contracts is subject to payment of all

Court-determined Allowed Cure Amounts[2] (as described below) and consideration of any objections to assumption and assignment filed by any party to the Leases and/or Contracts.

12.     The Debtors believe that a sale procedure for selling the Licking River Debtors' Assets as described herein, including the consideration of assumption and assignment, or rejection, of certain Executory Contracts and Unexpired Leases (collectively, the "Sale Process"), is in the best interest of the Debtors' Estates.  After extensive analysis, it appears that the Licking River Debtors will experience significant operational losses in the upcoming months due to the continuing downturn in the market price for coal.  Accordingly, the Debtors now seek to sell the Licking River Debtors' Assets as a going concern, but to the extent such efforts are unsuccessful, the Debtors will also seek bids on subsets of the LR Assets.

13.     In the exercise of their business judgment, the Debtors believe that the Sale Process will maximize the value of the Licking River Debtors' operations for the benefit of their respective Estates, creditors, and all other stakeholders.  The Debtors have engaged in extensive marketing of their assets in anticipation of this Sale Process.  The Debtors and their advisors have contacted approximately twenty parties who would potentially have an interest in all or some of the Licking River Debtors' and/or all of the Debtors' assets, and they have had extensive conversations with a few of those parties.  The Debtors have executed non-disclosure agreements with approximately one dozen parties.  Although none of these discussions have resulted in a formalized offer at this time, the Debtors believe there is sufficient interest in the LR Assets to justify an orderly sale at this time.  Delaying this process will only lead to additional administrative expense costs without a likelihood of realizing additional value.

---

[2] All capitalized terms used herein and not otherwise defined have the meaning given to them in the Bidding Procedures attached to the Bidding Procedures Order as Exhibit A or, if not defined in Exhibit A, then as defined in the Bankruptcy Code, unless the context clearly requires otherwise.

14.     The Debtors believe that they will generate interest and receive offers to purchase substantially all of the LR Assets either as a going concern or on a piecemeal basis through the Sale Process that will maximize the value of those assets for the respective Estates.  Against this background, the Debtors, with the advice of their professionals, believe that time is of the essence in proceeding with a going concern Sale Process at this time on an expedited basis and that doing so is in the best interests of the Debtors and their Estates.

C.     **Liens Affecting the Licking River Debtors' Assets**

15.     The liens and encumbrances on the LR Assets, other than those held by equipment lenders, can generally be described as follows:

**East Coast Miner LLC**

16.     The Debtors are parties to the following credit agreement and note with East Coast Miner LLC ("ECM I"):

- Second Amended and Restated Credit Agreement, dated August 29, 2008, among U.S. Coal, as borrower, LRR, LR Mining, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan, and USCM, as guarantors, Wilmington Trust Company ("WTC"), as collateral agent, and ECM I, as lender, subsequently assigned to ECM I (as amended, the "ECM I Credit Agreement"); and

- Amended and Restated Secured Note, dated September 30, 2009, made by U.S. Coal in favor of ECM I in the original principal amount of $24,018,269.60 (the "ECM I Note").[3]

17.     The Debtors are parties to the following security agreements under the ECM I Credit Agreement:  (i) Amended and Restated Security Agreement, dated August 29, 2008, made by U.S. Coal, LRR, LRM, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan and USCM, as

---

[3]   The note that eventually became the EMC I Note was originally issued in the face amount of $13 million pursuant to a secured note with Fursa Alternative Strategies, LLC.  The principal amount grew to $24 million as a result of a series of refinancings.

grantors, in favor of WTC, as collateral agent (as amended, the "ECM I Security Agreement");

and (ii) certain mortgages and deeds of trust.

18.      Pursuant to the ECM Security Agreement, each grantor granted WTC, as

collateral agent, a security interest in all of its rights, title and interest in and to all of its property

and assets, whether then owned or thereafter acquired.

### East Coast Miner II LLC

19.      The Debtors are parties to the following credit agreement and note with East

Coast Miner II LLC ("ECM II"):

- Credit Agreement, dated December 7, 2011, among U.S. Coal, JAD, Sandlick and Fox Knob, as borrowers, LRR, Oak Hill, SM&J, LR Mining, Harlan, and USCM, as guarantors, WTC, as collateral agent, and ECM II, as lender (the "ECM II Credit Agreement");

- Secured Note, dated December 7, 2011, made by U.S. Coal in favor of ECM II in the original principal amount of $1,322,406.38; and

- Secured Note, dated December 7, 2011, made by JAD, Sandlick and Fox Knob in favor of ECM II in the original principal amount of $5,407,016.22.

20.      The Debtors are parties to the following security agreements under the ECM II

Credit Agreement: (i) Security Agreement, dated December 7, 2011, made by U.S. Coal, LRR,

LRM, Oak Hill, SM&J, JAD, Fox Knob, Sandlick, Harlan, and USCM, as grantors, in favor of

WTC, as collateral agent (as amended, the "ECM II Security Agreement"); and (ii) certain

mortgages and deeds of trust.

21.      Pursuant to the ECM II Security Agreement, each grantor granted WTC, as

collateral agent, a security interest in all of its rights, title and interest in and to all of its property

and assets, whether then owned or thereafter acquired.

### Goodwin and Goggin Secured Notes

22.    U.S. Coal also has the following outstanding secured notes in favor of Keith Goggin and Michael Goodwin:  (i) Third Amended and Restated 12% Secured Note due October 31, 2014, dated February 1, 2013, by U.S. Coal in favor of Keith Goggin in the aggregate principal amount of $1,097,620.03 (the "Goggin Note") and (ii) Third Amended and Restated 12% Secured Note due October 31, 2014, dated February 1, 2013, by U.S. Coal in favor of Michael Goodwin in the aggregate principal amount of $1,097,620.03 (the "Goodwin Note").

23.    The Goggin Note and the Goodwin Note are secured by liens on certain equipment and real estate of U.S. Coal and its subsidiaries pursuant to the following security agreements: (i) Security Agreement, dated as of February 1, 2013, made by U.S. Coal, JAD, Sandlick, Fox Knob, LRR, Oak Hill, SM&J, LR Mining, Harlan and USCM in favor of WTC, as collateral agent for Keith Goggin; (ii) Security Agreement, dated as of February 1, 2013, made by the U.S. Coal, JAD, Sandlick, Fox Knob, LRR, Oak Hill, SM&J, LR Mining, Harlan and USCM in favor of WTC, as collateral agent for Michael Goodwin; and (iii) certain mortgages and deeds of trust.

24.    ECM I, ECM II, Goggin, and Goodwin are collectively referred to herein as the "Licking River Lenders."

### Pryor Cashman Note

25.    In connection with a dispute related to legal fees incurred prior to the Relief Dates, U.S. Coal and Pryor Cashman entered into that certain Settlement Agreement dated March 4, 2013 (the "Pryor Cashman Settlement").  Pursuant to the Pryor Cashman Settlement, as part of the settlement for legal fees, pursuant to an arbitral award, U.S. Coal entered into the

Secured Promissory Note, dated March 4, 2013, by U.S. Coal to Pryor Cashman in the original

principal amount of $2,204,714.13.

26.     Pursuant to a Security Agreement (the "Pryor Cashman Security Agreement") of

even date with the Pryor Cashman Settlement among U.S. Coal, LRR, Oak Hill, SM&J, LR

Mining, JAD, Sandlick, Fox Knob, and Pryor Cashman, the grantors granted a security interest

to Pryor Cashman in specified collateral including all personal and fixture property, all deposit

accounts, all commercial tort claims, securities and all other investment property, and general

intangibles.   The security interest granted under the Pryor Cashman Security Agreement is

subordinate to the security interests that existed as of February 18, 2013 (which would include

the interests discussed above), security interests that come into existence by no action of the

grantors subsequent to such date, and purchase money security interests.

### III.  RELIEF REQUESTED

27.     The Debtors intend to sell substantially all of the LR Assets, including assumption

and assignment of any related Unexpired Leases and/or Executory Contracts, to the highest or

best bidder(s) through the Sale Process, pursuant to 11 U.S.C. §§ 363 and 365.  The Debtors

believe that a sale of the LR Assets as a going concern is in the best interests of the Debtors, their

Estates, creditors, employees, lessors, contract parties, and all other interested parties.  In the

event, however, that the Debtors are not able to sell the LR Assets as a going concern, the

Debtors intend to sell those Assets through an orderly piecemeal liquidation on a parallel track to

maximize value for these Estates and their constituents.   In other words, the Debtors will seek

bids for the LR Assets as a going-concern, but to the extent that they are unable to do so, or to

the extent that the aggregate of multiple bids for the LR Assets on a piecemeal basis will result in

a higher and better total offer for the LR Assets than would any going-concern bids, the Debtors

intend to pursue a sale at the highest and best offer.

28.    By this Motion, the Debtors seek entry of the Bidding Procedures Order

(the proposed form of which has been tendered herewith), which will, among other things:

(A) establish the Bidding Procedures (defined below) that will govern the Sale Process and

deadlines for both a going concern sale and a piecemeal liquidation of the LR Assets;

(B) schedule the date(s) and time(s) for hearing (the "Sale Hearing") to approve the sale of

substantially all of the LR Assets (the "Sale") to the Qualified Bidder(s) that submit the

Qualified Bid(s) that are deemed the highest and best bids (the "Successful Bidder(s)") to be

submitted by the filing of subsequent motions (the "Sale Motions"); (C) approve the proposed

form of and service of notice (the "Bidding Procedures and Sale Notice") for the Bidding

Procedures process to all creditors, parties in interest, and known prospective interested bidders;

and (D) approve the form of and service of notice related to the assumption and assignment of

certain Unexpired Leases and Executory Contracts and the process for determining Allowed

Cure Claims and objections regarding assumption and assignment (the "Cure Claim Notice").

29.    The Licking River Debtors believe that they can continue ordinary course

operations of their businesses until a sale is completed through the use of existing cash flow and

access to debtor in possession financing on the terms set forth in the Order Granting Debtors'

Motion for Order Authorizing Licking River Debtors to Obtain First-Priority Secured Postpetiton

Financing and Related Relief, and Approving Shortened Notice and Expedited Hearing on Same

[Doc 818].

### **Bidding Procedures**

30.    As further described in the proposed Bidding Procedures (defined below), the

Debtors anticipate filing a Sale Motion with Successful Bidder(s), on or before **Wednesday,**

**March 11, 2015 at 12:00 p.m. (ET)** to seek approval of entry of a Sale Order permitting the Debtors to, among other things, consummate the sale of the Licking River Debtors' Assets to Successful Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f).  Under the Sale Order, the Debtors will also seek approval pursuant to 11 U.S.C. § 365 to assume and assign to the Successful Bidder(s) the Executory Contracts and Unexpired Leases that such Successful Bidder(s) have indicated they want to take pursuant to 11 U.S.C. § 365.

31.     To ensure that the Debtors have maximized the value of the LR Assets, the Debtors propose certain bidding procedures and related deadlines (the "Bidding Procedures"). The proposed Bidding Procedures are described in detail in Exhibit A to the proposed Bidding Procedures Order, and are incorporated herein by reference.[4]

32.     To summarize, and as described in greater detail in the proposed Bidding Procedures Order, the Debtors propose, in consultation with the Licking River Lenders and the Committee, to solicit parties to serve as, and to thereafter designate, Bidder(s) for substantially all of the LR Assets on either a going concern or piecemeal basis.  The Debtors have had extensive discussions and negotiations with numerous parties expressing interest in purchasing some or all of the LR Assets and believe that there are parties who intend to submit written offers in this Sale Process.

33.     The Debtors seek a Bidding Procedures Order that sets a deadline to submit all final written proposed Bid(s) for any or all of the Licking River Debtors' Assets by a deadline of

---

[4] The Debtors would request that in light of the expedited nature of this process, that they be given the ability to amend or alter the sales process, bid requirements, auction procedures, and/or timing, in consultation with the Committee and the Licking River Lenders without further order of the Court in order to maximize the returns realized by any such sale; provided, however, that the Debtors may not materially modify the Bidding Procedures (other than extension of any deadlines) without the approval of the Committee.

**Friday, March 6, 2015 at 5:00 p.m. (ET)**.  While this is a short time frame, because of the extensive marketing in the past and the degree to which prospective bidders are currently familiar with the LR Assets, the Debtors believe that this time frame for final written offers is realistic and warranted.  The Debtors will thereafter identify and designate the best and highest bid (the "Initial Bid"), all subject to higher and better offers and further approval by the Court at a Sale Hearing, and will file a notice identifying the assets to be transferred and all material terms of the transaction (the "Initial Bid Notice") on or before **Wednesday, March 11, 2015 at 12:00 p.m. (ET).**  The Debtors will thereafter hold an auction on **Monday, March 16, 2015** at a location and time to be determined (the "Auction").  On or before **Wednesday, March 11, 2015 at 12:00 p.m. (ET)**, the Debtors will file a motion to seeking to approve the sale of the LR Assets to the bidder(s) with the highest and best bid(s) (the "Successful Bidder(s)") at the Auction (whether on a going concern or piecemeal basis) with a hearing to approve such motion on **Thursday, March 26, 2015**.  The Debtors shall file a supplement to the Sale Motion(s) providing notice of the Successful Bidder(s) for the Assets on or before **Friday, March 20, 2015.**

34.     By this Motion, and as part of approval of the Bidding Procedures Order, the Debtors also seek the scheduling of the Sale Hearing, to consider approval of the Sale to any Successful Bidder(s), and of the assumption and assignment of any Executory Contracts and Unexpired Leases, on such date and time as is convenient for the Court, in order to give adequate and sufficient notice of the Sale Hearing.  The Debtors request the Sale Hearing be set for **Thursday, March 26, 2015** at such time that is convenient for the Court, with an objection deadline of **Tuesday, March 24, 2015 at 3:00 p.m. (ET)** (the "Objection Deadline").

35.     The Debtors request that, on or before **Friday, March 6, 2015 at 5:00 p.m. (ET)** any party asserting a right to credit bid under 11 U.S.C. § 363(k) (a "Credit Bid Party") including, without limitation, the Licking River Lenders, shall file a notice of right to credit bid with the Court setting forth:  (a) the LR Assets to which it asserts a right to credit bid; (b) the amount of its claim to which it asserts a right to credit bid on the LR Assets and the components of that claim (i.e., principal, accrued interest and any other charges); and (c) evidence of its secured status on any LR Assets to which it asserts a right to credit bid (a "Credit Bid Notice"). Any objections to a Credit Bid Notice shall be filed on or before **Wednesday, March 11, 2015 at 12:00 p.m. (ET)**.  If a party timely files an objection to a Credit Bid Notice, this Court shall hold a hearing to consider the rights, circumstances and any conditions on the right of Credit Bid Party to submit a credit bid on **Friday, March 13, 2015** at such time as is convenient for the Court.

36.     The Debtors propose to give notice of the Sale Process and the Bidding Procedures Order, which will include the date set for the Sale Hearing and the Objection Deadline, in the form and manner as set forth in the proposed Bidding Procedures and Sale Notice attached as Exhibit B to the proposed Order, by service on all creditors and parties in interest, along with any known prospective interested bidders, brokers who have contacted or represented the Debtors in the past, and other known parties in interest.

37.     The Debtors propose to serve upon all counterparties to the Executory Contracts and Unexpired Leases that may be assumed and assigned (or rejected) in connection with the Sale the proposed Cure Claim Notice attached as Exhibit C to the proposed Bidding Procedures Order.  The exhibit attached to the Cure Claim Notice shall include the Debtors' calculation of the amount they believe must be paid to cure any default under each such Executory Contract

13

and/or Unexpired Lease (the "<u>Proposed Cure Amounts</u>").  The Debtors reserve the right to amend and modify the Proposed Cure Amounts as necessary and applicable as they negotiate with any Cure Claimant.  Unless the non-debtor party to such an Executory Contract or Unexpired Lease files with the Court and serves upon the Debtors, a timely objection to its Proposed Cure Amount by the Objection Deadline, such party shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract or Lease, and the Debtors shall be entitled to rely solely upon the Cure Amounts, unless otherwise ordered by the Court.  If an objection to a Proposed Cure Amount, or objection to assumption and assignment, is filed in accordance with this paragraph, the Court will hear any objections at the Sale Hearing or such other date and time as the Court sets, and an order or orders will be entered determining all Allowed Cure Amounts.

38.     The Debtors submit that the notices proposed with respect to the Sale Process and the Bidding Procedures process, including the possible assumption and assignment of Executory Contracts and Unexpired Leases, are reasonably calculated to provide timely and adequate notice to the Debtors' creditors and parties in interest, to the counterparties to Executory Contracts and Unexpired Leases, and to those parties interested in bidding on the LR Assets.  Accordingly, the Debtors submit that such notices constitute good and sufficient notice under the circumstances with respect to the Sale and the Bidding Procedures.

39.     The Sale Order(s) shall be negotiated with each respective Successful Bidder to their satisfaction, but are anticipated to provide at a minimum, among other things:  (a) that the transfer of the LR Assets by the Licking River Debtors to the Successful Bidder(s) and the assumption of the Unexpired Leases and/or Executory Contracts by the Successful Bidder (i) is or will be a legal, valid, and effective transfer of the LR Assets, (ii) vests or will vest in the

Successful Bidder good title to the LR Assets free and clear of any and all liens, claims, interests, and encumbrances, except those expressly assumed by the Successful Bidder, and (iii) constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable law; (b) that all persons having a lien, claim, interest, or encumbrance against the LR Assets are forever barred, estopped, and permanently enjoined from pursuing such liens, claims, interests, and encumbrances against the Successful Bidder, any of its assets, property, successors, or assigns, or the LR Assets, except with respect to the liabilities expressly assumed by the Successful Bidder; (c) that the contemplated transactions are and were undertaken in good faith, as that term is defined pursuant to 11 U.S.C. § 363(m); (d) that the Court approves the asset purchase agreement(s) (the "APA") submitted by a Successful Bidder; and (e) that the Court has authorized the Licking River Debtors to assume and assign to the Successful Bidder certain Executory Contracts and Unexpired Leases pursuant to 11 U.S.C. §§ 105(a) and 365, provided that (i) all defaults of the Licking River Debtors under such Contracts and/or Leases arising or accruing prior to the date of the Sale Order have been or will promptly be cured, (ii) the Successful Bidder shall have no liability or obligation with respect to any default or obligation arising or accruing with respect thereto prior to closing and/or assignment of the Contracts and/or Leases to the Successful Bidder except as provided for in the asset purchase agreements(s), and (iii) the Licking River Debtors have the authority to assume and assign under 11 U.S.C. § 365(f).  Other terms will be negotiated with each Successful Bidder.

40.     The Debtors request that the Court order that objections, if any, to the Sale Motion(s), to each respective Successful Bidder, and to the Sale Order(s):  (a) shall be in writing; (b) shall conform to the Bankruptcy Rules and the Local Rules and Standing Orders of this Court; (c) shall set forth (i) the specific nature of the objector's claims against or interests in the

Debtors' bankruptcy Estates, (ii) the basis for the objection, and (iii) the specific grounds therefor; and (d) shall be filed and served so as to be received on or before a date certain (the Debtors propose the Objection Deadline of **Tuesday, March 24, 2015 at 3:00 p.m. (ET)**), and that any person that does not comply with this paragraph shall not be heard at the Sale Hearing unless otherwise ordered by the Court.

41.     The Debtors request that, except as otherwise provided in the Successful Bidder's APA and subject to the approval of the Court, all of the Licking River Debtors' right, title, and interest in and to the LR Assets subject thereto shall be sold free and clear of all liens, claims, rights, interests, and encumbrances to the maximum extent permitted by 11 U.S.C. § 363, with such all liens, claims, rights, interests, and encumbrances to attach to the net proceeds of the sale of the LR Assets with the same validity and priority as such all liens, claims, rights, interests, and encumbrances applied against the LR Assets.  The Debtors shall hold such proceeds in escrow and shall not be entitled to use such proceeds without further order of the Court.

42.     For ease of reference, a summary of the important dates and deadlines for the proposed Bidding Procedures discussed above is as follows:

| Event | Date/Deadline |
|---|---|
| Initial Bid Deadline/Credit Bid Notice | Friday, March 6, 2015 at 5:00 p.m. |
| Sale Motion(s) / Initial Bid Notice | Wednesday, March 11, 2015 at 12:00 p.m. |
| Credit Bid Objections | Wednesday, March 11, 2015 at 12:00 p.m. |
| Credit Bid Hearing | Friday, March 13, 2015 (Time TBD) |
| Auction | Monday, March 16, 2015 |
| Supplements to Sale Motions  / Auction Results | Friday, March 20, 2015 |
| Objections to Sale Motion / Cure Notice | Tuesday, March 24, 2015 at 3:00 p.m. |
| Sale Hearing | Thursday, March 26, 2015 (Time TBD) |
| Closing Date | Tuesday, March 31, 2015 |

## IV.  APPLICABLE AUTHORITY

**A.**    **Approval of the Transactions for the Sale of the Assets is Warranted under 11 U.S.C. §§ 363(b)(1) and (f)(1).**

43.    11 U.S.C. § 363(b)(1) provides that "after notice and a hearing, [a debtor in possession] may use, sell, or lease, other than in the ordinary course of business, property of the estate." Where a debtor believes in the exercise of its business judgment, that such a use, sale, or lease of property of its bankruptcy estate is in the best interests of the debtor and its estate, the debtor may enter into such a transaction outside the ordinary course of business. *See, e.g., Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986) (holding that "a bankruptcy court can authorize a sale of . . . a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action."  (citing *In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2d Cir. 1983)); *see also In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *Matter of Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984) (indicating that a debtor in possession "is required to justify the proposed [transaction] with sound business reasons" before it can use, sell, or lease property of the estate outside the ordinary course of business)).

44.    Generally, to obtain approval of a proposed sale of assets, the debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case.  *In re Integrated Res. Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992). Evidence that a transaction involving the sale of estate property under 11 U.S.C. § 363 will be at fair market value supports the conclusion that the transaction is in the best interests of the estate. *See In re Atlanta Packaging Prods.*, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("The courts have long recognized the need for competitive bidding at hearings on private sales. . . . Competitive bidding yields higher offers and thus benefits the estate.").

17

45.    Based on their business judgment, and after consultation with their professionals, secured lenders, and the Committee, the Debtors' management has concluded that the going concern sale of the Licking River Debtors' Assets, with the alternative to pursue piecemeal sale of such assets on the same timeline in the event the Debtors cannot close a going concern sale, pursuant to the proposed Bidding Procedures will maximize the value of the LR Assets for the Debtors' respective Estates.    Maximizing value is a sound business purpose that warrants authorizing the proposed sale.

46.    Any sale, whether for substantially all or some lesser subset of the LR Assets, will be subject to competing bids, thereby enhancing the Debtors' abilities to receive the highest or otherwise best value for the LR Assets.    Consequently, the fairness and reasonableness of the consideration to be received will be demonstrated by a "market check" through the Court-approved and Court-governed Sale Process, which is the best means for establishing whether a fair and reasonable price is being paid.

47.    The Debtors will provide adequate notice of the Sale Process, the deadlines, and the hearings.    In light of the circumstances, such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these cases, those parties potentially interested in bidding on the LR Assets, and any others whose interests are potentially implicated by the proposed Sale and Assignment.

**B.    The Sale and Bidding Process is Reasonable and Appropriate.**

48.    The disposition of the LR Assets, including the Executory Contracts and Unexpired Leases, pursuant to the proposed terms reflected in the proposed Bidding Procedures Order, resulted from the Debtors' consultation with their professionals, major secured lenders, and other parties in interest.    Conducting a marketing process in this manner represents an

accepted and routine method of selling property in the Chapter 11 context.  All prospective

interested parties will be provided with an opportunity to submit a higher or otherwise better

proposal, and if appropriate, the Debtors will conduct an auction in order to seek to obtain the

highest and best recovery.  Against this background, the Debtors respectfully submit that the Sale

Process and Bidding Procedures are reasonable and appropriate.

**C.**      **The Successful Bidders should be Afforded the Protections of 11 U.S.C. § 363(m) and the Transactions Contemplated Should Carry the Protections of 11 U.S.C. § 363(n).**

49.      Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

50.      While the Bankruptcy Code does not define "good faith," the Fourth Circuit has

"adopt[ed] the traditional equitable definition [of a good faith purchaser] that has been adopted

by various courts of appeal: 'one who purchases the assets for value, in good faith, and without

notice of adverse claims.'"  *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (citations

omitted).

51.      Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was
> controlled by an agreement among potential bidders at such sale,
> or may recover from a party to such agreement any amount by
> which the value of the property sold exceeds the price at which
> such sale was consummated, and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding such sale or recovering such
> amount.

11 U.S.C. § 363(n).

52.    The Debtors submit that this Sale Process and the ultimate presentation of the Sale Motion(s) with APA(s) will reflect a negotiated arm's-length process.  To the extent that the Licking River Debtors' Assets are sold to Successful Bidder(s), it will be because of a well-planned competitive process and negotiations at arm's length to be concluded by an auction if there are competing offers.  As a result of the foregoing, the Debtors will request at the Sale Hearing that the Court make a finding that the Purchase Price to be paid by the Successful Bidder(s) constitutes reasonably equivalent value and fair consideration under any applicable law.

53.    The Debtors will request in their Sale Motion(s) and at the Sale Hearing that this Court make findings that the Successful Bidder(s) have purchased the LR Assets in good faith within the meaning of 11 U.S.C. § 363(m).  Further, the Debtors will request that this Court make findings that the APA(s) or any other asset purchase agreement reached as a result of the Bidding Procedures necessarily will comprise an arm's-length, fairly negotiated transaction that is entitled to the protections of 11 U.S.C. § 363(m).  The Debtors will further request that this Court make findings that the transactions contemplated by the Sale Motion(s) are not avoidable under 11 U.S.C. § 363(n).

**D.    <u>The Sale of the Assets Free and Clear of any Interests should be Authorized under 11 U.S.C. § 363(f).</u>**

54.    To facilitate a sale of the Licking River Debtors' Assets, the Debtors will request in their Sale Motions authorization to sell the LR Assets, including Executory Contracts and Unexpired Leases, free and clear of any and all liens, claims, interests, and encumbrances that may be asserted against such LR Assets, with such liens, claims, interests, and encumbrances to attach to the Sale proceeds in order of priority.

55.     Under 11 U.S.C. § 363(f), a debtor in possession may sell property free and clear of any interest in such property if, among other things:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) of the Bankruptcy Code permits the sale of estate property free and clear of interests if any one of the five conditions above is met.  *See, e.g., In re Laines*, 352 B.R. 410, 414-15 (Bankr. E.D. Va. 2005).

56.     Courts have held that the authority of a debtor to sell assets free and clear of interests is broad and should be read expansively.  *See In re TWA, Inc*., 322 F.3d 283, 289 (3d Cir. 2003); *see also In re Leckie Smokeless Coal Co*., 99 F.3d 573, 582 (4th Cir. 1996) (holding that the phrase "any interest in property" includes more than just in rem interests); *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("As the plain meaning of the statute demonstrates, § 363 covers more situations than just sales involving liens."). Moreover, courts have noted that the purpose of the "free and clear" language is to allow the debtor to obtain a maximum recovery on its assets in the marketplace.  *See In re TWA, Inc*., 2001 Bankr. LEXIS 723, at *8 - *10 (Bankr. D. Del. Mar. 27, 2001).

57.     In the Sale Process and in the anticipated Sale Motion(s), the Debtors will be requesting the Sale of the Licking River Debtors' Assets by the Debtors to the Successful Bidder(s) to be free and clear of all interests, except for those specifically assumed by the

Successful Bidder(s), which shall be transferred from the LR Assets to the proceeds of the Sale. Each Sale Motion will contain detail of the known interests in connection with the LR Assets related thereto.   Accordingly, this Court should authorize the Debtors to sell the LR Assets, including all Executory Contracts and Unexpired Leases, free and clear of any and all interests that may be asserted by any party, except for those interests specifically assumed by the Successful Bidder(s), with any such interests attaching to the net proceeds of the Sale in the same order and priority and subject to the same defenses as they exist against the Assets.  The Debtors shall hold such proceeds in escrow and shall not be entitled to use such proceeds without the consent of the Licking River Lenders.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Bidding Procedures Order, substantially in the form tendered herewith, which among other things (a) establishes the Bidding Procedures and Bidding Deadlines that will govern the Sale and Auction process, including, approving the date, time, and format of the Auction; (b) schedules the Sale Hearing to approve the Sale(s) (to be sought by further motion); (c) approves the Notice of Sale and Bidding Procedures; (d) approves the Cure Claim Notice; and (e) grants such other and further relief to which the Debtors may justly be entitled.

## NOTICE

Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Third Floor, Lexington, Kentucky, on Wednesday, February 18, 2015, at the hour of 9:30 a.m. (ET), or as soon thereafter as counsel may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Amelia Martin Adams, Esq.
KY Bar No. 93038
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
aadams@dlgfirm.com
ldelcotto@dlgfirm.com

and

NIXON PEABODY LLP

/s/ Dennis J. Drebsky, Esq.
NY Bar No. 1181007
Christopher M. Desiderio, Esq.
NY Bar No. 4350633
437 Madison Avenue
New York, NY 10022-7039
Telephone:  (212) 940-3000
Facsimile:   (212) 940-3111
ddrebsky@nixonpeabody.com
cdesiderio@nixonpeabody.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

Z:\Bid Procedures Mot (Licking River) VFN 20150130.docx