UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND, LONDON, AND LEXINGTON DIVISIONS

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LICKING RIVER MINING, LLC, *et al.* | CASE NO. 14-10201 |
| DEBTORS IN POSSESSION | JOINTLY ADMINISTERED |

**DEBTORS' SECOND *SUPPLEMENT AND MODIFICATION* TO MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL ASSETS OF J.A.D. COAL COMPANY, INC., FOX KNOB COAL CO., INC., AND SANDLICK COAL COMPANY, LLC FREE AND CLEAR OF LIENS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); AND (B) WAIVING THE STAY IMPOSED BY FED. R. BANKR. P. 6004(h) AND (C) FOR ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES PURSUANT TO 11 USC § 365**

*(REGARDING SALE TO REVELATION ENERGY, LLC)*

Come the jointly-administered Debtors,[1] by counsel, and specifically Debtors J.A.D. Coal Company, Inc., Fox Knob Coal Co., Inc., and Sandlick Coal Company, LLC (collectively, the "JAD Debtors"), and for their *second* supplement and modification (the "Second Supplement") to the Motion for Entry of an Order (A) Authorizing Sale of Substantially All Assets of J.A.D. Coal Company, Inc., Fox Knob Coal Co., Inc., and Sandlick Coal Company, LLC Free and Clear of Liens and Encumbrances pursuant to 11 U.S.C. §§ 363(b) and (f); and (B) Waiving the Stay Imposed by Fed. R. Bankr. P. 6004(h) [Doc 912] (the "Sale Motion") regarding the sale to Revelation Energy, LLC proposed herein, respectfully state as follows:

---

[1] The jointly-administered Debtors in these bankruptcy cases are Licking River Mining, LLC, Licking River Resources, Inc., S. M. & J., Inc., Fox Knob Coal Co., Inc., J.A.D. Coal Company, Inc., U.S. Coal Corporation, Harlan County Mining, LLC, Oak Hill Coal, Inc., Sandlick Coal Company, LLC, and U.S. Coal Marketing, LLC (collectively, the "Debtors").

## I. PROCEDURAL BACKGROUND

1. On January 7, 2015, the Court entered the Order (A) Approving Bidding Procedures and Related Deadlines; (B) Scheduling Date and Time for Sale Hearing; (C) Approving Form and Manner of Notice of Same; (D) Approving Form and Manner of Notice of Proposed Assumption and Assignment or Rejection of Certain Executory Contracts and/or Unexpired Leases and Related Cure Claims; and (E) Approving Shortened Notice and Expedited Hearing on the Same [Doc 817] (the "Bidding Procedures Order"). In accordance with the Bidding Procedures attached as Exhibit A to the Bidding Procedures Order (the "Bidding Procedures"), the Debtors received multiple Initial Bids[2] to purchase certain assets and for proposed assumption and assignment of various contracts and leases of the JAD Debtors by the Initial Bid Deadline of February 9, 2015 at 5:00 p.m. EST. To allow the Debtors sufficient time to review and consider all Initial Bids received, this Court entered the Agreed Order Extending Deadline for Debtors to File Motion for Sale of Assets of J.A.D. Coal Company, Inc., Fox Knob Coal Co., Inc., and Sandlick Coal Company, LLC [Doc 890], which extended the deadline for the Debtors to file the Sale Motion through and including Tuesday, February 17, 2015 at 12:00 p.m. (ET). The Debtors timely filed their initial Sale Motion on February 17, 2015 in accordance with Agreed Order.

2. The Debtors, in consultation with the Consulting Parties,[3] reviewed each of the Qualified Bids[4] received by the Initial Bid Deadline and initially determined in their business judgment that the Bid submitted by Myron Bowling Auctioneers, Inc. ("Myron Bowling") was the "highest and best" Initial Bid to purchase certain equipment owned by J.A.D. Coal Company, Inc. as

---

[2] *See* Section D of the Bidding Procedures.
[3] Under Section C of the Bidding Procedures, the "Consulting Parties" include the "Licking River Lenders" (East Coast Miner LLC, East Coast Miner II LLC, Michael Goodwin, and Keith Goggin), the "JAD Lenders" (the Estate of Aubra Paul Dean, Carl E. McAfee, Julia McAfee, and Dean McAfee Holdings, LLC), and the Committee.
[4] *See* Section D of the Bidding Procedures.

of the filing of the Sale Motion on February 17, 2015. The Sale Motion sought approval of a sale to Myron Bowling, subject to higher and better offers to be solicited at the auction and also subject to modification, supplementation, and/or amendment as necessary to align the Sale Motion with the auction results.

3. Since the Debtors received more than one Qualified Bid, the Debtors held an auction among all Qualified Bidders on February 20, 2015 (the "Auction") in accordance with the Bidding Procedures. The Debtors, in consultation with their professionals and the Consulting Parties, determined which Qualified Bids were the highest and best bids (the "Successful Bids") for certain of the JAD Debtors' assets and have sought Court approval for such bids. The Debtors and the Consulting Parties also continued ongoing negotiations with certain parties in efforts to coordinate bids so that the greatest overall recovery for the Estates would be reached and the greatest number of assets could be sold as parts of multiple bids covering different and, in some cases, overlapping assets.

4. In compliance with the Bidding Procedures Order, the Debtors filed their First Supplement and Modification [Doc 956] (the "First Supplement") to the Sale Motion on February 24, 2015 to provide notice of the results of the Auction and information about the then-current status of the Auction and the Successful Bids. The Debtors also filed the First Supplement to supplement and modify the Sale Motion so that it incorporated and aligned with the Successful Bids that had been accepted at that time, including removing the Myron Bowling bid from further consideration.

5. As described in the First Supplement, the Debtors in consultation with the Consulting Parties, have sought approval of the bids of the Licking River Lenders, Komatsu Financial, L.P., Commercial Bank, and Whayne Supply Company for certain specific assets of the JAD Debtors.

The Court has approved the sales of the JAD Debtors' assets subject to these Successful Bids at prior hearings (collectively, the "Approved Sales"), and the Debtors anticipate that orders formally approving these sales will be entered in the near future.

## II. PROPOSED SALE OF ASSETS TO REVELATION ENERGY, LLC INCLUDING ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES

6. As stated in the First Supplement, some of the JAD Debtors' assets were not included in the Approved Sales, and the Debtors have been in continuing negotiations on potential bids for certain of those "Remaining Assets" (as defined in the First Supplement) in ongoing consultation with the Consulting Parties. By this Second Supplement, the Debtors seek Court approval of the bid of Revelation Energy, LLC ("Revelation") for certain of the JAD Debtors' assets, as set forth in the Asset Purchase Agreement (the "APA"), APA Schedules and associated documents, collectively attached hereto as Exhibit A (or in a final form substantially similar to the attached).

7. The Revelation transaction is for a significant portion of the Remaining Assets, including permits, surety bond replacement, assumption of all reclamation liabilities, and assumption and assignment, with associated cure costs, of certain contracts and leases. The JAD Debtors and Revelation have negotiated the APA at arm's length, and the following description of the APA terms is intended to provide an overview and highlight the material terms and provisions of the JAD Debtors' proposed sale to Revelation (the "Proposed Revelation Sale"). Interested parties should refer to the documents in Exhibit A hereto to review the complete and detailed terms thereof. In the event of any inconsistencies between this summary and the APA, the APA shall govern.

    (a)     The Assets. Revelation will acquire the assets as set forth in the APA Schedules (the "Revelation Purchased Assets") free and clear of all liens, claims, interests, and encumbrances except as specifically assumed by Revelation in the APA. These assets generally include: (a) the majority of the JAD Debtors' fee simple real property; (b) all of the JAD Debtors' coal mining permits; and (c) certain of Debtors' unexpired leases and executory

4

      contracts related to the mining properties. Revelation will acquire $1.5 million of the cash collateral held by Lexon Insurance Co. as security for the bonds that are posted for the JAD Debtors' mining permits, and Revelation will re-bond the permits with Lexon, relieving the Estates of all reclamation obligations.[5]

(b)   <u>Assumption and Assignment of Certain Executory Contracts and Unexpired Leases with Cure Payments</u>. As part of the Proposed Revelation Sale, the JAD Debtors will assume and seek to assign to Revelation the certain executory contracts and unexpired leases set forth on Schedules 2.01(a) and 2.01(e) of the APA (the "<u>Contracts and Leases</u>"). In connection with the closing, Revelation will pay or otherwise promptly cure the Cure Claims as set forth on Schedules 2.01(a) and 2.01(e) of the APA for each Contract or Lease to the non-debtor party to said Contract or Lease, or such other amount as such non-debtor party and Revelation may agree or the Court may order as part of the Sale hearing to fully cure any outstanding defaults under said Contract or Lease (the "<u>Cure Amounts</u>"). Debtors believe that each of these contract and lease parties have agreed to the proposed Revelation assignment and cure satisfaction terms.

(c)   <u>Consideration</u>. The consideration for the Proposed Revelation Sale is as follows:

    (i)   Revelation will pay $5.9 million over time plus interest (the "<u>Cash Purchase Price</u>") to be secured for the benefit of the Estates and their creditors as their respective interests may be adjudicated in such order of priority and as allocated among all the assets being sold, to be determined by further order of this Court;

    (ii)   In addition to the Cash Purchase Price, Revelation will assume all of the JAD Debtors' reclamation liabilities and obligations under the Debtors' coal mining permits set forth on Schedule 2.01(g) of the APA, and the Debtors and the Estates will have no further obligation for same and will be released from any further obligations related thereto;

    (iii)   In addition to the Cash Purchase Price, Revelation will assume the payment of the 2015 ad valorem taxes owed on that portion of the JAD Debtors' property which Revelation is purchasing, which have been assessed but are not yet due and payable; and

    (iv)   In addition to the Cash Purchase Price, Revelation will pay all amounts necessary to cure defaults under the Contracts and Leases

---

[5] Upon information and belief, Lexon and the Kentucky Department of Natural Resources generally support the Proposed Revelation Sale.

5

                listed in Schedule 2.01a and 2.01e of the APA by agreement directly with and payment directly to the non-debtor Contract or Lease party (subject to any offset rights as provided in the APA), and the Estates shall have no further obligation thereon.

(d)     Excluded Assets. The Revelation transaction specifically excludes the JAD Debtors' assets set forth on Schedule 2.01(i) of the APA from the Proposed Revelation Sale, which include the JAD equipment assets already sold under the Approved Sales and the assets subject to the pending credit bid of the JAD Sellers[6] discussed in Section IV herein below.

(e)     Liens, Claims, Interests and Encumbrances to Attach to Cash Purchase Price and to be Determined by further Orders of this Court. Certain of the Revelation Purchased Assets are asserted to be encumbered by liens in favor of the JAD Sellers and the Licking River Lenders, some of which have been contested, and other assets are believed to be unencumbered. Other known interests and claims which may be asserted include but are not limited to 2013 and 2014 unmined mineral taxes and/or other *ad valorem* property taxes from tax periods prior to 2015, CAMOFI Master LDC claims on a limited number of items of equipment, surcharge claims preserved for the benefit of the Estates and any trustee, and carve-out claims against any proceeds of the Licking River Lenders as may be determined in accordance with the Final Cash Collateral Order. At present, no agreement has been reached with regard to the allocation of the Cash Purchase Price among the interested parties. If no agreement is reached, the validity, priority, and amounts of all liens, claims, interests and encumbrances will attach to the Cash Purchase Price pending further orders of this Court. Pending agreement or Court order, all cash proceeds attributable to the Cash Purchase Price of the Proposed Revelation Sale shall be paid to and held in escrow by the JAD Debtors and/or any trustee, who shall not use any portion of said proceeds without further Court order.

(f)     Security for Cash Purchase Price. The payment of the Cash Purchase Price over time is secured by an overriding royalty interest and mortgages on the fee real property being conveyed, including the load out facility and the prep plant facility, for the respective benefit of all interested parties as their interests may be determined by further order of this Court. The transaction documents provide that the liens may be later assigned to other parties as part of any adversary proceeding and later rulings on validity, amount and priority of claims.

---

[6] The "JAD Sellers" are, collectively: Julia and Carl McAfee; Dean McAfee Holdings, LLC; and Jeffery Paul Dean, Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008, Donna Mae Kolb, Trustee for the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2008, and Aubra Brian Dean, Trustee or the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008, as successors in interest to the Estate of Aubra Paul Dean.

    (g)    <u>Closing</u>.  The Debtors anticipate that the Proposed Revelation Sale will close as soon as possible following entry of an order approving this Sale Motion, and the APA provides for a closing on or before April 30, 2015.  All parties understand that time is of the essence to complete the closing.

    (h)    <u>Compliance with Applicable Laws.</u>  Nothing in the Proposed Revelation Sale or the APA will release, nullify, preclude, or enjoin the enforcement of any police or regulatory liability (including but not limited to for reclamation and mitigation and any associated long-term protection requirements) to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of any order granting the Sale Motion as it pertains to the Revelation Sale.  Further, nothing in the Proposed Revelation Sale, the APA, or a sale order will authorize the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law.  Additionally, nothing in the Proposed Revelation Sale, the APA, or a sale order will divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret such an order or to adjudicate any defense asserted under that order.  Upon information and belief, the Commonwealth of Kentucky supports the permits transfer and will work to facilitate same in accordance with the relevant laws of the Commonwealth.

### III.    <u>SUPPORT FOR PROPOSED REVELATION SALE</u>

**A.**    <u>**The Proposed Sale Should be Approved for the Reasons Set Forth in the Sale Motion.**</u>

    8.    The Debtors have determined in their business judgment and in consultation with the Consulting Parties that the Proposed Revelation Sale represents the "highest and best" offer to purchase the Revelation Purchased Assets including the assumption of a number of associated liabilities.  Accordingly, the Sale Motion is hereby supplemented, modified, and amended by this Second Supplement to reflect that the Debtors now seek approval to consummate the Proposed Revelation Sale described herein and on substantially similar terms as set forth in the attached documents and such other documents as necessary for closing.

B. **Assumption and Assignment of Contracts and Leases is Appropriate.**

9. At the time that the Sale Motion was filed, the Debtors had not accepted any bids for the assumption and proposed assignment of any of the JAD Debtors' executory contracts and unexpired leases. Since the JAD Debtors now desire to assume certain Leases and Contracts and assign them to Revelation as discussed herein, by this Second Supplement, the Debtors supplement the Sale Motion to include requesting authority for the JAD Debtors to assume and assign the Contracts and Leases to Revelation pursuant to 11 U.S.C. § 365, Fed. R. Bankr. P. 6006, and all other applicable law. In support of this supplement and modification, the Debtors provide the following:

    a. **Relevant Procedural Background**

10. The Lease between J.A.D. Coal Company, Inc. ("JAD") and Black Star Land & Mining, Ltd. has already been assumed by JAD pursuant to the Order Granting Debtors' Fifth Omnibus Motion for an Order Approving Assumption of Certain Unexpired Leases of Real Property [Doc 752] entered by this Court on December 18, 2014. By the Sale Motion, as supplemented by this Second Supplement, JAD requests authority to assign this Lease to Revelation. JAD has not yet assumed the other Leases, and by this Motion, JAD requests authority to assume and assign those Leases to Revelation.

11. On March 30, 2015,[7] JAD and other Debtors filed their First Omnibus Motion for an Order Approving Assumption and Assignment of Certain Unexpired Leases of Nonresidential Real Property [Doc 1130] (the "Assumption Motion"), which seeks authority to assume all of the Leases subject hereto (except for the Black Star lease) and assign them to the extent that the Debtors reach agreements with purchasers to take assignment of those Leases for value. To the extent that the

8

Court grants the Sale Motion as supplemented by this Second Supplement, the portion of the Assumption Motion relating to the Leases subject to the APA will be rendered moot.

**b.    Assumption of the Contracts and Leases is Appropriate under of 11 U.S.C. § 365(a) and the Business Judgment Test.**

12.    Section 365(a) of the Bankruptcy Code provides in relevant part that a debtor in possession may, subject to the court's approval, "assume or reject any unexpired lease or executory contract of the debtor."  11 U.S.C. § 365(a).  While the statutory language itself provides little guidance as to the standards to be applied by a court in approving an assumption or rejection, "[c]ourts initially apply a 'business judgment' and 'benefit to the estate' test under § 365(a) to determine whether or not a debtor should be allowed to assume an executory contract [or unexpired lease]." *In re Greektown Holdings, L.L.C.*, 2009 WL 1653461, *1, Case No. 08-53104-wsd (Bankr. E.D. Mich. 2009) (citing *In re Beare Co.*, 177 B.R. 879, 882 (Bankr. W.D. Tenn. 1944)); *see also In re Structurlite Plastics Corp.*, 86 B.R. 922, 925 n.4 (Bankr S.D. Ohio 1988 ("In order to assume an executory contract [or unexpired lease] under § 365, a debtor must satisfy the 'business judgment' test– *i.e*, it must be established that assumption represents a sound business judgment on the part of the debtor.") (internal citations omitted)); 3 COLLIER ON BANKRUPTCY ¶ 365.03[2] (15th ed. Rev. 2000) ("Under the Code, most courts have applied a 'business judgment' test to trustees' [or a debtor in possession's] decisions to assume or reject contracts or leases.") (internal citations omitted). "Whether an executory contract [or unexpired lease] is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor . . . . [and] [c]ourts should generally defer to a debtor's decision whether to reject an executory contract [or unexpired lease]." *Phar-Mor, Inc. v. Stouss Bldg. Assoc.*, 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) (internal citations omitted).

---

[7] By Order [Doc 755] of this Court, JAD had an extended deadline through and including March 31, 2015 to file its motion to assume the Leases, except for the Black Star Land & Mining lease since it had already been assumed.

13.     In these cases, the JAD Debtors' decision to assume the Contracts and Leases and assign them to Revelation is an appropriate exercise of their business judgment and complies with the requirements of 11 U.S.C. § 365. Assuming the Contracts and Leases and assigning them to Revelation will provide substantial benefit to both the JAD Debtors' Estates and the affected non-debtor parties to those Contracts and Leases. The APA contemplates that Revelation will assume the JAD Debtors' obligations under the Contracts and Leases, including the payment of the related Cure Amounts. This will allow the JAD Debtors to meet their obligations under the Contracts and Leases and substantially repay any related Cure Amounts to the affected non-debtor parties, thereby satisfying a portion of their debts, including both prepetition and postpetition amounts claimed due. It will also allow the JAD Debtors to realize value for their Estates in the form of the consideration that Revelation will convey as part of the Proposed Revelation Sale.

    **c.**    **The Proposed Cure of Defaults under the Contracts and Leases Satisfies the Requirements of 11 U.S.C. § 365(b).**

14.     In addition to satisfying the business judgment test, 11 U.S.C. § 365(b)(1) requires that the JAD Debtors must do the following before they can assume the Contracts and Leases and assign them to Revelation: (a) cure contractual defaults; (b) compensate the nondebtor parties to the Contracts and Leases for any actual pecuniary loss resulting from default; and (c) provide adequate assurance of future performance by the Assignee. The JAD Debtors believe that the only existing defaults under any the Contracts and Leases are monetary, and Revelation intends to substantially cure those defaults by paying or otherwise promptly curing the non-debtor Contract and Lease parties up to the Cure Amounts specified on Schedules 2.01a and 2.01e of the APA or as Revelation may otherwise negotiate with those parties. To that end, the JAD Debtors respectfully request that the Court order that the Cure Amounts set forth on Schedules 2.01a and 2.01e of the APA, or such other

10

amounts to which the JAD Debtors, Revelation, and the non-debtor Contract and Lease parties may mutually agree prior to the hearing to consider the Sale Motion as it pertains to the Proposed Sales, be approved as constituting full cure claims of the JAD Debtors' defaults under the Contracts and Leases, and that no other cure amounts or claims may thereafter be asserted. Furthermore, as Revelation has provided the Contract and Leases parties with adequate assurance of its future performance under the Contracts and Leases (as described below), the JAD Debtors request that the Court find that the requirements of 11 U.S.C. § 365(b)(1) are satisfied and authorize the JAD Debtors to assume the Contracts and Leases.

### d. Assignment of the Contracts and Leases Satisfies the Requirements of 11 U.S.C. § 365(f).

15. Sections 365(f)(1) and (2) of the Bankruptcy Code address assumption of executory contracts and unexpired leases and provide, in relevant part, that the JAD Debtors can assign the Contracts and Leases if they first assume them in accordance with 11 U.S.C. § 365 and also provide adequate assurance of Revelation's future performance under the same. "Congress intended that the words 'adequate assurance' be given a practical, pragmatic construction, and is to be determined under the facts of each particular case." *In re Bygaph*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) (citation omitted). "The bankruptcy code generally favors the free assignability of the debtor's unexpired leases [and executory contracts] . . . in order to maximize the value of the debtor's estate." *Weingarten Nostat, Inc. v. Service Merchandise Co., Inc.*, 396 F.3d 737, 742 (6th Cir. 2005) (citing *LRSC Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers)*, 209 F.3d 291, 299 (3d. Cir. 2000)). Adequate assurance should ensure that the other party to the contract or lease "gets the benefit of the bargain for which he has contracted . . . . But he is not entitled to greater rights than are given by the lease [or contract]." *Chera v. 991 Bouelvard Realty Corp, et al. (Matter of National*

11

*Shoes, Inc., et al.)*, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982) (citing *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981)).

16.     The JAD Debtors believe that the Contracts and Leases can properly be assigned under 11 U.S.C. §§ 365(f)(1) and (2). For the reasons set forth above, the JAD Debtors' assumption of the Contracts and Leases complies with the requirements of 11 U.S.C. §§ 365(a) and (b). The JAD Debtors' assignment of the Contracts and Leases similarly complies with the requirements of 11 U.S.C. § 365(f)(2). The JAD Debtors understand that Revelation will also work directly with the non-debtor parties to the Contracts and Leases between now and the hearing to consider the Sale Motion as it pertains to the Proposed Revelation Sale to ensure that those parties are adequately assured that it will fully perform its contractual obligations in the future. The JAD Debtors and Revelation will be prepared to proffer evidence with respect to such assurances at the hearing. Accordingly, the JAD Debtors submit that they have established, or will establish at the hearing, that the proposed assignment of the Contracts and Leases satisfies the requirements of 11 U.S.C. § 365(f) and should, therefore, be approved.

     **e.**    **<u>Waiver of Bankruptcy Rule 6006(d) is Warranted.</u>**

17.     Fed. R. Bankr. P. 6006(d) provides that "[a]n order authorizing the trustee [or the debtor in possession] to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons set forth in the Sale Motion and enumerated at the hearing in these cases on March 31, 2015, time is of the essence in these cases, and it is imperative that the Proposed Revelation Sale of the JAD Assets and assignment of the Contracts and Leases be completed as soon as possible. Accordingly,

the Debtors request that the Court waive the fourteen-day stay of any order authorizing the assumption and assignment of the Contracts and Leases and the Sale set forth herein.

### IV. REMAINING ASSETS AFTER PROPOSED SALE

18. Together, the Approved Sales and the Proposed Revelation Sale encompass the majority of the JAD Debtors' assets. However, a small portion of the JAD Debtors' equipment assets and a single mining permit are not included in any of these Sales. A list of those known leftover and remaining assets is attached hereto as Exhibit B. As noted on Exhibit B, the majority of these remaining assets are subject to a pending and not-yet-accepted credit bid by the JAD Sellers. They are also subject to the JAD Sellers' pending Motion for Relief from Stay [Doc 1153]. The JAD Sellers' credit bid is the subject of ongoing discussion and negotiation, but no agreement regarding that bid has been reached as of the filing hereof.

### V. PROPOSED SALE ORDER

19. The Debtors, Revelation, and the Consulting Parties have and continue to finalize and negotiate a proposed order granting the Sale Motion including assumption and assignment as it pertains to the Proposed Revelation Sale and approving this Sale, the APA, other transaction documents, and authorizing the Debtors to execute such other documents at closing in order to consummate the Transaction. A copy of the most current proposed order is attached hereto as Exhibit C to provide notice of the terms of the order to the Court and all interested parties, although same is subject to ongoing review and comment by various parties in interest.

WHEREFORE, the Debtors respectfully request that this Court enter an order: (a) granting the Sale Motion as supplemented and modified herein; (b) approving the Proposed Revelation Sale and authorizing the Debtors to sell the Revelation Purchased Assets to Revelation free and clear of

liens, claims, interests, and encumbrances except as expressly assumed in the APA, with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale including the Cash Purchase Price and the liens securing the payment of the Cash Purchase Price; (c) authorizing the JAD Debtors to assume and assign the Contracts and Leases to Revelation and establishing related cure amounts; (d) waiving the stay requirements of Fed. R. Bankr. P. 6006(d); and (e) granting the Debtors such other and further relief as the Court deems just and proper.

## **NOTICE**

Notice is hereby given that the Sale Motion, as supplemented and modified herein, shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Third Floor, Lexington, Kentucky, on **Wednesday, April 8, 2015**, at 9:30 a.m. or as soon thereafter as counsel may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Amelia Martin Adams, Esq.
KY Bar No. 93038
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
aadams@dlgfirm.com
ldelcotto@dlgfirm.com

and

NIXON PEABODY LLP

/s/ Dennis J. Drebsky, Esq.
NY Bar No. 1181007
Christopher M. Desiderio, Esq.
NY Bar No. 4350633
437 Madison Avenue
New York, NY 10022-7039
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
ddrebsky@nixonpeabody.com
cdesiderio@nixonpeabody.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

Z:\Sale (JAD) Mot Supp & Mod 2d (Revelation) 20150406.doc