UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND, LONDON, AND LEXINGTON DIVISIONS

IN RE:                                                          CHAPTER 11

LICKING RIVER MINING, LLC, *et al.*                             CASE NO. 14-10201

    DEBTORS IN POSSESSION                                     JOINTLY ADMINISTERED

---

**ORDER AUTHORIZING SALE OF ASSETS OF J.A.D. COAL COMPANY, INC.,
FOX KNOB COAL CO., INC., AND SANDLICK COAL COMPANY, LLC
TO REVELATION ENERGY, LLC FREE AND CLEAR OF LIENS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (B) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365;
(C) ESTABLISHING CURE AMOUNTS; AND (D) WAIVING THE
STAYS IMPOSED BY FED. R. BANKR. P. 6004(h) AND 6006(D)**

---

This matter having come before the Court on the Motion for Entry of an Order (A) Authorizing Sale of Substantially All Assets of J.A.D. Coal Company, Inc., Fox Knob Coal Co., Inc., and Sandlick Coal Company, LLC Free and Clear of Liens and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); and (B) Waiving the Stay Imposed by Fed. R. Bankr. P. 6004(h) [Doc 912] as supplemented and modified by the Debtors' Second Supplement and Modification [Doc 1178] (together, the "Sale Motion") filed in the above-captioned bankruptcy proceedings by Licking River Mining, LLC, Licking River Resources, Inc., S. M. & J., Inc., Fox Knob Coal Co., Inc., J.A.D. Coal Company, Inc., U.S. Coal Corporation, Harlan County Mining, LLC, Oak Hill Coal, Inc., Sandlick Coal Company, LLC, and U.S. Coal Marketing, LLC, as jointly-administered debtors and debtors in possession (collectively, the "Debtors"); and it appearing that proper notice of the Sale Motion was given in accordance with the Order (A) Approving Bidding Procedures and Related Deadlines; (B) Scheduling Date and Time for Sale Hearing; (C) Approving Form and Manner of

Notice of Same; and (D) Approving Form and Manner of Notice of Proposed Assumption and

Assignment or Rejection of Certain Executory Contracts and/or Unexpired Leases and Related Cure

Claims; and (E) Approving Shortened Notice and Expedited Hearing on the Same [Doc 817] (the

"Bidding Procedures Order"); and it appearing that the relief sought by the Debtors is necessary and

in the best interest of the Debtors, their Estates, and other parties in interest; and it further appearing

that any timely objections being hereby overruled, and the Court having reviewed the record, and

having considered same;

THE COURT HEREBY FINDS AND DETERMINES as follows:

A.      This Court has jurisdiction over these Chapter 11 cases, the Sale Motion, and the

proposed sale of the assets (the "JAD Assets") of J.A.D. Coal Company, Inc., Fox Knob Coal Co.,

Inc., and Sandlick Coal Company, LLC (collectively, the "JAD Debtors") described in the Sale

Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28

U.S.C. §§ 157(b)(2)(A), (N), and (O).

B.      Venue for these Chapter 11 cases and the Sale Motion is proper in this District under

28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief sought through the Sale Motion are 11 U.S.C.

§§ 105(a), 363(b), (f), and (m), and 1107, Fed. R. Bankr. P. 2002 and 6004, and all other applicable

law.

D.      Proper, timely, adequate, and sufficient notice of the sales proposed in the Sale

Motion has been provided in accordance with 11 U.S.C. §§ 102(1), and 363(b) and Fed. R. Bankr.

P. 2002, 6004, and 9014, including to all parties to executory contracts or unexpired leases and to

creditors who have asserted or who could assert Liens and Claims (as hereinafter defined), and in

substantial compliance with the Bidding Procedures Order.  Such notice was good and sufficient, and

appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the

hearing to consider the Sale Motion (the "Sale Hearing"), and/or the sale of the JAD Assets shall be

required.

E.    As selected in accordance with the Bidding Procedures Order, Revelation Energy,

LLC (the "Purchaser") is the successful bidder for the sale (the "Sale") of the JAD Assets

(the "Purchased Assets") in the Asset Purchase Agreement (the "APA") and the associated

documents and instruments, including the Assignment and Assumption of Assumed Contracts

Agreement, the Assignment and Assumption of Leases Agreement, the Bill of Sale, the Overriding

Royalty Agreement, the Permit Transfer Agreement, the Real Estate Mortgage, the Security

Agreement, the Surety Letter Agreement, the Special Warranty Deed, the Throughput Agreement,

and each other document, agreement or instrument executed and delivered in connection herewith

(collectively, the "Transaction Documents").  For the avoidance of doubt, the Purchased Assets

includes the Contracts and Leases (as defined below).

F.    Upon execution and delivery of the Real Estate Mortgage and the Security

Agreement (each as defined in the APA) and recording of the Real Estate Mortgage, financing

statements and financing statements filed as fixture filings in the appropriate offices describing the

collateral identified in the Real Estate Mortgage and Security Agreement, the JAD Debtors shall

hold valid and perfected first and prior purchase-money security interests and mortgage liens in

favor of the JAD Debtors in the Purchased Assets described in the Real Estate Mortgage and

Security Agreement securing the obligations of Purchaser under the Overriding Royalty Agreement

and Throughput Agreement (each as defined in the APA), which purchase-money security interests

and mortgage liens are assignable by JAD Debtors as contemplated by this Order.[1]

        G.      A reasonable opportunity to object or be heard with respect to the Sale Motion and

the relief requested therein, and the rights of third parties to submit higher or otherwise better offers

for all or any portion of the JAD Assets at the Auction[2] in accordance with the Bidding Procedures

Order approved by this Court, has been afforded to all interested persons and entities.

        H.      The Purchased Assets are property of the JAD Debtors' bankruptcy Estates within the

meaning of 11 U.S.C. § 541, and upon entry of this Order, the JAD Debtors will have the power to

convey, assign and transfer the Purchased Assets to the Purchaser.  All consideration paid by the

Purchaser to the JAD Debtors, and all rights, title and interest therein shall be freely assignable by

the JAD Debtors, in their sole discretion, without further order of this Court, subject to footnote 1

herein above.

        I.      The Debtors have faithfully exercised their duties in considering all offers and bids,

in consultation with the Consulting Parties throughout the sale and bidding process, and in

ultimately determining that the Sale of the Purchased Assets to the Purchaser represents the highest

and best value to the Estates.

---

[1] It is contemplated that upon the Court's approval of the Joint Motion for Approval of Settlement Pursuant to Bankruptcy Rule 9019 and entry of the Settlement Order tendered therewith [Doc 1255], which is scheduled for hearing contemporaneously with the Sale Motion on April 16, 2015, the JAD Debtors shall assign their valid and perfected first and prior purchase money security interest in the Purchased Assets described in the Real Estate Mortgage and Security Agreement securing the obligations of Purchaser under the Overriding Royalty Agreement and Throughput Agreement (each as defined in the APA) to Julia L. McAfee and Carl E. McAfee (the "McAfees"); Dean McAfee Holdings, LLC ("McAfee Holdings"); Jeffery Paul Dean, Trustee of the Trust for Jeffery Paul Dean (GS Exempt), under Agreement dated August 29, 2008; Donna Mae Kolb, Trustee for the Trust for Donna Mae Kolb (GS Exempt), under Agreement dated August 29, 2008; and Aubra Brian Dean, Trustee for the Trust for Aubra Brian Dean (GS Exempt), under Agreement dated August 29, 2008 (collectively, the "Deans" or the "Dean Heirs"), as successors in interest to the Estate of Aubra Paul Dean [and together with McAfee Holdings, and the McAfees, collectively, the "JAD Lenders"].

[2] All capitalized terms not otherwise defined herein shall have the meanings given to them in the Sale Motion.

J.    The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justification, and (ii) compelling circumstances for the Sale of the Purchased Assets to the Purchaser pursuant to 11 U.S.C. § 363.  Such justification and compelling circumstances include, but are not limited to, the fact that (a) the Purchaser's bid constitutes the highest and best offer for the Purchased Assets; and (b) consummation of the Sale of the Purchased Assets presents the best opportunity to realize the highest value for the Purchased Assets and avoid potential decline and devaluation thereof, relieves the Estates of significant liabilities including certain administrative claims, and assures the reclamation of the properties by the transfer of permits and associated reclamation obligations to the Purchaser in an orderly and timely manner.

K.    After consideration of the circumstances described in the Sale Motion and at the Sale Hearing, the Court has determined that the proposed Sale to the Purchaser pursuant to the APA and other documents represents the best opportunity for the JAD Debtors' Estates to realize the greatest value for the Purchased Assets and will provide a greater recovery for the JAD Debtors' creditors than would be provided by any other practical alternative method.

L.    In accordance with the Bidding Procedures, the Purchaser's bid to purchase the Purchased Assets represents the highest and best bid received by the JAD Debtors after a period in which third parties had adequate opportunity to seek information and enter into negotiations and auction with the JAD Debtors concerning a sale of the JAD Assets that maximizes recovery to the JAD Debtors' Estates and creditors.

M.    The consideration obtained for the Purchased Assets from the Purchaser is fair and reasonable, represents the highest and best offer for the Purchased Assets, and is in the best interests of the JAD Debtors, their creditors, and their Estates.  The cash purchase price combined with the

assumption of liabilities constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets.

N.      The purchase terms, as set forth in this Order, the APA and the Transaction Documents, are fair and reasonable under the circumstances of these Chapter 11 cases and these proceedings and are in accordance with current market standards.  The Purchaser is a purchaser in good faith with respect to the Purchased Assets, as that term is used in 11 U.S.C. § 363(m).  The APA and this Order were negotiated, proposed, and entered into by the JAD Debtors and the Purchaser in good faith, from arm's-length bargaining positions, and without collusion.  The Purchaser is not connected to or in any way related to the JAD Debtors. The sale process conducted pursuant to the Bidding Procedures Order was non-collusive, fair, and reasonable, and it was conducted openly and in good faith.  The Purchaser is entitled to the protections of 11 U.S.C. § 363(m) with respect to the Purchased Assets.  The Sale of the Purchased Assets to the Purchaser is a sale in good faith within the meaning of 11 U.S.C. § 363(m).  The Purchaser and the JAD Debtors have not engaged in any conduct that would cause or permit the Sale or the APA to be avoided.  The Purchaser is not an "insider" of any of the JAD Debtors, as that term is defined in 11 U.S.C. § 101.

O.      The JAD Debtors may sell the Purchased Assets free and clear of all Liens and Claims (as defined below) because, in each case, one or more of the standards set forth in 11 U.S.C. §§ 363(f)(1) - (5) have been satisfied.  All holders of Liens and Claims (as defined below) and all parties who did not object to the Sale Motion are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

P.      As a condition to purchasing the Purchased Assets, the Purchaser requires that: (a) the Purchased Assets be sold free and clear of all Liens and Claims, and (b) the Purchaser have no liability whatsoever for any pre-closing obligations unless expressly assumed pursuant to this

Order and the APA.  The Purchaser would not enter into the APA or consummate the Sale, thus adversely affecting the Estates, if the Sale was not free and clear of all Liens and Claims (as defined below) or if the Purchaser was or would be liable for any obligations of or claims (as defined in 11 U.S.C. § 101(5)) against the JAD Debtors other than any liabilities expressly assumed in this Order.

Q.      Any of the executory contracts and unexpired leases that the Purchaser has agreed to purchase, be assigned and assume, and which are in default at the time of the Sale, shall be cured by the Purchaser as provided in the APA or as otherwise agreed to by the Purchaser and the non-debtor parties to those contracts and leases.  All other requirements and conditions under 11 U.S.C. § 365 for the assumption of the executory contracts and unexpired leases by the JAD Debtors and for the JAD Debtors' assignment of said contracts and leases to the Purchaser have been satisfied.

R.      The JAD Debtors have full power and authority to execute and deliver the Purchased Assets, the APA, the Transaction Documents and any other documents necessary or appropriate to consummate the Sale of the Purchased Assets as contemplated under the APA.  All actions contemplated by the APA have been duly and validly authorized by all necessary action of the JAD Debtors.   No further consents or approvals are required for the JAD Debtors to consummate the transactions contemplated by this Order, the APA or the Transaction Documents, except as otherwise set forth herein and in the APA, subject to paragraph 26 below.

S.      An injunction against the creditors and third parties pursuing any Liens and Claims (as hereinafter defined) is necessary to induce the Purchaser to close the Sale under the APA. Therefore, the issuance of such an injunction is necessary to avoid irreparable injury to the JAD Debtors' Estates and will benefit all creditors.

T.      The Purchaser is not a mere continuation of the Debtors:

      i.      The Sale is not being entered into fraudulently.  The Sale has been properly noticed in accordance with the approved Bidding Procedures Order.

ii.     The Purchaser is not holding itself out to the public as a continuation of the JAD Debtors.

iii.    The Purchaser (a) is not, as a result of any action taken in connection with the purchase of the Purchased Assets or otherwise, successor to the JAD Debtors (other than with respect to any obligations arising under the executory contracts and unexpired leased purchased by the Purchaser from and after the Closing); and (b) has not, *de facto* or otherwise, merged or consolidated with or into the JAD Debtors.

iv.    The Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the JAD Debtors.

v.    The Purchaser is not merely a continuation of the JAD Debtors, there is not substantial continuity between the Purchaser and the JAD Debtors, and there is no continuity of enterprise between the JAD Debtors and the Purchaser.

U.    The transfer of the Purchased Assets to the Purchaser is or will be a valid, legal, and effective transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the JAD Debtors in and to the Purchased Assets, free and clear of all Liens and Claims (as defined below).

V.    All findings of fact and conclusions of law announced by this Court at the Sale Hearing in relation to the Sale Motion are incorporated herein by reference as though fully set forth in this Order.

IT IS HEREBY ORDERED as follows:

1.    The Sale of the Purchased Assets is APPROVED as set forth herein.

2.    Any objections to the Sale that have not been withdrawn, waived, or resolved, and all reservation of rights included in such objections, are hereby OVERRULED on the merits.

3.    Any objections to the assumption and assignment of the executory contracts and unexpired leases (each individually, a "Contract" or a "Lease," and collectively, the "Contracts and Leases") or the proposed Cure Amounts set forth on Schedules 2.01(a) and 2.01(e) of the APA that

have not been withdrawn, waived, or resolved, and all reservations of rights included in such

objections are hereby OVERRULED on the merits. All objections to the assumption and assignment

of the Contracts and Leases and/or the proposed Cure Amounts that were not timely filed be, and are

hereby, forever barred.

4.       The APA and all other transactions contemplated therein are hereby APPROVED, and

the JAD Debtors and their professionals are authorized, empowered, and directed to perform their

obligations under the APA and to take such actions as are necessary or appropriate to effectuate the

terms of the APA and this Order. The failure specifically to include any particular provision of the

APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent

of the Court that the APA and the Transaction Documents be authorized and approved in their

entirety. In the event of any inconsistency between the terms of the APA or the Transaction

Documents and this Order, the terms of this Order shall control.

5.       Pursuant to 11 U.S.C. §§ 105(a) and 363(f), upon the closing of the Sale of the

Purchased Assets (the "Closing"), the Sale will be a legal, valid, and effective sale, assignment, and

transfer of the Purchased Assets to the Purchaser of same and shall vest the Purchaser with good and

marketable title to the Purchased Assets free and clear of: (i) any mortgage, lien (as such term is

defined in 11 U.S.C. § 101(37) including any mechanic's, materialman's, statutory, and any other

consensual or non-consensual lien), security interest, charge, hypothecation, deed of trust, pledge,

right of use, first offer or refusal, easement, servitude, restrictive covenant, lease, sublease, covenant,

right of way, option, restriction (including, without limitation, any restriction on transfer or on the

use, voting, receipt of income or other rights or exercise of any attributes of ownership), conditional

sale or other title retention agreements, interest, encroachment, or encumbrance of any kind, or claim

(as that term is defined in 11 U.S.C. § 101(5)) and including, without limitation, any claim against

the Purchaser and/or any of the assets or properties of the Purchaser (including, without limitation, the Purchased Assets) based on a theory of successor liability, alter-ego, or any similar theory of liability) (all of the foregoing collectively referred to as "Liens"), and (ii) any debt, liability, or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due) and all costs and expenses relating thereto (all of the foregoing collectively referred to as "Claims"); provided, however, Liens and Claims shall not include any liens or liabilities that the Purchaser is expressly assuming under the APA as part of the consideration for the transaction, the overriding royalty and throughput fee interests reserved by the JAD Debtors under the APA and related deed and the liens and obligations being granted and incurred by Purchaser as part of the consideration for the transaction and security therefor (collectively, the "Assumed Liabilities"), which shall be the Purchaser's obligation.  The Liens and Claims, and expressly including all cash collateral carve-out claims/liens and surcharge claims for the benefit of the Estates, shall attach to the proceeds of the Sale, which proceeds shall expressly include each item constituting the Transaction Documents (the "Sale Proceeds") with the same validity, enforceability, priority, force, and effect that they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections of all interested parties with respect to such Liens and Claims, including rights of the Debtors' Estates under Chapter 5 of the Bankruptcy Code, all such issues to be reserved for further Orders of the Court.

6.      Upon execution and delivery of the Real Estate Mortgage and the Security Agreement (each as defined in the APA) and recording of the Real Estate Mortgage, financing statements and financing statements filed as fixture filings in the appropriate offices describing the collateral identified in the Real Estate Mortgage and Security Agreement, the JAD Debtors shall hold valid and perfected first and prior purchase-money security interests and mortgage liens in favor of the

JAD Debtors in the Purchased Assets described in the Real Estate Mortgage and Security Agreement securing the obligations of Purchaser under the Overriding Royalty Agreement and Throughput Agreement (each as defined in the APA), which purchase-money security interests and mortgage liens are assignable by JAD Debtors as contemplated by this Order, subject to footnote 1 herein above.

7.      As of the Closing, all persons and entities holding Liens and/or Claims and their respective successors and assigns, are hereby forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens and Claims of any kind and nature against the Purchaser, the Purchased Assets, or any other assets or properties of the Purchaser.

8.      On and after the Closing, the Purchaser will not assume, be liable for, have any responsibility for, or otherwise become obligated in respect of any liabilities or any other obligations of the JAD Debtors except that Purchaser shall assume and have all liability and responsibility for the Assumed Liabilities.

9.      The Purchaser shall not have any liability arising from or under, relating to, or in connection with the Liens or Claims, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, except for the Assumed Liabilities.

10.     The Contracts and Leases set forth on Schedules 2.01(a) and 2.01(e) of the APA are either (i) executory contracts or unexpired leases under 11 U.S.C. § 365(a) which may be assumed by the JAD Debtors (or, in the case of the lease with Black Star Land & Mining, Ltd., have already been assumed under prior Order [Doc 752] of this Court) and assigned to the Purchaser pursuant to the provisions of 11 U.S.C. § 365(f)(2), or (ii) non-executory contracts that may otherwise be assigned to the Purchaser according to their terms and applicable law.  At the Closing of the Sale the JAD Debtors are authorized to assume (to the extent not already assumed) and assign the Contracts

and Leases to the Purchaser, subject to the terms of the APA, which shall vest the Purchaser with all right, title and interest in and to the Contracts and Leases, effective as of the Closing Date, and the Estates shall be relieved of any further obligations or liabilities associated therewith.  All such Cure Amount payments shall be paid in connection with  the Closing or as otherwise agreed between Purchaser and the non-debtor party to the related Contract or Lease, directly from the Purchaser to the appropriate cure claimant, and shall (a) effect a cure of all defaults existing under the related Contract or Lease at the time of the Closing, (b) compensate for any actual pecuniary loss to such non-debtor party to the Contract or Lease resulting from such default, and (c) together with the assumption of the Contracts and Leases by the Purchaser, constitute adequate assurance of future performance by the Purchaser under the Contracts and Leases.  The JAD Debtors pursuant to 11 U.S.C. § 365(f) are authorized to take all steps necessary to assign said Contracts and Leases to the Purchaser.  This assignment shall not constitute a default under the Contracts and Leases, and neither the JAD Debtors nor the Purchaser shall have any further liabilities to the non-debtor parties to the Contracts and Leases, other than the Purchaser's obligations under those Contracts and Leases arising from and after the Closing.

11.    All Sale Proceeds attributable to the Cash Purchase Price for Sale of the JAD Assets to the Purchaser shall be paid to the JAD Debtors until further orders of this Court.  The JAD Debtors shall hold such Sale Proceeds in local counsel's escrow account and shall not use or otherwise distribute those proceeds without further order of this Court after notice and a hearing. Notwithstanding anything to the contrary contained herein, all right, title and interest in and to (i) the consideration to be paid to the JAD Debtors under the terms of the APA and (ii) all documents or instruments creating any obligation in connection with or securing the payment of such consideration, including but not limited to, the Transaction Documents, shall be freely assignable by

the JAD Debtors to any party as determined by the JAD Debtors in its sole discretion and without

any further action or approval of the Court, subject to footnote 1 herein above.

12.       All parties and/or entities asserting Liens and Claims against the Purchased Assets are

hereby permanently enjoined and precluded from:  (i) pursuing such Liens and Claims against the

Purchased Assets, excluding the Sale Proceeds reserved herein; (ii) asserting, commencing, or

continuing in any manner any action against the Purchaser or any director, officer, agent,

representative, or employee of the Purchaser (save and except for any former or existing officer,

director, or employee of the JAD Debtors), (collectively, the "Protected Parties"), or against any

Protected Party's assets or properties on account of such Liens and Claims; (iii) the enforcement,

attachment, collection, or recovery, by any manner or means, of any judgment, award, or decree or

order against the Protected Parties or any assets or properties of the Protected Parties on account of

such Liens and Claims; (iv) creating, perfecting, or enforcing any encumbrance of any kind against

the Protected Parties or any properties or assets of the Protected Parties on account of such Liens and

Claims; (v) asserting any setoff, right of subrogation or recoupment, or other affirmative defense of

any kind against any obligations due to the Protected Parties on account of such Liens and Claims;

(vi) taking any action, in any manner, in any place whatsoever, that does not conform to or comply

with provisions of this Order or the APA; and (vii) asserting that, with respect to the JAD Debtors,

the Purchaser is a successor or successor-in-interest, pursuant to any other statutory or legal or

equitable theory, including, without limitation, worker's compensation, occupational disease,

pension and employee benefits, labor and employment, bulk sales or tax law obligations; provided,

however, that the Purchaser shall not be relieved of liability with respect to obligations expressly

assumed, created or agreed to by Purchaser pursuant to the APA or this Order or accruing under the

Contracts and Leases from and after the Closing.

13.     Each non-debtor party in interest to a Contract or Lease is hereby barred from asserting against the JAD Debtors, the Purchaser, or the JAD Assets any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

14.     Each and every federal, state, and local governmental agency or department, subject to paragraph 26 below, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order and the APA, including, without limitation, documents and instruments for recording in any governmental agency or department required to transfer to the Purchaser:  (i) ownership and/or development of the Purchased Assets and liens and security interests in the Purchased Assets in favor of the JAD Debtors as contemplated by the APA; (ii) the operations that are associated with the Purchased Assets; and, where applicable (iii) all licenses and permits for the operation of the Purchased Assets.  Any filing officer is hereby ordered to accept filing of such documents and/or this Order in any record books requested without the need to determine whether such filing is proper or allowed under local or state law.

15.     If any person or entity that has filed financing statements, mortgages, liens, *lis pendens*, or other documents evidencing Liens and Claims against the Purchased Assets sold pursuant to this Order shall not have delivered to the JAD Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens and Claims that the person or entity has with respect to such Purchased Assets, the JAD Debtors, or the Purchaser after Closing, are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to such Purchased Assets.  The obligation to record such instruments is governed by Paragraph 14 of this Order.

16.     Any entities that are presently, or as of the Closing may be, in possession of any

portion of the Purchased Assets sold pursuant to this Order are hereby directed to surrender

possession of such Purchased Assets to the Purchaser on the date of the Closing.

17.     The transfer of the Purchased Assets pursuant to this Order, the APA, and the

Transaction Documents:  (a) is a legal, valid, and effective transfer of the Purchased Assets from the

JAD Debtors to the Purchaser; (b) vests in the Purchaser all right, title, and interest of the JAD

Debtors and all other claimants or parties in interest in and to the Purchased Assets; and (c)

constitutes a transfer for reasonably equivalent value and good and adequate consideration under the

Bankruptcy Code and all other law applicable to such transfer.  No other person, entity, or group of

entities has offered to purchase the Purchased Assets for greater economic value to the JAD Debtors'

Estates than the Purchaser.

18.     The transactions contemplated by this Order and the APA have been bargained for

and undertaken by the Purchaser and the JAD Debtors at arm's length, without collusion, and in

good faith within the meaning of 11 U.S.C. § 363(m).  The Purchaser and the JAD Debtors have not

engaged in any conduct that would cause or permit this Order or the APA to be avoided.

19.     Pursuant to 11 U.S.C. § 363(m), if any or all of the provisions of this Order are

hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such

reversal, modification, or *vacatur* shall not affect the validity and enforceability of any obligation or

right granted pursuant to the terms of this Order.  Notwithstanding any reversal, modification, or

*vacatur* of this Order, any actions taken by either the Purchaser or the JAD Debtors pursuant to the

terms of this Order prior to the effective date of any such reversal, modification, or *vacatur* shall be

governed in all respects by the original provisions of this Order, the APA and/or the Transaction

Documents, as the case may be.

20.     Neither the Purchaser nor the JAD Debtors have engaged in any conduct that would cause or permit the Sale, APA, and/or Transaction Documents to be avoided pursuant to 11 U.S.C. § 363(n).

21.     The JAD Debtors and their professionals be and hereby are authorized, empowered, and directed to take such actions as may be necessary to effectuate the terms of this Order and consummate the transaction, including release of the bond collateral as a part of effectuating the transfer of the permits and the re-bonding process with the Commonwealth of Kentucky.

22.     The JAD Debtors be and are hereby authorized, empowered, and directed to execute and deliver any and all instruments as may be required to effectuate the terms of the APA and this Order, including, but not limited to, executing or consenting to any Transaction Documents with the Purchaser.  The APA, the Transaction Documents and any agreements, documents, or other instruments related to this Order or the transactions contemplated herein may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the JAD Debtors' Estates.

23.     The provisions of this Order and any actions taken pursuant hereto shall survive any conversion or dismissal of these bankruptcy cases and the entry of any other order which may be entered in these cases, including any order:  (i) confirming any plan of reorganization; (ii) converting these cases from Chapter 11 to Chapter 7; (iii) appointing a trustee or examiner; or (iv) dismissing these cases.  The terms and provisions of this Order, as well as the rights granted under the APA and the Transaction Documents, shall continue in full force and effect and shall be binding upon the JAD Debtors and their respective affiliates, successors, assigns, any reorganized debtor, or Chapter 7 or

11 trustee applicable to the JAD Debtors and their Estates, or any person acting on the JAD Debtors'

behalf, notwithstanding any such conversion, dismissal, or order entry.

24.     All of the transfers and other performance set forth in this Order, the APA and the

Transaction Documents, together with the performance under all of the agreements identified herein

to be executed and performed at Closing, are part of a single transaction such that the same is not

subject to being avoided, rejected, or otherwise terminated or modified by a division or separate

treatment of the various agreements or component transactions.  Accordingly, the provisions of this

Order are non-severable and mutually dependent.

25.     The Court shall retain exclusive jurisdiction to enforce the provisions of this Order

and the APA and to resolve any dispute concerning this Order, the APA, disputes regarding the

Purchased Assets, and/or the rights and duties of the parties hereunder or thereunder, or any issues

relating solely to the APA and this Order, including, but not limited to, interpretation of the terms,

conditions, and provisions hereof, and the status, nature, and extent of the Purchased Assets, and all

issues and disputes arising in connection with the relief authorized herein, inclusive of those

concerning the transfer of the Purchased Assets free and clear of Liens and Claims as set forth

herein.

26.     Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the

enforcement of any police or regulatory liability (including but not limited to for reclamation and

mitigation and any associated long-term protection requirements) to a governmental unit that any

entity would be subject to as the owner or operator of property after the date of entry of this Order.

Nothing in this Order or the APA authorizes the transfer or assignment of any governmental

(a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of

any obligation thereunder, without compliance with all applicable legal requirements under police or

regulatory law.  Nothing in this Order or the APA divests any tribunal of any jurisdiction it may

have under police or regulatory law to interpret this Order or to adjudicate any defense asserted

under this Order.

27.     Purchaser shall obtain from the Debtor all books, records, files and papers, whether in

hard copy or computer format, related to the Purchased Assets, including any information relating to

any tax imposed on the Purchased Assets; provided, however, that the Debtor may retain copies of

the same;  and provided, further, however, that the Purchaser is not acquiring the computer servers,

electronic mail records or financial records of the JAD Debtors.

28.     Pursuant to, and to the extent necessary under, Fed. R. Bankr. P. 6004(h) and

6006(d), this Court hereby expressly finds and concludes that there is no just cause for delay in the

implementation of this Order.  This Order therefore shall not be stayed for fourteen days after its

entry.  Notwithstanding any provision of the Bankruptcy Code or Federal Rules of Bankruptcy

Procedure to the contrary, this Order shall be effective and enforceable immediately upon entry, and

any stays thereof, including without limitation pursuant to Fed. R. Bankr. P. 6004(h) and 6006(d),

are hereby abrogated.

Tendered by:

DELCOTTO LAW GROUP PLLC

/s/ Amelia Martin Adams, Esq.
KY Bar No. 93038
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY  40507
Telephone:  (859) 231-5800
Facsimile:  (859) 281-1179
aadams@dlgfirm.com
ldelcotto@dlgfirm.com

and

NIXON PEABODY LLP

/s/ Dennis J. Drebsky, Esq.
NY Bar No. 1181007
Christopher M. Desiderio, Esq.
NY Bar No. 4350633
437 Madison Avenue
New York, NY 10022-7039
Telephone:  (212) 940-3000
Facsimile:  (212) 940-3111
ddrebsky@nixonpeabody.com
cdesiderio@nixonpeabody.com

COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION

HAVE SEEN:

DINSMORE & SHOHL LLP

/s/ Janet Smith Holbrook, Esq.
611 Third Avenue
Huntington, WV 25701
Telephone:  (304) 691-8330
Facsimile:   (304) 522-4312
janet.holbrook@dinsmore.com
COUNSEL FOR REVELATION ENERGY, LLC

FOLEY & LARDNER LLP

/s/ Geoffrey S. Goodman, Esq.
IL Bar No. 6272297
321 N. Clark Street, Suite 2800
Chicago, IL 60654
Telephone: (312) 832-4514
Facsimile:  (312) 832-4700
ggoodman@foley.com

and

BARBER LAW PLLC

/s/ Kent Barber, Esq.
KY Bar No. 092456
420 Merribrook Court
Lexington, KY 40503
Telephone:  (606) 776-6866
kbarber@barberlawky.com

COUNSEL FOR THE COMMITTEE

STOLL KEENON OGDEN PLLC

/s/ Gregory D. Pavey, Esq.
Joseph M. Scott, Jr., Esq.
Jessica L. Haurylko, Esq.
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
Telephone:  (859) 231-3000
gregory.pavey@skofirm.com
joseph.scott@skofirm.com
jessica.haurylko@skofirm.com
COUNSEL FOR THE JAD LENDERS

ENERGY AND ENVIRONMENT CABINET

/s/ Virginia Baker Gorley, Esq.
Office of General Counsel
Energy and Environment Cabinet
2 Hudson Hollow Road
Frankfort, KY 40601
Telephone:  (502) 564-2356
virginia.baker@ky.gov

**Pursuant to KYEB LBR 9022-1(b), tendering counsel shall cause a copy of this Order to be served on all non-ECF parties entitled to notice and shall file a certificate of service stating the names, manner and date of service within 7 days of the entry hereof.**

Z:\Sale (JAD) Ord Revelation V3 Clean 20150414.docx

21

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Thursday, April 16, 2015**
**(tnw)**