**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND, LONDON AND LEXINGTON DIVISIONS**

| | | |
|---|---|---|
| IN RE | : | |
| | : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* | : | **Case No. 14-10201** |
| | : | **Jointly Administered** |
| Debtors | : | |
| _____ | : | |

**MEMORANDUM OPINION AND ORDER ALLOWING CHAPTER 11**
**PROFESSIONALS' FINAL COMPENSATION AND**
**PAYMENT FROM LENDERS' COLLATERAL**

In these converted cases, final fee applications were filed by the Chapter 11 Professionals.[1]
The U.S. Trustee, Chapter 7 Trustee, and the Licking River Lenders[2] filed objections to the
reasonableness of the amounts requested.    In addition to the reasonableness objections, the
Licking River Lenders filed a separate "Procedural Objection" raising the narrow issue of whether
the Court approved carve-out for the Chapter 11 Professionals' fees applies only to the Lenders'
post-petition collateral or to their prepetition collateral as well.

The Court overruled the Procedural Objection, determining that the carve-out applied to
the Lenders' pre- and post-petition collateral.   [*See* Order Overruling Procedural Obj. of Lenders
to Final Fee Appls. of Prof'ls Retained by Debtors & Off'l Comm. Unsecured Creditors [ECF No.
1558] (hereinafter "Procedural Objection Order")].   The Lenders appealed the Procedural
Objection Order.

---

[1] The Chapter 11 Professionals and their related fee applications are:   (a) Debtors' counsel, Nixon Peabody LLP
("Nixon Peabody") [ECF No. 1364] and DelCotto Law Group, PLLC ("DelCotto") [ECF No. 1362]; (b) Debtors'
financial advisors, GlassRatner Advisory & Capital Group, LLC ("GlassRatner") [ECF No. 1372); (c) Debtors' tax
consultant, John J. Brogan ("Brogan") [ECF No. 1366]; (d) Committee's counsel, Foley & Lardner LLP ("Foley")
[ECF No. 1368] and Barber Law PLLC ("Barber") [ECF Nos. 1374 & 1402]; and (e) Committee's mining and
geological consultant, John T. Boyd Company ("Boyd") [ECF No. 1370].

[2] The Licking River Lenders are:   East Coast Miner LLC, East Coast Miner II LLC, Keith Goggin and Michael
Goodwin (collectively, sometimes referred to as the "Lenders").

The reasonableness objections were resolved by agreements among the professionals, the

U.S. Trustee, the Chapter 7 Trustee and the Lenders.    As a result, the Chapter 11 Professionals

tendered orders approving their final fees and expenses reflecting the amounts agreed to between

each Chapter 11 Professional and the objectors, including the Licking River Lenders.    Two of the

tendered orders were entered.    They allow the final fees and expenses of DelCotto [ECF No.

1529] and Brogan [ECF No. 1556].[3]    Neither of these orders directs payment of the fees.    The

Lenders objected [ECF Nos. 1572, 1573, 1577, 1580, 1634] to the remaining proposed orders

approving the final compensation of Nixon Peabody, GlassRatner, Foley, Barber and Boyd [ECF

Nos. 1568, 1571, 1574, 1578, 1584][4] ("Tendered Fee Orders") because, in part, they contain

language regarding payment of the fees.    The Chapter 11 Professionals responded with a Joint

Motion requesting entry of the Tendered Fee Orders [ECF No. 1597; *see also* Joint Resp. of Ch. 11

Prof'ls. to Objs. of Lenders, ECF No. 1581].    On August 18, 2015, DelCotto tendered a proposed

order directing payment of its fees [ECF No. 1627].    The final fee applications all request

payment of the allowed fees.

In the meantime, and subsequent to entry of the Procedural Objection Order, the Chapter 7

Trustee filed a Motion for Order Directing DelCotto Law Group to Turnover Estate Property to the

Trustee [ECF No. 1561] ("Turnover Motion") in which she requests Debtors' former counsel,

DelCotto, turn over $2,000,000 ("SCANA Funds") it holds in escrow on behalf of the Debtors

pursuant to a settlement agreement with South Carolina Electric & Gas Company.    The Turnover

Motion alleges that the SCANA Funds are property of the bankruptcy estates pursuant to 11

U.S.C. § 541, and effective July 6, 2015, DelCotto withdrew as counsel for the Debtors.    DelCotto

---

[3] The U.S. Trustee, Chapter 7 Trustee and Lenders signed the orders indicating their agreement thereto or that they had seen the orders.

[4] With the exception of Nixon Peabody's order, the U.S. Trustee and/or Chapter 7 Trustee signed the orders indicating their agreement thereto or that they had seen the orders.

has no objection to turning over the SCANA Funds to the Chapter 7 Trustee and they tendered an

Agreed Order to this effect.

The Licking River Lenders, however, object.   They assert that contrary to the Chapter 7

Trustee's position, the SCANA Funds are subject to the Lenders' prepetition liens and the Chapter

7 Trustee has no basis—statutory or otherwise—for holding the SCANA Funds.   The Lenders

further assert that although the SCANA Funds constitute a portion of their prepetition collateral,

the Court may not order payment of any allowed fees from the Lenders' prepetition collateral

because of the pending appeal.

At a hearing held August 20, 2015, the Court confirmed the amount of the agreed final fee

requests, the unpaid balances of the Chapter 11 Professional Fees, and heard arguments

concerning whether the Chapter 11 Professionals may be paid from the Lenders' collateral

pursuant to the carve-out.[5]   The Court also heard argument on the Turnover Motion.

As set forth below, the Court will grant the Turnover Motion, approve the final fees of the

Chapter 11 Professionals, and find that of the approved final fees, $2,432,563.58 are within the

scope of the carve-out ("Allowed Carve-Out Fees") and may be paid by the Chapter 7 Trustee

from the Licking River Lenders' collateral.

## DISCUSSION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E).

The issues before the Court are:

1.      Whether the SCANA Funds should be turned over to the Chapter 7 Trustee.

---

[5] No less than forty pleadings raise the issues addressed herein.   While the Court has reviewed and considered all
arguments, only the significant ones are addressed in this Order.   If not addressed, the argument is rejected.

2.      Final approval of Nixon Peabody's, GlassRatner's, Foley's, Barber's and Boyd's professional fees and expenses herein.

3.      The extent to which any allowed unpaid compensation of the Chapter 11 Professionals is within the scope of the carve-out.

4.      Whether this Court has jurisdiction to order payment of the Allowed Carve-Out Fees from the Lenders' prepetition collateral.

**A.      SCANA Funds Turnover.**

The Lenders fail to offer any authority for their position that the SCANA Funds should not be turned over to the Chapter 7 Trustee.   The Chapter 7 Trustee is entitled to turnover of the SCANA Funds.   She is charged with the duty to collect property of the estate.   11 U.S.C. § 704. Section 542 provides that:

> [A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, . . . *shall* deliver to the trustee, and account for, such property or the value of such property . . . ."

11 U.S.C. § 542(a)(1) (emphasis added).   To support the Turnover Motion,

> [T]he trustee has the burden of proof, by a preponderance of the evidence, to establish that:   (1) the property is in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522, and (4) that the property is not of inconsequential value or benefit to the estate.

5 COLLIER ON BANKRUPTCY ¶ 542.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Entities holding property of the estate are obligated to turn over such property to the trustee. DelCotto, which holds the funds, is willing to do so.

The SCANA Funds are property of the estates.   They are a post-petition settlement of Debtors' dispute with its customer over the attempted termination of a prepetition contract.   This Court approved the settlement on March 20, 2015, prior to conversion of the cases on April 24,

2015.  Except in instances not applicable here, the conversion of a case "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."   11 U.S.C. § 348(a).

"[P]roperty of the estate includes all of the legal or equitable interests of the debtor, *or the proceeds, rents or profits from such property*, wherever located and by whomever held at the commencement of the case."   5 COLLIER ON BANKRUPTCY ¶ 542.02[2] (internal quotation marks omitted).   *See also* 11 U.S.C. § 541(a)(1), (6) (property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" and the "[p]roceeds . . . or profits of or from property of the estate. . . .").   The Lenders state that "the SCANA [Funds] clearly constitute[ ] 'proceeds' of the SCANA Contract and, accordingly, [are] subject to the [Lenders'] prepetition liens" and constitutes their cash collateral.   [ECF No. 1601 ¶¶ 37, 38].[6]

Moreover, the funds are of a type that the Chapter 7 Trustee can use pursuant to § 363 and "turnover is required even before a determination is made on adequate protection."   5 COLLIER ON BANKRUPTCY ¶ 542.02[3].

Finally, the SCANA Funds ($2,000,000) are not of inconsequential value in these cases. Each of the elements of § 542 is met and the Chapter 7 Trustee is entitled to turnover of the SCANA Funds.

## B.      Allowance of Final Compensation for the Chapter 11 Professionals.

The Court has reviewed the final fee applications of the Chapter 11 Professionals and the Tendered Fee Orders and finds that the agreed to fees and expenses set forth in the Tendered Fee Orders constitute reasonable compensation for actual, necessary services rendered, and

---

[6] The Chapter 7 Trustee does not dispute the Lenders' prepetition lien in the SCANA Funds, subject to the estates' litigation claims in a pending adversary proceeding.

reimbursement for actual and necessary expenses incurred, by each professional.   11 U.S.C.

§ 330(a).   In reaching this conclusion, the Court has considered the factors set forth in 11 U.S.C.

§ 330(a)(3).   Certain of the Chapter 11 Professionals also seek approval of secured "Gap Claims"

pursuant to 11 U.S.C. §§ 507(a)(3), 502(f).[7]   There is no opposition to approval of these claims

which the Court likewise finds reasonable and will approve.   The amounts of the final allowed

compensation to the Chapter 11 Professionals are as follows:

| Chapter 11 Professional | Agreed Chapter 11 Professional Fees (excluding Gap Claim) | Gap Claim |
|---|---|---|
| DelCotto | $477,931.80 | $16,775.40 |
| Nixon Peabody | $1,382,121.69 | $40,415.14 |
| Brogan | $5,330.00 | $0.00 |
| GlassRatner | $1,459,216.40 | $30,077.16 |
| Foley | $1,009,987.60 | $0.00 |
| Barber | $140,918.05 | $0.00 |
| Boyd | $299,214.24 | $0.00 |
| **TOTALS** | $4,774,719.78 | $87,267.70 |

**C.     The Unpaid Balances of the Allowed Final Compensation Are Within the Authorized Carve-out Amounts.[8]**

Until a "Trigger Date" (defined in the Final Cash Collateral Order) [ECF No. 447] and set

by Agreed Order [ECF No. 1033] as March 1, 2015, the carve-out from the Lenders' collateral was

not limited in amount.   Following the Trigger Date, the carve-out from the Lenders' collateral

was limited to $550,000 for the Chapter 11 Professional fees and expenses incurred after the

Trigger Date (the "Post-Trigger Date Fees") [ECF Nos. 447, 1033].   As a result of the agreements

resolving the reasonableness objections resulting in reductions of certain of the Chapter 11

---

[7]  "Gap Claims" refers to the Chapter 11 Professionals' claims arising in the ordinary course of the Debtor's businesses or financial affairs after the filing of an involuntary petition but before the relief date.   No objections were filed as to these claims or to application of certain professionals' retainers thereto.

[8]  Rather than reiterating the entire factual background of the carve-out which is set forth in detail in the Procedural Objection Order, here the Court provides only the details relevant to deciding the issues presently before the Court.

Professionals' fees, and the application of remaining retainers to the Post-Trigger Date Fees, the

Chapter 11 Professionals' allowed fees collectively do not exceed the $550,000 cap.

This notwithstanding, the Lenders object to one professional, DelCotto, applying its

retainers and agreed fee reduction to its Post-Trigger Date Fees.   They argue DelCotto has

exceeded its pro rata share of the cap to the extent of $70,629.79 and although the fees may be

allowed, they are not subject to the carve-out.   Lenders offer no authority for this position other

than it would be manifestly unfair to allow DelCotto fees in excess of what they claim is

DelCotto's "share" of the cap.

Based on the record and counsels' statements at the August 20, 2015 hearing, it is clear the

Chapter 11 Professionals engaged in a cooperative, collective negotiation and agreement to reduce

the Post-Trigger Date Fees to an amount below the cap notwithstanding that substantial services

were rendered in excess of the capped amounts.   Lenders offer no argument to the contrary; but

rather engage in a disjointed analysis and calculation of the Post-Trigger Date Fees.[9]

In the Court's view, what is manifestly unfair, would be to allow one of the last

professionals to complete the complex chapter 11 aspects of the cases prior to conversion

(including services to conclude the sale of substantial assets which inured to the Lenders' benefit)

to be excluded from the benefit of the carve-out.   The Court will honor the Chapter 11

Professionals' agreement.   *See In re U.S. Flow Corp.*, 332 B.R. 792, 798 (Bankr. W.D. Mich.

2005) (distribution of carve-out among professionals generally made on a pro rata basis unless

otherwise agreed to among professionals).   Other than Foley's excess fees of $53,709.50 over the

---

[9] Lenders' pleading raising this issue [ECF No. 1637], along with five other pleadings, were filed late afternoon the day before, and morning of, the subject hearing.

Investigation Budget, the Court finds DelCotto's and the other Chapter 11 Professionals' allowed

unpaid compensation is within the authorized carve-out.[10]

**D.      The Unpaid Balances of the Allowed Final Compensation May Be Paid from the Lenders' Collateral.**

The Lenders oppose payment of the unpaid balances of the allowed fees from their

prepetition collateral.   In support, they contend that their pending appeal of the Procedural

Objection Order divests this Court of jurisdiction to order such payment.

Citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the Lenders

argue that this Court does not have jurisdiction to enter the Tendered Fee Orders authorizing

payment of the Chapter 11 Professionals' Allowed Carve-Out Fees because the Procedural

Objection Order is on appeal.   According to the Lenders, their appeal "divests the . . . court of its

control over those aspects of the case involved in the appeal."   [Combined Obj. of Lenders ¶ 6,

ECF No. 1599].

In *Griggs*, the Supreme Court set forth what has become known as the Divestiture

Rule—the general jurisdictional effect of an appeal:

> [A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.   The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal.*

*Griggs*, 458 U.S. at 58 (emphasis added).   The purpose of the rule is to prevent confusion and

inefficiency if two courts were to adjudicate the same issues simultaneously.   *Kates v. Fox,*

*Rothschild, O'Brien, Frankel (In re Mazzocone)*, No. 93-12296S, 1995 WL 113110, at *4 (E.D.

---

[10] Foley's excess investigation fees ($53,709.50) related to a capped $150,000.00 Investigation Budget provided for in the Final Cash Collateral Order [Doc. 447] for the Committee's investigation of the Licking River Lenders and filing of an adversary proceeding on behalf of the Committee.   Included in the resolution of the reasonableness objections to Foley's final fee application, and if an order is entered approving Foley's retention as special counsel for the Chapter 7 Trustee, Foley agrees to credit a portion of its paid investigation fees against any contingent fees earned under its employment by the Chapter 7 Trustee.   Foley's employment application is pending and if granted, this agreement will be addressed in the Court's order regarding Foley's employment.

Pa. Mar. 16, 1995).   The Divestiture Rule is applicable to an appeal from a bankruptcy court.   *Id.*

In considering the effect of the Divestiture Rule on bankruptcy courts, the district court in

*Mazzocone* stated:

> In the bankruptcy context, some general principles have emerged regarding the exact boundaries of divestiture of jurisdiction by pending appeals.   Courts have consistently held that a bankruptcy court lacks jurisdiction to vacate or modify an order which is the subject of a pending appeal.   Courts have also consistently held that if an issue is raised on appeal, a bankruptcy court cannot reconsider that issue even in the context of another Order.   *But most courts have also held that bankruptcy courts retain jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the subject of pending appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal.*   This distinction is especially important in the bankruptcy context, where there are often myriad issues, many totally unrelated and unconnected with the issues involved in any given appeal taken by a litigant in the course of the administration of a case.   Adopting a broader divestiture of jurisdiction rule in the bankruptcy context would severely hamper the bankruptcy court's ability to administer its cases in a timely manner.

*Mazzocone*, 1995 WL 113110, at *4 (emphasis added) (citations omitted) (internal quotations

marks omitted).   *Mazzocone* is consistent with the Sixth Circuit's analysis of the Divestiture Rule

reviewed in detail in *In re Bencker*, 122 B.R. 506 (Bankr. W.D. Mich. 1990), *aff'd sub nom. United*

*States v. Bencker (In re Bencker)*, No. 1:91-CV-102, 1992 WL 687180 (W.D. Mich. June 11,

1992).   In *Bencker*, over the objection of the Internal Revenue Service ("IRS"), the bankruptcy

court found that proceeds of a homeowner's insurance policy were property of the estate.   The

IRS appealed.   Analogous to this case, while the appeal was pending, the debtor asked the

bankruptcy court to permit the insurance proceeds to be distributed.   The IRS challenged the

bankruptcy court's jurisdiction to decide the motion to distribute the proceeds.   In deciding the

jurisdictional issue, the bankruptcy court discussed Sixth Circuit cases interpreting *Griggs*, stating:

> Under the rationale in the [Sixth Circuit] cases I have cited, it is obvious that I have the authority to distribute the proceeds.   I am not expanding upon my ruling that the proceeds are property of the estate, but rather, I am merely implementing or enforcing that ruling.   Thus, I do not find that such distribution will jeopardize, confuse, or compromise the IRS's appeal.

*In re Bencker*, 122 B.R. at 509-10, (citing *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 110-11

(6th Cir. 1990) ("The standard for jurisdiction after the filing of the notice of appeal enunciated in

*Cincinnati Bronze* is that a district court may enforce its judgment but not expand upon it.");

*N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (drawing a distinction

between enforcing a judgment and expanding a judgment after notice of appeal and recognizing

the ability of a trial court to do the former, but not the latter); *see also Cent. W.V. Energy Co. v.

Wheeling-Pittsburgh Steel Corp.*, No. 06-3906, 2007 WL 1675004, at *11 (6th Cir. June 11, 2007)

("We have consistently stated that although the [bankruptcy] court may not alter or enlarge the

scope of their judgments pending appeal, they do retain jurisdiction to enforce their judgments.").

    To avoid this Court's clear authority to implement and enforce its orders pending appeal,

the Lenders argue that the Court may only address matters in these cases that are not related to the

subject matter of the appeal.   As noted above, this is not the test used in the Sixth Circuit.

Adopting this "'broader divestiture of jurisdiction rule in the bankruptcy context would severely

hamper the bankruptcy court's ability to administer its cases in a timely manner.'"   *In re

Creekside Sr. Apts., L.P.*, No. 10-53019, slip op. at 5 (Bankr. E.D. Ky. Feb. 28, 2012) (quoting

*Mazzocone*, 1995 WL 113110, at *4).

    The Lenders cite *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484

F.3d 380 (6th Cir. 2007) in support of their position.   *Cookeville* is consistent with this Court's

analysis of the Divestiture Rule stated above—this Court cannot expand, enlarge or alter the

Procedural Objection Order on appeal.   In its original order in *Cookeville*, the district court

decided only the amount the City of Cookeville was required to pay an electric company for

annexing areas where that company provided electric services.   On a subsequent motion to alter

or amend such order, the district court declined to determine the means and timing of payment of

its judgment.   These rulings were appealed.   When the electric company sought an injunction to

10

prevent the City from continuing its construction of electric distribution facilities in the annexed

areas, the district court issued the injunction finding that the City had to pay the judgment before

beginning such construction and that the electric company had exclusive service rights in the

annexed areas until it had been fully compensated.

The Sixth Circuit found that the district court did not have jurisdiction to issue the

injunction because by doing so it decided legal issues which were on appeal and expanded

significantly the scope of its previous order on appeal because (i) it required the City of Cookeville

to pay the electric company prior to condemning the electric company's property or building its

own distribution facility when it had previously declined to determine the means and timing of the

payment of the judgment, and (ii) found that the electric company had exclusive service rights in

those areas until it was paid.   Thus, the district court clearly altered and expanded the order which

was on appeal.

The Lenders also rely on this Court's decision in *Katz v. New River Cmty. Coll. (In re

Wallace Bookstore, Inc.)*, 330 B.R. 193 (Bankr. E.D. Ky. 2005) as support for their position that a

court does not have jurisdiction to enter relief as to an issue on appeal.   *Wallace Bookstore* is

distinguishable.   There, the bankruptcy court denied defendants' motion to dismiss all counts of

the adversary proceeding on sovereign immunity grounds.   After appeals to the district court and

the Sixth Circuit, the Supreme Court granted certiorari and under the terms of the stay of mandate

issued by the Sixth Circuit, the matter was stayed pending a ruling by the Supreme Court.   While

the case was on appeal, the plaintiff filed a motion to dismiss one count of the complaint and the

defendants opposed the motion.   The bankruptcy court found that because the dismissal of all

counts in the complaint was appealed, the court was without jurisdiction to revisit another ground

for dismissal.

Here, the Court is in no way expanding or amending any portion of the Procedural Objection Order.   The only issue adjudicated by the Procedural Objection Order is whether the Lenders' prepetition collateral is subject to the carve-out for professional fees.   The Court concluded that it is.   However, that conclusion goes to but one aspect of the final fee applications.[11]   In considering the relief now sought, allowance and payment of fee/expense amounts from the Lenders' collateral, the Court merely implements and enforces the order.   No modification or alteration of the Procedural Objection Order will result from an order authorizing the payment of Allowed Carve-Out Fees.

The Lenders state that the Procedural Objection Order did not provide for the payment of fees from the carve-out and if the Court now allows payment, it is doing more than enforcing or implementing the Procedural Objection Order.   They argue that by such action the Court is granting subsequent relief predicated upon the ruling that is being appealed.   This is a distinction without a difference.   The Lenders are correct that the Procedural Objections Order merely determined the scope of the carve-out.   A determination of the amount of the Allowed Carve-Out Fees was not part of the Procedural Objection Order.   Likewise, authorizing the payment of the Allowed Carve-Out Fees from the Lenders' collateral does not modify, enlarge, alter, or redecide any portion of the Procedural Objection Order—it only enforces and implements the appealed order to facilitate payment to the Chapter 11 Professionals.   More significantly, decisions regarding allowance and payment of fees will not jeopardize, confuse or otherwise compromise the Lenders' appeal.

---

[11] Further, this Court questions whether the Procedural Objection Order is a final, appealable order.   "'As a general rule, a district court loses jurisdiction over an action when a party perfects an appeal unless that appeal is untimely, *is an appeal from a non-appealable non-final order*, or raises only issues that were previously ruled upon in that case by the appellate court.'"   *Wallace Bookstore*, 330 B.R. at 195 (quoting *Rucker v. U.S. Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986) (emphasis added)).

Thus, this Court has jurisdiction to allow the Chapter 11 Professionals' final compensation and order payment of the unpaid balances from the Lenders' collateral.   Lenders' remaining objections addressing the Chapter 7 Trustee's authority to make payments and file accountings are without merit.   The trustee has filed accountings and her authority to disburse funds is addressed by this Order.

**E.       The U.S. Trustee's and Chapter 7 Trustee's Reservation of Rights.**

In the Joint Status Report between the Chapter 11 Professionals and the U.S. Trustee and Chapter 7 Trustee, the trustees "agreed to withdraw the entirety of their objections, including their objections as they relate to Specker Motor Sales Co. v. Eisen, 393 F.3d 659 (6th Cir. 2004), but reserve the right to move for disgorgement at a future date should the facts so warrant."   [Joint Status Report at 2, ECF No. 1545].   With respect to the trustees' reservation, the Lenders now raise an objection to the provision in GlassRatner's proposed order that its compensation is not subject to disgorgement.   The Court finds the trustees' reservation of rights shall apply to all the Chapter 11 Professionals.   The Court leaves for another day an analysis of the scope of such reservation.

**IT IS HEREBY ORDERED** as follows:

1.       The Turnover Motion [Doc. 1561] is granted and DelCotto is authorized and directed to transfer the SCANA Funds to the Chapter 7 Trustee forthwith.

2.       DelCotto's final fee application [ECF No. 1362] was granted by prior order of the Court [ECF No. 1529].   DelCotto holds an unpaid Allowed Chapter 11 Administrative Claim herein in the amount of $280,595.18, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

3. Brogan's final fee application [ECF No. 1366] was granted by prior order of the Court [ECF No. 1556]. Brogan holds an unpaid Allowed Chapter 11 Administrative Claim herein in the amount of $1,180.00, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

4. Nixon Peabody's final fee application [ECF No. 1364] is granted as follows:

    a. Nixon Peabody's Gap Claim in the amount of $40,415.14 is approved and Nixon Peabody is authorized to pay its Gap Claim from its retainer;

    b. Nixon Peabody's total compensation in the amount of $1,382,121.69 is approved on a final basis;

    c. After application of (a) interim payments received, which are hereby approved on a final basis and (b) the remainder of its retainer, including its additional Wind-Down Retainer [*See* ECF No. 1160 ($15,000)], which applications are hereby approved, Nixon Peabody holds an unpaid Allowed Chapter 11 Administrative Claim herein in the amount of $664,459.60, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

5. GlassRatner's final fee application [ECF No. 1372] is granted as follows:

    a. GlassRatner's Gap Claim of $30,077.16 is approved and GlassRatner is authorized to pay its Gap Claim from its retainer;

    b. GlassRatner's total compensation in the amount of $1,459,216.40 is approved on a final basis;

    c. After application of (a) interim payments received, which are hereby approved on a final basis and (b) the remainder of its retainer, including its additional Wind-Down Retainer [*See* ECF No. 1160 ($15,000)], which applications are approved, GlassRatner holds an unpaid Allowed Chapter 11 Administrative Claim in the amount of $690,544.09, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

6. Foley's final fee application [ECF No. 1368] is granted as follows:

    a. Foley's total compensation in the amount of $1,009,987.60 is approved on a final basis.

    b. After application of interim payments received, which are hereby approved on a final basis, Foley holds an unpaid Allowed Chapter 11 Administrative Claim in the amount of $608,543.03, of which $554,833.53 is subject to payment as a carve-out from the Lenders' collateral. The balance of $53,709.50 shall not be paid pending further orders of the Court.

7. Barber's final fee application [ECF Nos. 1374, 1402] is granted as follows:

    a. Barber's total compensation in the amount of $140,918.05 is approved on a final basis.

    b.   After application of interim payments received, which are hereby approved on a final basis, Barber holds an unpaid Allowed Chapter 11 Administrative Claim in the amount of $73,832.11, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

8.    Boyd's final fee application [ECF No. 1370] is granted as follows:

    a.   Boyd's total compensation in the amount of $299,214.24 is approved on a final basis.

    b.   After application of interim payments received, which are hereby approved on a final basis, Boyd holds an unpaid Allowed Chapter 11 Administrative Claim in the amount of $167,119.07, which unpaid amount is subject to payment as a carve-out from the Lenders' collateral.

9.    The Chapter 7 Trustee is authorized to pay the Allowed Carve-out Fees, pro rata, if necessary, from the Licking River Lenders' collateral and shall file a "Notice of Carve-out Distribution," setting forth the payee and amount of each distribution.   The Allowed Carve-Out Fees are as follows:

| | |
|---|---:|
| DelCotto | $280,595.18 |
| Nixon Peabody | $664,459.60 |
| Brogan | $1,180.00 |
| GlassRatner | $690,544.09 |
| Foley | $554,833.53 |
| Barber | $73,832.11 |
| Boyd | $167,119.07 |
| **TOTAL** | $2,432,563.58 |

10.    The Chapter 7 Trustee shall not make any distribution from unencumbered funds, if any, to the Chapter 11 Professionals pending further orders of the Court.

11.    In accordance with the Joint Status Report [Doc. 1545], the Chapter 11 Professionals' fees and expenses approved hereby shall be subject to the reservation of rights set forth therein.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, August 21, 2015**
**(tnw)**