**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND, LONDON AND LEXINGTON DIVISIONS**

| | |
|---|---|
| IN RE : | |
| : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* : | **Case No. 14-10201** |
| : | **Jointly Administered** |
| **Debtors** : | |
| : | |

## MEMORANDUM OPINION AND ORDER

These converted chapter 7 cases came before the Court on March 10, 2016, on the Motion for Declaration Regarding D&O Liability Insurance Coverage Payable for the Benefit of Keith Goggin and Michael Goodwin [ECF No. 1781] ("Motion") in which Keith Goggin and Michael Goodwin (together the "Movants"), former directors of debtor U.S. Coal Corporation ("U.S. Coal"), seek an order authorizing them to receive payment from the debtors' directors and officers liability insurance policy for defense costs incurred in defending an adversary proceeding being prosecuted by the chapter 7 trustee, Phaedra Spradlin ("Trustee"). The Trustee objects, contending that any policy proceeds are property of the estate that must be shared equally by all creditors, administrative or otherwise. At the March 10, 2016 hearing, the Trustee was ordered to supplement the record to specifically identify the bankruptcy estates' interests in the proceeds, both parties filed additional briefs, and the matter was taken under submission on April 21, 2016.

For the reasons set forth below, the Motion will be granted in part as set forth below.

## BACKGROUND AND PROCEDURAL HISTORY

During summer 2014, creditors commenced involuntary petitions against U.S. Coal and its affiliates[1] (collectively, the "Debtors"). The Debtors' cases were jointly administered and proceeded under chapter 11 until they were converted to chapter 7 on April 24, 2015. Prior to

---

[1] The remaining affiliated Debtors are:  J.A.D. Coal Company, Inc., Licking River Mining, LLC, Licking River Resources, Inc., Fox Knob Coal Co., Inc., S. M. & J., Inc., Harlan County Mining, LLC, Oak Hill Coal, Inc., Sandlick Coal Company, LLC, and U.S. Coal Marketing, LLC.

conversion, the Official Committee of Unsecured Creditors investigated the Debtors' prepetition transactions and on March 24, 2015, filed a complaint against the Movants, East Coast Miner, LLC ("ECM") and East Coast Miner II, LLC ("ECM II," and together with the Movants and ECM, the "Defendants"), commencing adversary proceeding 15-1004 ("Trustee Complaint"). After conversion, the Trustee was substituted as the plaintiff therein.

I.     **The Trustee Complaint**

The Movants were directors, shareholders and creditors of U.S. Coal. At the same time, they were investors in ECM and ECM II and Mr. Goggin was ECM's managing member. In the Trustee Complaint, the Trustee asserts Movants breached their fiduciary duties as directors of U.S. Coal, contending:

> The [Trustee] can recover damages U.S. Coal suffered at the hands of Goggin and Goodwin due to their breaches of fiduciary duty. These Defendants acted as Directors of U.S. Coal with a conflict [of] interest and favored their personal interests at U.S. Coal's expense. They caused U.S. Coal to lose critical refinancing opportunities, paid themselves and their entities when other creditors were unpaid, enhanced their positions and interests to the exclusion of others whenever possible and caused Debtors to pay their improper fees. They also threatened to put U.S. Coal into bankruptcy if they did not get their way (Count IV)[.]

[Tr. Compl. ¶ 1(d), Adv. No. 15-1004, ECF No. 1.] In addition, the Trustee asserts preferential transfer claims against the Movants and claims for fraudulent transfers, equitable subordination, lien avoidance and disallowance of claims against all Defendants.

II.    **The Policy**

U.S. Coal is the "Named Entity" under a claims-made directors and officers insurance policy with National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), Policy No. 01-541-57-50, covering an initial policy period from November 10, 2013 through November 10, 2014. [Mot. Ex. 1 at 6, ECF Nos. 1781-1 & 1781-2 (the "Policy" or "Policy 57-50").] The policy period was subsequently extended to May 10, 2015.

The Policy provides $15 million in "D&O Coverage," with a $75,000 "Retention/ Deductible." The D&O Coverage Section provides coverage to individual directors and officers for liability and defense costs (Coverage A) and to the Debtors for liability and indemnification as described below (Coverage B). It is a "wasting policy" with defense costs reducing the $15 million coverage benefit. With certain exceptions for related claims described therein, the Policy generally requires notice of claims within the policy period or within ninety days thereafter. There is no dispute that the Movants are "Individual Insured[s]" under the Policy. Under the D&O Coverage Section, the term "Insured" means an "Individual Insured" or the "Company."[2] [Policy, ECF No. 1781-1 at 24.]

The "D&O Coverage Section" provides:

1. **INSURING AGREEMENTS**

    With respect to Coverage A, B and D and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this **D&O Coverage Section** affords the following coverage:

    **COVERAGE A: INDIVIDUAL INSURED INSURANCE**

    This **D&O Coverage Section** shall pay the **Loss**[3] of an **Individual Insured** of the **Company** arising from a **Claim** made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured,** except when and to the extent that the **Company** has indemnified such **Individual Insured.** The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

    **COVERAGE B: PRIVATE COMPANY INSURANCE**

    This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

---

[2] "'**Company**' means the **Named Entity** and any **Subsidiary** thereof. In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term "**Company**" shall also mean the resulting debtor-in-possession (or the equivalent status outside the United States of America), if any." [Policy, ECF No. 1781-1 at 13.]

[3] "'Loss' means damages, judgments, settlements, pre-judgment and post-judgment interest, . . . and **Defense Costs** . . . ." [Policy, ECF No. 1781-1 at 24.] "'**Defense Costs**' means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** . . . resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any Individual Insured. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**. [Policy, ECF No. 1781-1 at 23.]

3

(i) **Claim** made against the **Company**, or

(ii) **Claim** made against an **Individual Insured**,

for any **Wrongful Act**, but, in the case of Coverage B(ii) above, only when and to the extent that the **Company** has indemnified the **Individual Insured** for such Loss. . . .[4]

. . . .

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by this **D&O Coverage Section** in accordance with and subject to Clause 7 of this **D&O Coverage Section**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, prior to its final disposition. . . .

[Policy, ECF No. 1781-1 at 21-22.]  After the Named Entity "has tendered the defense of the claim," Clause 7 of the D&O Coverage Section provides:

The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**.  Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim** . . . .
. . . .

Additionally, the **Insured** shall not . . . incur any **Defense Costs** without the prior written consent of the **Insurer**. . . .

[Policy, ECF No. 1781-1 at 31-32.]

Finally, the D&O Coverage Section provides that the Policy proceeds are paid out first on covered Coverage A claims (for the benefit of the Individual Insureds) prior to payment to the Company for either indemnification or direct loss claims:

**11. ORDER OF PAYMENTS**

In the event of **Loss** arising from any **Claims** for which payment is due under the provisions of this **D&O Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available **Separate Limit of Liability** or

---

[4] The D&O Coverage Section includes two additional sections providing coverage to the Debtors, "Coverage C: Crisisfund Insurance" and "Coverage D: Costs of Investigation for Derivative Demand."  The Trustee does not contend that coverage under these sections has been triggered.

> **Shared Limit of Liability** applicable to this **D&O Coverage Section**, then the **Insurer** shall:
>
> (a) first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** is available after payment of such **Loss**,
>
> (b) then pay such **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**,
>
> (c) then pay such **Loss** for which coverage is provided under Coverage B(i), C or D of this **D&O Coverage Section**.
>
> . . . .
>
> The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Section** pursuant to this Clause 11.

[Policy, ECF No. 1781-1 at 34.]

Nixon Peabody, U.S. Coal's bankruptcy counsel, put National Union on notice of the Trustee Complaint via letter dated April 22, 2015, to National Union's claims administrator, AIG, Financial Lines Claims ("AIG"). [Tr. Mem. Suppl. R. Re: Mot., Ex. A, ECF No. 1825 ("Trustee Memorandum").] AIG acknowledged receipt of the letter, assigned a claim number and advised that National Union would treat the April 22, 2015 letter as notice of circumstances that might give rise to a claim but that National Union reserved all rights under the Policy, including the right to assert coverage defenses. [Tr. Mem. Ex. B.]

### III. The Motion

The relief requested in the Motion is narrow; i.e., that the Court enter a "proposed 'comfort order,' declaring that any payment of 'Loss' (including 'Defense Costs') by National Union *pursuant to the Policy's D&O Coverage Section, Coverage A*, does not violate the automatic stay concerning Debtor U.S. Coal." [Mot. 6 (emphasis added).]

The Trustee does not dispute that the Movants are "Individual Insured[s]" under the Policy, that the Trustee Complaint constitutes a "Claim" that alleges one or more "Wrongful Acts" against the Movants, or that coverage under the Policy was triggered, giving rise to certain obligations by

5

National Union. Movants state that after negotiation, National Union concluded that not all claims asserted against them in the Trustee Complaint are covered by the Policy; however, it agreed to pay a portion of Movants' defense costs, subject to a full and complete reservation of rights. Prior to advancing any defense costs, National Union required the Movants to obtain a "comfort order" providing that payment to or on Movants' behalf does not violate the automatic stay as to U.S. Coal. The Movants assert the Coverage A Policy proceeds are not property of the estate. Alternatively, they assert, cause exists to lift the stay so that Movants may enforce their rights under the Policy. Finally, they assert the Trustee is not entitled to review or regulate their defense costs.

The Trustee was not a party to the negotiations between the Movants and National Union and contends that she is entitled to extensive discovery to discern what National Union considers covered and uncovered claims. She objects to the Motion on the bases that (i) the Policy and its proceeds are property of the estate and allowing the relief sought could potentially diminish estate assets; (ii) she intends to file suits against other directors and officers who may be entitled to coverage under the Policy and the Policy proceeds must be shared equally among the directors and officers; (iii) she is entitled to evaluate the Movants' claims to ensure that there is no wasting of the insurance proceeds; and (iv) the relief requested cannot be granted without Movants' filing an adversary proceeding.

In response to the Court's order to supplement the record with specifics as to the estates' interest in the Policy, the Trustee filed her Memorandum [ECF No. 1825] identifying defense costs related to a lawsuit filed in February 2012 in a New York state court styled *CAMOFI Master LDC, et al. v. U.S. Coal Corp., et al.* ("CAMOFI suit"). In the CAMOFI suit, plaintiffs, CAMOFI Master LDC and CAMHZN Master LDC ("CAM Parties"), asserted claims against Debtors U.S. Coal, Sandlick Coal Company, LLC, J.A.D. Coal Company, Inc. ("JAD"), and Fox Knob Coal

6

Co., Inc., certain directors and officers, including Movants, and ECM. At that time, U.S. Coal held a different D&O policy with National Union, Policy No. 01-335-76-78, covering the period November 10, 2011 to November 10, 2012 (the "2011-2012 Policy"). The Policy against which Movants now claim is not a renewal of the 2011-2012 Policy. National Union was notified of the CAMOFI suit to obtain coverage under the 2011-2012 Policy and coverage was accepted for the fiduciary liability of the individual directors and officers. However, National Union characterized the CAM Parties' claims against Debtors as ones for breach of contract which National Union contended were excluded from coverage under the 2011-2012 Policy.[5] The Trustee asserts U.S. Coal has the right to dispute this denial of coverage.

The Trustee claims that the Debtors are entitled to reimbursement of approximately $3 million in defense costs paid in connection with the CAMOFI suit. The Trustee contends she can obtain reimbursement under either the 2011-2012 Policy or the Policy at issue here (notwithstanding that the latter Policy period did not commence until November 10, 2013).

Based on filed proofs of claim in these cases, the Trustee also asserts that the Debtors have potential exposure of approximately $8.3 million for which they may be entitled to coverage under either policy. The Trustee insists that she needs the specific information relating to the arrangements negotiated by the Movants and National Union and additional discovery relating to the defense costs paid in connection with the CAMOFI suit to determine the estates' interest in the proceeds of the policies.

Finally, the Trustee contends that the Debtors have an interest in the Policy because:

> Via Paragraph 12 of the General Terms and Conditions Section (of both policies), U.S. Coal, as the "named insured," is responsible for tendering claims to the insurer

---

[5] Pursuant to an order of the state court, the CAM Parties' claims against the individual defendants were dismissed and an amended complaint was filed on October 9, 2012, in which U.S. Coal, JAD and ECM were the only named defendants. After the Debtors' bankruptcy cases were filed, the CAMOFI suit was removed from state court, transferred to this Court as an adversary proceeding, and dismissed on May 9, 2016. [*See* Mem. Op. and Order, Adv. No. 15-1006, ECF Nos. 39, 40.] On May 20, 2016, the CAM Parties filed a Notice of Appeal.

7

> which vests the named insured with the right – and responsibility – to ensure that there is no wasting of the insurance assets. Item 7 of the D&O Coverage Section addressing "Defense Costs" – pursuant to paragraph 12 – vests the named insured (U.S. Coal) with the right to choose whether the insureds should retain defense counsel to defend the claims or whether the insurer must retain outside counsel for the defense. Although Movants suggest their right to defense costs is plain because they are seeking "Coverage A" rights, they cannot remove the Trustee, the named insured, from the process in its entirety. This is an important, indeed essential, "interest in the policies" which the Trustee indisputably has, that the Movants completely ignore.

[Tr.'s Resp. to Movants' Suppl. Reply ¶ 3, ECF No. 1837.]

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

## LAW AND ANALYSIS

Pursuant to 11 U.S.C. § 541(a)(1), property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 362(a)(3) protects estate property from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." While "'an overwhelming majority of courts have concluded that liability insurance policies fall within § 541(a)(1)'s definition of estate property[,]' . . . the courts are in disagreement over whether the *proceeds* of a liability insurance policy are property of the estate." *Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) (emphasis added) (quoting *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 533 (5th Cir. 1995)).[6] That issue "must be analyzed in light of the facts of each case." *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002). It is controlled by the

---

[6] The Trustee contends that under Sixth Circuit precedent, *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996), the Policy proceeds are property of the estates. The Trustee's interpretation of *Dow Corning*'s holding is incomplete. First, the policies at issue were not D&O policies; rather, they provided tort liability coverage *directly* to the debtor and its two nondebtor parent entities. More significantly, *Dow Corning* was before the Sixth Circuit on whether the district court had "related to" jurisdiction of law suits against the nondebtor, coinsured entities—not on the question of whether the insurance proceeds were property of the estate. That issue was not disputed in *Dow Corning*. However, it is the most significant issue here.

language and scope of the policy—not caselaw. *Allied Digital*, 306 B.R. at 509; *accord*, *In re Petters Co.*, 419 B.R. 369, 375 (Bankr. D. Minn. 2009) (noting that decisions have spanned two decades with analyses and outcomes varying depending essentially on terms of D&O policies at issue). "'A bankruptcy estate can have no greater claim to the proceeds of property of the estate than the debtor would have had outside of bankruptcy.'" *CyberMedica*, 280 B.R. at 16 (quoting *In re Wiesner*, 267 B.R. 32, 35 (Bankr. D. Mass. 2001)).

> The bankruptcy court in *Allied Digital* analyzed the issue as follows:
>
> [W]hen a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor. Further when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate. However, when there is coverage for the directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.

*Allied Digital*, 306 B.R. at 512. Here, the Policy provides (a) direct coverage to Movants (and other officers/directors) for damages and defense costs (Coverage A), (b) indemnification coverage to the Debtors (Coverage B(ii)), and (c) entity coverage to the Debtors (Coverage B(i)). The Policy proceeds are property of the Debtors' bankruptcy estates only to the extent the Debtors' indemnification or entity coverage protects the estates' other assets from diminution. Stated differently, will the payment of Movants' defense costs have an adverse effect on the bankruptcy estates' other assets?[7]

A D&O policy is generally procured for the benefit and protection of an entity's directors and officers and is intended to insure them from personal loss for claims against them if they are not indemnified by the entity. *CyberMedica*, 280 B.R. at 16-17 (quoting *Ochs v. Lipson (In re*

---

[7] The Movants argue that they seek only Coverage A proceeds and such proceeds are payable only to them (or other individual insureds); thus the proceeds are clearly not property of the estate. This argument, however, begs the question of how much of the $15 million in potentially available proceeds are "Coverage A proceeds."

9

*First Cent. Fin. Corp.)*, 280 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)); *see also Allied Digital*, 306 B.R. at 514 (D&O policies provide directors and officers with bargained-for protection against loss). "The case law recognizes that any individual insured has a contractually-distinct status that runs directly between itself and the insurer. This makes the right to receive payment on a covered claim the property of that insured itself." *Petters*, 419 B.R. at 376. Against this background, the Court turns to analyzing to what extent, if any, the proceeds of this wasting D&O Policy are property of the estate.

**I.    The Roles of the Trustee**

In these chapter 7 cases, the Trustee functions in various roles. In one role, she is a plaintiff pursuing causes of action on behalf of the estates, including the Trustee Complaint *seeking a recovery*, at least in part, from Movants and their D&O coverage. This role is significantly different from a defense role, whereby the Debtors' estates are covered insureds for various defined claims *against* the estates.

A. The Trustee's Plaintiff Role

The Trustee's arguments protecting her role as plaintiff have no bearing on the property of the estate determination. As observed in *Allied Digital*:

> The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to *recover from* the D & O Policy rather than as a potential defendant seeking to be *protected by* the D & O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting policy. No one has suggested that such a plaintiff would be entitled to an order limiting the covered defendants' rights to reimbursement of their defense costs.
>
> The bottom line is that the Trustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

*Allied Digital*, 306 B.R. at 513. Thus, to the extent she contends that payment of the Movants' defense costs and the resulting decrease in (or exhaustion of) proceeds available to satisfy any

10

judgment equates to a depletion of estate assets, the Trustee's argument is without merit. The court in *Allied Digital* succinctly stated the conundrum faced in the case of a "wasting policy": "Every dollar spent on defense costs lessens the pot available to the Trustee if [s]he prevails in the litigation" against the Movants. *Allied Digital*, 306 B.R. at 508. In looking to preserve a funding source to satisfy a judgment, the Trustee is not seeking to preserve estate assets. As such, there is no reason she should be treated differently than any other third-party plaintiff suing the Movants.

Similarly, the Trustee's claim that she is entitled to control disbursements because she may sue other directors or officers is a plaintiff argument and not an argument seeking to preserve the Policy proceeds for claims against the estates. Although she asserts that other officers and directors may be left without coverage, this does not address the preservation of estate assets. She has not identified any Policy terms giving Debtors the right or obligation to allocate the Policy proceeds among individual insureds. The only logical conclusion is she seeks to preserve the Policy proceeds (not estate assets) for recovery in her litigation against various directors and officers.

B. <u>The Trustee's Role as Representative of the Insured Debtors</u>

The D&O policy at issue in *In re Arter & Hadden, L.L.P.*, 335 B.R. 666 (Bankr. N.D. Ohio 2005) is similar to the Policy at issue here. It did not expressly limit coverage solely to the officers and directors or include only officer and director liability coverage and indemnity coverage. It also provided direct coverage for debtor's liability exposure. Further, the policy did not segregate the policy limits on the basis of whether the covered entity was the directors and officers, the indemnity obligations of the debtor, or debtor's direct liability. *Id*. at 672. Applying *Allied Digital*'s analysis, the *Arter & Hadden* bankruptcy court determined that the trustee presented a prima facie case that the insurance proceeds were property of the estate. "Under such a policy, '[a] debtor's interest in the proceeds requires protection from depletion and overrides the

11

interest of the directors and officers.'"  *Id.* at 672-73 (alteration in original) (quoting *Allied Digital*, 306 B.R. at 511).  *But see Petters*, 419 B.R. at 377-78 (criticizing cases which find that the mere fact that debtor has a joint interest in policy proceeds is sufficient to characterize "the *entire* value of unexhausted coverage, and any cash proceeds to be disbursed on *any* claims against the coverage, as property of the bankruptcy estate.").

As noted above, the Debtors' bankruptcy estates have an interest in the Policy proceeds if the Debtors indemnified directors and officers for a covered loss or if a covered claim may be asserted directly against them.  The Trustee was given an opportunity to supplement the record to identify such claims.

    C.  <u>Debtors' Indemnification Claims under Coverage B(ii)</u>

The Trustee identified indemnification claims based on Debtors' payment of approximately $3 million in officer and director legal fees in connection with the CAMOFI suit. As to indemnification coverage generally, several courts have observed:

> D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.  There is an important distinction between the individual liability and the reimbursement portions of a D & O policy.  The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation.  Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy.  It is insured indirectly for its indemnification obligations.  In essence and at its core, a D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*First Cent. Fin.*, 280 B.R. at 16, *quoted in CyberMedica*, 280 B.R. at 16-17 and *Nat'l Century Fin. Enters., Inc. v. Gulf Ins. Co. (In re Nat'l Century Fin. Enters., Inc.)*, Ch. 11 Case No. 02-65235, Adv. No. 03-02288, 2005 WL 6242169, at * 8 (Bankr. S.D. Ohio Jan. 10, 2005).

The Movants assert that the Trustee has not provided any basis from which the Court can find that the Debtors have a claim for amounts they paid to indemnify any directors or officers

which entitles Debtors to recovery under Coverage (B)(ii) of *this* Policy and whatever reimbursement claims the Trustee may have under the 2011-2012 Policy are irrelevant. They further assert, and the Trustee does not dispute, that the Debtors are unable to indemnify Movants for defense costs related to the Trustee Complaint. *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (finding that proceeds under D&O policy were not property of the estate where it was not shown that debtors made payments for which they would be entitled to indemnification coverage, such payments were not contemplated, and debtors had not committed themselves to payments using their coverage).

The Trustee argues that the relationship between the 2011-2012 Policy and Policy 57-50 is relevant because National Union's acceptance of coverage under Policy 57-50 included a complete reservation of rights and was without consideration of coverage that may be available under any other policy; i.e., the 2011-2012 Policy. The Trustee claims the Debtors are entitled to indemnification of defense costs paid to or on behalf of certain directors and officers, including Movants, arising out of the CAMOFI suit. She asserts that to determine the full extent of the indemnification rights she needs to obtain more information from the law firms' whose fees were paid and more information with respect to National Union's position on claims covered by Policy 57-50 and in particular whether it is going to—or has in negotiations with the Movants—invoked the related wrongful acts definitions. The essence of her argument is that coverage for claims under the CAMOFI suit *and* the Trustee Complaint may be under one or both policies and until she understands National Union's position, she cannot state with certainty the extent of Debtors' interests in the policies. In sum, the extent of Debtors' indemnification claims is unclear at best.

D.    Debtors' Direct Claims under Coverage B(i)

The Trustee also provided a list of claims (totaling approximately $8.3 million) that she contends could trigger coverage under the related wrongful acts definition and/or the liberal

13

Document      Page 14 of 17

relation back provision of the Policy. The Movants contend that the Trustee's description of the claims is vague and speculative. In particular, they assert that the Trustee failed to demonstrate that: (i) National Union was given timely notice, (ii) the claims are related wrongful acts so the April 2015 letter would suffice for required notice, or (iii) the claims are not precluded by the Policy's exclusion provisions. They further argue that even if Debtors had such claims, they would be subordinate to the Movants' Coverage A claims and conclude that the Debtors cannot have any interest in the proceeds.

Although the Court agrees that the Trustee's direct claim description is vague and lacking in detail and the basis for an indemnification claim is unclear at best, at a minimum, the Trustee has asserted a plausible basis for a claim that a portion of the Policy proceeds may be property of the estates. The current procedural posture and the lack of any evidentiary record preclude a final resolution regarding the property of the estate issue.[8]

However, this is not (yet) a case requiring an allocation of the Policy proceeds among competing claimants. At this time, claims for *actual payment* from the Policy proceeds do not exceed, or even come close to exceeding, the Policy limits.

> Because of the limit on the insurers' aggregate obligation of payment under the policies, and because of any claimant's right to be paid on a claim as submitted, the fixing of [Debtors'] actual right to receive payment is contingent on the coverage under the policies not having been exhausted by previous payment on claims submitted by either Debtor or by any of their Insured Persons.
> . . . Thus, at any given moment, the status of the unexhausted coverage under the policies is indeterminate, as to whether the right to payment under that coverage is or may become property of the bankruptcy estates of [Debtors].
> . . . .
> . . . The value of the remaining coverage and rights to actual payment under the policies cannot be allocated with any accuracy or precision among [Movants], any other Insured Person, and the bankruptcy estates of [Debtors], until all claims under the policies that are accrued to a single specific date are presented and paid by the insurers.

---

[8] The Court reaches this conclusion without regard to whether an adversary proceeding is required for a final determination of the property of the estate issue as argued by the Trustee.

*Petters*, 419 B.R. at 374-75. While the Policy provides that the Movants' Coverage A claims will be paid ahead of Debtors' Coverage B claims, the order of payment provisions come into play only when the claims submitted for payment exceed the liability limit. Thus, until that time, neither party has superior rights to the proceeds.

The Court finds that it is premature to make a determination of the extent of the Debtors' interest in the Policy proceeds and denies Movants' request for a determination that the Policy proceeds are not property of the estates. The Court thus considers the Movants' narrow request to modify the stay for the limited purpose of paying defense costs from the Policy proceeds.

II.     **Cause Exists to Grant Relief from Stay to the Extent of $1,000,000 for Movants' Defense Costs**

Bankruptcy Code § 362(d)(1) permits the Court to modify the stay for cause. The party asserting that cause exists for the Court to provide relief from stay bears the initial burden of proof. *Arter & Hadden*, 335 B.R. at 674. As noted above, the Movants have an interest in the Policy proceeds. Like the Debtors' interest, the extent of Movants' interest is not determinable at this point; however, the Court finds that Movants may suffer substantial harm if prevented from exercising their contractual, bargained-for rights to defense costs. They "are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint." *CyberMedica*, 280 B.R. at 18 (finding proceeds were property of the estate but lifting stay to permit insurer to provide D&O coverage and denying Trustee's request to require that fee applications be filed with court to determine reasonableness); *Allied Digital*, 306 B.R. at 514 (without use of the insurance proceeds, "the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm.").

> To the greatest extent possible, a resolution of this motion should both protect the indeterminate value of the bankruptcy estates' interests in their rights to direct coverage and to reimbursement, and recognize that the automatic stay does not

15

>   prohibit the disposition of the remaining value of the coverage. Given that, it is appropriate to allow the presentation, processing, and payment on all claims that may be made against the policies, but to impose a limit on the dollar-value that may be disbursed without another review by this Court.

*Petters*, 419 B.R. at 375.

Taking into account the Trustee's assertion that the Debtors' Coverage B claims could total $11.3 million, this does not exhaust the $15 million in Policy proceeds. The Movants have not provided any information or estimates regarding the amount of defense costs they currently intend to submit to National Union for payment, nor have they requested authorization to use a specific amount of the Policy proceeds for defense costs. The Trustee Complaint has been pending for a little more than a year. The Court finds that cause exists to modify the stay to authorize National Union to pay Movants' "Defense Costs" related to the Trustee Complaint up to $1 million and to permit National Union to disburse payment to or on behalf of the Movants for such Coverage A Defense Costs claims in accordance with the terms of the Policy without further Court approval.

The Trustee argues that the Movants' defense costs should be reviewed for reasonableness, intimating that Movants and their counsel will intentionally or negligently waste the Policy proceeds to prevent Trustee having a source of funds to satisfy any judgment obtained against them for the bankruptcy estates. Some courts have found it appropriate to require filing of applications for attorney fees, not because oversight was required by the terms of a D&O policy, but as a condition to granting relief from stay as to a portion of a D&O policy's proceeds. *E.g., Arter & Hadden*, 335 B.R. at 674 (imposing as a condition to granting relief from stay for a portion of D&O policy proceeds that payment of attorney's fees would be subject to approval of an application as required by Federal Rule of Bankruptcy Procedure 2016). At this time and given the limited relief granted, the Court will not allow the Trustee, who is the plaintiff, to review the Movants' defense costs but will require Movants to file reports of the amount and date of disbursements. Notwithstanding the above, nothing herein precludes the Trustee from discussing

or negotiating with National Union in her role as representative of the Debtors as Insureds or U.S. Coal as the Named Entity under the Policy.

Based on the foregoing,

IT IS HEREBY ORDERED:

1.  The Motion for Declaration Regarding D&O Liability Insurance Coverage Payable for the Benefit of Keith Goggin and Michael Goodwin [ECF No. 1781] is GRANTED to the extent that National Union is authorized to disburse payment to or on behalf of the Movants for Coverage A "Defense Costs" claims relating to the Trustee Complaint in an amount not to exceed $1,000,000 in accordance with the Policy terms. This relief is granted without prejudice to Movants' (and other directors' and officers') right to request authorization for disbursement of additional Defense Costs as defined in the Policy.

2.  Within fourteen days of each disbursement, the Movants shall file a report setting forth the date, amount, and payee of each disbursement of the Policy proceeds and the total amount of Policy proceeds disbursed to date.

3.  The Court reserves all remaining issues, including the extent to which, if any, the Policy proceeds are property of the Debtors' bankruptcy estates, which determination will require an evidentiary hearing. Such hearing may be requested by any party as they deem appropriate.

4.  Within three business days, the Movants shall pay a filing fee of $176.00 for the stay modification granted herein.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Monday, June 06, 2016
(tnw)