**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND, LONDON AND LEXINGTON DIVISIONS**

| | |
|---|---|
| IN RE : | |
| : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* : | **Case No. 14-10201** |
| : | **Jointly Administered** |
| **Debtors** : | |
| : | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the United States Trustee's ("UST") Motion to Disqualify Bingham Greenebaum Doll LLP from Representing the Chapter 7 Trustee [ECF No. 2044][1] ("Motion to Disqualify") in which two groups of Debtors'[2] largest creditors join: (i) East Coast Miner LLC, East Coast Miner II LLC, Keith Goggin and Michael Goodwin (collectively, the "ECM Entities"), and (ii) CAMOFI Master LDCM, CAMHZN Master LDC, Centrecourt Asset Management, LLC and Richard Smithline (collectively, the "CAM Entities," and together with the ECM Entities, the "Objecting Creditors"). The UST and Objecting Creditors seek to disqualify Bingham Greenebaum Doll LLC ("BGD") from representing the chapter 7 trustee, Phaedra Spradlin ("Spradlin"), in certain adversary proceedings discussed below.

**PROCEDURAL BACKGROUND REGARDING**
**BGD'S EMPLOYMENT**

BGD's predecessor-in-interest[3] represented debtor U.S. Coal Corporation ("U.S. Coal") and its debtor subsidiaries beginning July 25, 2007, and ending shortly before the involuntary petitions were filed in the spring, 2014.

---

[1] References to the docket in the debtors' main case appear as [ECF No. ___].

[2] Debtors are U.S. Coal Corporation and its Subsidiaries: J.A.D. Coal Company, Inc., Licking River Mining, LLC, Licking River Resources, Inc., S. M. & J., Inc., Fox Knob Coal Company, Inc., Oak Hill Coal, Inc., Sandlick Coal Company, LLC, Harlan County Mining, LLC, and U.S. Coal Marketing LLC.

[3] BGD is the successor-in-interest by merger to Greenebaum, Doll and McDonald PLLC. The Court discerns no relevant distinction between BGD and its predecessor firm to the issues presented herein.

When these cases converted to chapter 7 in April 2015, the Court granted the chapter 7 trustee's application to employ BGD as special counsel pursuant to § 327(e)[4] for the following purposes: (i) to serve as conflicts counsel with sole responsibility to review and litigate carve-out related issues on behalf of the bankruptcy estates; (ii) to conduct litigation other than a pending adversary proceeding against the ECM Entities; and (iii) to represent the estates on matters pertaining to the debtors' coal business, environmental and related matters.   [*See* Mem. Op. & Order Granting Tr.'s Appl. to Employ, Sept. 22, 2015, ECF No. 1698 (hereinafter "Employment Order").]

In the Employment Order, the Court addressed the ECM Entities' argument that BGD's proposed employment to conduct litigation was not for a "specified" purpose as required by § 327(e) because the targets of any such litigation were not specifically listed.  The Court found the lack of a specific list of potential defendants did not prevent a finding that BGD's employment as litigation counsel was for a special purpose under § 327(e), but reserved ruling on the terms of BGD's compensation until such litigation was identified.  The Court found that with respect to certain creditors which BGD disclosed it had previously represented, BGD did not hold an adverse interest on any matter on which BGD was to be employed as special counsel under § 327(e).

Thereafter, in May and June 2016, BGD filed multiple adversary proceedings, including:

1. *Spradlin v. CAMOFI Master LDC, et al.*, Adv. No. 16-1003 ("CAM Adversary");
2. *Spradlin v. Futurtec, L.P., et al.*, Adv. No. 16-1032 ("Futurtec Adversary");
3. *Spradlin v. Collins, et al.*, Adv. No. 16-1038 ("D&O Adversary");
4. *Spradlin v. The Nelson Law Firm, LLC*, Adv. No. 16-1039 ("Nelson Adversary"); and
5. *Spradlin v. USC Management, LLC*, Adv. No. 16-1041 ("USCM Adversary").

In a supplemental declaration [ECF No. 1980] filed June 16, 2016, C.R. Bowles, Jr., a partner in BGD, disclosed that on June 8, 2016, he became aware that BGD's predecessor-in-

---

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

interest had represented one of the CAM Entities, Centrecourt Asset Management LLC ("Centrecourt"). He disclosed that the representation occurred between May and December 2008, and involved a transaction with debtors U.S. Coal and J.A.D. Coal Company, Inc. ("JAD") in which JAD agreed to purchase certain mining equipment from Centrecourt for $4.8 million ("Equipment Transaction"). Centrecourt is a named defendant in the CAM Adversary BGD filed on Spradlin's behalf in which she seeks to avoid multiple transactions between debtors and the CAM Entities, including the Equipment Transaction. BGD advised Spradlin and counsel for the CAM Entities of the conflict on June 9 and 10, 2016, respectively. As part of the Equipment Transaction, debtors paid BGD $53,770.72 representing Centrecourt's attorney fees; thus raising an additional issue of whether BGD is also subject to an avoidance action.

In a second supplemental declaration [ECF No. 2005] ("BGD Supplement 2"), filed August 16, 2016, BGD disclosed:

> 1. The CAM Entities were not willing to waive BGD's conflict in representing Spradlin in the CAM Adversary, and BGD would withdraw from its representation therein.
>
> 2. BGD intended to withdraw from representing Spradlin in the Futurtec Adversary which "involve[d] most of the same investments at issue as in the CAM AP." However, BGD stated that its "withdrawal from the Futurtec AP is for cost and convenience reasons, as BGD would not be disqualified from pursuing the Futurtec AP, as that does not involve litigation against a former client." [BGD Suppl. 2 ¶ 8.]
>
> 3. "[I]n response to questions from counsel for John Collins, BGD determined (and with the agreement of [Spradlin], disclosed to John Collins' counsel) that [BGD] represented U.S. Coal in the corporate and tax documentation matters in connection with the USC Management LLC transaction." [BGD Suppl. 2 ¶ 13.] BGD did not discuss or provide insight as to the implications, if any, of this disclosure.
>
> 4. BGD would reimburse debtors' estates the $53,770.72 paid to it in connection with the Equipment Transaction, write off fees and expenses in the approximate amount of $100,000.00 related to the CAM and Futurtec Adversaries and assist replacement counsel in transitioning the adversary proceedings without charge to the estates.

On September 7, 2016, pursuant to agreed orders, BGD withdrew and Foley & Lardner LLP was substituted as Spradlin's counsel in the CAM and Futurtec Adversaries. On October 24, 2016, an order was entered granting Spradlin's and BGD's joint motion to settle any avoidance action against BGD in exchange for its payment of $53,770.72 into the debtors' bankruptcy estates.

The UST's Motion to Disqualify contends BGD must also be disqualified from representing Spradlin in the D&O and USCM Adversaries. The Objecting Creditors join in the UST's Motion to Disqualify and further argue for BGD's disqualification in the Nelson Adversary (collectively, the "Challenged Adversaries").[5] Spradlin opposes BGD's disqualification in these additional adversary proceedings. Spradlin states she has no doubt that BGD is acting in the debtors' and their estates' best interest and the estates will be harmed if BGD is disqualified. Spradlin joins in and incorporates[6] BGD's Objection and Response to the Motion to Disqualify [ECF No. 2063] ("BGD Objection"), in which BGD argues that state ethical rules as well as the Bankruptcy Code permit the representation because BGD is not adverse to any former client and none of the services BGD provided to Centrecourt in "documenting an equipment deal" will be at issue in the Challenged Adversary proceedings. [BGD Obj. ¶¶ 1, 6, 7.] Finally, BGD and Spradlin assert that under Sixth Circuit precedent, disqualification is a drastic measure which the Court should hesitate to impose except when it is absolutely necessary and Spradlin's choice of counsel should be upheld.

---

[5] References to the dockets in the Challenged Adversaries discussed herein appear as:
    a.  *Spradlin v. Collins, et al.*, Adv. No. 16-1038: [D&O AP ECF No. ___.]
    b.  *Spradlin v. The Nelson Law Firm, LLC*, Adv. No. 16-1039: [Nelson AP ECF No. ___.]
    c.  *Spradlin v. USC Management, LLC*, Adv. No. 16-1041: [USCM AP ECF No. ___.]

[6] [*See* Spradlin Obj. to Mot. to Disqualify n.2, ECF No. 2064.]

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue in this district and division is proper pursuant to 28 U.S.C. § 1409.

## LAW AND ANALYSIS

BGD was employed as debtors' special counsel under § 327(e) which provides:

> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Employment under § 327(e) eliminates the disinterestedness requirement and "also narrows the conflict of interest issue to one of factual evaluation of actual or potential conflicts only as related to the particular matters for which representation is sought." 3 COLLIER ON BANKRUPTCY ¶ 327.04[9] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) (quoting *In re Statewide Pools, Inc.*, 79 B.R. 312, 314 (Bankr. S.D. Ohio 1987)).

Although the Court previously determined that BGD did not have an adverse interest based on its original disclosures, new information has arisen, both in the identification of the adverse parties in the Challenged Adversaries and the information disclosed in BGD's supplements. No party asserts that BGD knowingly withheld information, and the Court specifically finds that once discovered, BGD promptly and properly disclosed the supplemental information, including its prior representation of Centrecourt.[7] That said, when evaluating conflicts of interest, the Court must do so objectively, "'irrespective of the integrity of the person under consideration.'" *In re Leslie Fay Cos. Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994) (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987)).

---

[7] The Court likewise dismisses, as without merit, any suggestion that Centrecourt had a duty to discover and disclose BGD's prior representation of it by the predecessor firm.

5

Relying on two Sixth Circuit cases, Spradlin contends the UST and Objecting Creditors have a heavy burden and must carry a high standard of proof to support BGD's disqualification. *See Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990) (setting forth a three-factor analysis for disqualification of counsel); *Official Unsecured Creditors Comm. v. Ampco-Pittsburg Corp., (In re Valley-Vulcan Mold Co.)*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001) (citing *Dana Corp*. and noting that a party seeking disqualification has a heavy burden and high standard of proof). Neither case was decided in the context of professionals employed under § 327; thus both cases are inapposite to the facts and issues presented here.[8]

BGD does not dispute that it failed to disclose its prior representation of Centrecourt in its initial disclosures. Under the Bankruptcy Code, counsel seeking employment under § 327 has a continuing duty to disclose any adverse interest throughout its employment on behalf of the estate. *In re Granite Partners, LP*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998) ("Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free."). BGD met its duty of continued disclosure, which in turn, gives rise to the Court's obligation to revisit the propriety of counsel's engagement.

BGD is correct that the burden of proof is on the movants as the parties seeking disqualification of a professional appointed under § 327. *In re Cleveland Trinidad Paving Co.*, 218 B.R. 385, 388 (Bankr. N.D. Ohio 1998). However, the burden is not a heightened one; rather, "[t]hat burden must be borne by a preponderance of the evidence to show that the standards of § 327[(e)] and Rule 2014 have been compromised." *Id.*

---

[8] *Dana Corp.* involved mail fraud and racketeering activity totally outside the bankruptcy context. Although *Valley-Vulcan* involved an adversary proceeding before a bankruptcy court, the disqualification issue concerned counsel for a non-debtor entity which did not require prior approval for employment under § 327.

The narrow issue before the Court is whether BGD holds an interest adverse to the debtors or their estates with respect to the Challenged Adversaries. For the reasons set forth below, the Motion to Disqualify will be granted as to the D&O and USCM Adversaries and denied as to the Nelson Adversary.

A.   **Legal Standards Governing Retention under § 327(e)**

The Employment Order sets forth applicable law interpreting § 327(e). At issue here is the requirement that proposed counsel must not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which counsel is to be employed. *In re West Point Props., L.P.*, 249 B.R. 273, 284 (Bankr. E.D. Tenn. 2000).

"Adverse interest," not defined in the Bankruptcy Code, is often construed to mean:

> (1) to possess . . . an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 461 (Bankr. N.D. Ohio 2003) (quoting *In re Fretter*, 219 B.R. 769, 777 (Bankr. N.D. Ohio 1998)). "[I]nterests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash." *Greystone Holdings*, 305 B.R. at 461 (quoting *In re Caldor, Inc.-NY*, 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996)). In determining whether to disqualify debtors' counsel which had been employed under § 327(a), and addressing whether an actual (as opposed to potential) conflict of interest is required for disqualification, the court in *Leslie Fay* stated:

> Potential conflicts, no less than actual ones, can provide motives for attorneys to act in ways contrary to the best interests of their clients. Rather than worry about the potential/actual dichotomy it is more productive to ask whether a professional has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one."

7

*Leslie Fay*, 175 B.R. at 533 (quoting *Martin,* 817 F.2d at 180–81).   Relying, in part, on *Leslie Fay*, the court in *In re Midway Motor Sales, Inc.*, 355 B.R. 26 (Bankr. N.D. Ohio 2006) stated:

> In determining whether a professional has or represents an "adverse interest," one court observed:   "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate."   *In re The Leslie Fay Cos.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).   An actual conflict exists if there is "an active competition between two interests, in which one interest can only be served at the expense of the other."   *In re BH & P, Inc.,* 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd* in pertinent part, 119 B.R. 35 (D.N.J. 1990).   "As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case."   *In re Amdura Corp.,* 121 B.R. 862, 865 (Bankr. D. Colo. 1990), quoting Collier on Bankruptcy ¶ 327.03 (1985).

*Id*. at 33 (alteration in original) (quoting *In re Git-N-Go, Inc.*, 321 B.R. 54, 58-59 (Bankr. N.D. Okla. 2004)).

Also relevant is § 327(c), which provides:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court *shall* disapprove such employment if there is an *actual conflict of interest*.

11 U.S.C. § 327(c) (emphasis added); *see also In re Polaroid Corp.*, 424 B.R. 446, 453 (Bankr. D. Minn. 2010) (stating § 327(c) "applies generally to all employment under § 327" and applying § 327(c) to its analysis of employment of counsel under § 327(e)).   Here, "clearly, the 'actual conflict of interest' that [§ 327(c)] references must be analyzed in the narrower context of § 327(e)."   *Id.* at 453.

**B.     Application of Law to Challenged Adversaries**

    1.     <u>The D&O Adversary</u>

The defendants in the D&O Adversary, John Collins, John Whitt, Kenneth Whitt, Robert Gabbard and Michael Windisch (collectively, the "D&O Defendants"), are former officers and/or

8

directors of U.S. Coal.   Spradlin generally asserts the D&O Defendants breached their fiduciary duties to U.S. Coal and the other debtors to ensure that their personal interests, as well as those of the CAM and ECM Entities,[9] were preserved and enhanced to the detriment of the debtors and other creditors.   Spradlin specifically asserts that the D&O Defendants improperly granted control of the debtors to the CAM Entities by causing or permitting U.S. Coal to enter into an Advisory Services Agreement with Centrecourt.   She contends this resulted in U.S. Coal and JAD entering into the Equipment Transaction.   In short, she claims the debtors overpaid for the equipment in the Equipment Transaction.

The D&O Adversary originally asserted that the CAM Entities made false representations and withheld material information regarding the value and condition of the equipment and that the D&O Defendants breached their duties by: (i) failing to properly investigate; (ii) allowing the CAM Entities to control debtors; and/or (iii) acquiescing in the CAM Entities' actions.   After the Motion to Disqualify was filed, Spradlin amended the D&O Adversary complaint, with the D&O Defendants' consent, to remove the allegations that the CAM Entities made false representations and/or withheld material information as to the value of the equipment.   Spradlin still asserts that the D&O Defendants improperly permitted the CAM Entities, including Centrecourt, to obtain and exercise control over debtors and the D&O Defendants violated their fiduciary duties by failing to ensure that "Centrecourt did not abuse its dual position of controlling the Debtors and providing services to Debtors under the Advisory Services Agreement" and by failing to properly investigate the background or value of the equipment prior to purchasing it from Centrecourt.   [Second Am. Compl. ¶¶ 39-48, D&O AP ECF No. 36.]

Spradlin and BGD contend that the removal of the allegations that Centrecourt made false representations/withheld material information in connection with the Equipment Transaction,

---

[9] Neither the CAM Entities nor the ECM Entities are named defendants in any of the Challenged Adversaries.

coupled with the fact that none of the Objecting Creditors are defendants therein, removes the taint of any adverse interest BGD may have had and it should not now be disqualified from representing Spradlin in the D&O Adversary.

The UST and Objecting Creditors disagree, asserting the Equipment Transaction and Centrecourt's alleged improper conduct in controlling debtors remain significant issues in the D&O Adversary and BGD's attorneys may be put in a position of becoming witnesses in the action. BGD claims the scope of its representation in the Equipment Transaction was to merely document the previously negotiated transaction; however, the Objecting Creditors insist that BGD's representation of the CAM Entities was much more extensive. The CAM Entities contend BGD represented them in connection with two complicated loan transactions, which included the Equipment Transaction. The Objecting Creditors contend that BGD's representation involved numerous documents including a secured note, stock put agreements, mortgages and leasehold mortgages, intercreditor agreements and a variety of other documents— some of which were drafted by BGD and others which were reviewed by, commented on and/or negotiated by BGD. The D&O complaint further avers that the USCM investment, discussed *infra* pp. 13-15, also represents impermissible control of the U.S. Coal board.[10] [Second Am. Compl. ¶¶ 93-101, 198-202.]

BGD describes its representation of Centrecourt as follows:

> [BGD's] work [representing Centrecourt] began in May, 2008, and involved review for two loans and various financial and other documents related to the previously negotiated Equipment Sale. [BGD] did nothing more than document the transaction approved by the Debtors and its client before the representation began. The documentation involved detailed financing and related agreements

---

[10] At the hearing, when asked about its position with respect to BGD's representation of Spradlin in the USCM Adversary, counsel for the CAM Entities advised the Court that their position was the same with respect to "any of the adversary proceedings where the legitimacy of the transaction documents that [the CAM Entities] entered into will become an issue, [the CAM Entities have] a real problem with the lawyers who represented them in connection with drafting, negotiating and finalizing those documents standing up in this Court and saying that they were a problem. [Hr'g Tr. 23:12-18, ECF No. 2091.]

10

>and spanned about six months.  Although the [CAM] Entities suggest that [BGD] "served as counsel to the [CAM] Entities in connection with multiple transactions, not just the Equipment Transaction," this is simply incorrect.  As the non-privileged documents produced in these proceedings show, there were multiple financing documents and other agreements among the [CAM] Entities and some of the Debtors that arose directly out of, and relate to, the broadly defined Equipment Transaction.  But, [BGD] never advised the [CAM] Entities on general matters involving the Debtors; and, all work from May, 2008 through December, 2008 (the only time frame involving [BGD's] representation of the [CAM] Entities) involved, in some fashion, local counsel for the Equipment Transaction.

[BGD Obj. ¶ 11.]

Clearly, the parties dispute the scope of BGD's involvement in the 2008 transactions between the debtors and the CAM Entities.  When asked at the hearing whether evidence as to the scope of BGD's prior representation of Centrecourt was necessary to resolve the Motion to Disqualify, counsel for BGD stated his belief that an evidentiary hearing was unnecessary because the "scope of [BGD's] representation doesn't affect whether we are adverse to CAM anymore because we're not.  And we're not adverse to the former client in the context of any of these challenged AP's."  [Hr'g Tr. 51:5-16, ECF No. 2091.]

In support, BGD argues that Kentucky state ethical rules governing attorneys' conduct vis-à-vis former clients authorizes its representation of Spradlin in the Challenged Adversaries because Centrecourt is not named as a defendant in those actions.  [BGD Obj. ¶¶ 22-35.] However, the issue here is not whether BGD is adverse to the CAM Entities as it might be if the matter is reviewed only under state ethical rules; but rather, whether under § 327(e), BGD holds an interest adverse to the *debtors or their estates*.  "[I]n the bankruptcy context we are not constrained simply by the Code of Professional Responsibility but by the Bankruptcy Code itself." *Leslie Fay*, 175 B.R. at 538.  Resolution of that question does not revolve merely around the identity of the named defendants.

The Court agrees that an evidentiary hearing on the scope of BGD's representation is unnecessary.  While the Court is mindful of the potential abuse of disqualifications based on

11

notice pleadings, under the unique procedural posture and factual underpinnings of this case, further litigation of the Motion to Disqualify will not assist in its resolution and is not in the best interests of the within estates. Like the notion of an emerging conflict discussed in *Leslie Faye*, 175 B.R. at 532, the supplemental disclosures, coupled with the allegations in the D&O Adversary, have morphed a hypothetical or theoretical conflict into an adverse interest within the meaning of § 327(e). Although a merits decision in the subject adversaries may resolve whether BGD is a witness in the adversaries or has other consequences for its services,[11] the Court may and should make this determination based on the supplemental disclosures, pleadings, the parties' declarations and a review of the record as a whole. *In re Bullitt Utilities, Inc.*, 558 B.R. 181, 185 (Bankr. W.D. Ky. 2016) (citing *Midway Motor Sales*, 355 B.R. at 33) (In employing the *Midway Motor Sales* test to determine whether an actual conflict exists, "the Court considers the interplay of the parties, pleadings and the record set forth in the proceeding.").

The record shows a legitimate dispute regarding the nature and extent of the relationship between the debtors, their officers and directors and Centrecourt and whether that relationship led to the alleged breaches described in the D&O complaint. Clearly, BGD represented Centrecourt's interest in complex loan and related agreements involving the debtors. It does not matter whether BGD was local or lead counsel, whether it negotiated the terms of the transactions, or whether it drafted original documents or merely reviewed documents. By its own statements, it represented Centrecourt's interest in "detailed financing and related agreements." BGD now seeks to represent a party to challenge, not only the Equipment Transaction, but the entire transaction involving two loans and various financial and other documents, of which the equipment sale was a

---

[11] The Court accords no weight to the arguments suggesting that BGD may become a target for a lawsuit and/or disciplinary action instigated by the CAM Entities. [*See* Hr'g Tr. 54:4-11]. *Cf. In re Filene's Basement, Inc.*, 239 B.R. 850, 858 (Bankr. D. Mass. 1999) (considering possibility of malpractice action against proposed counsel as creating potential conflict in representing debtor in case that might involve interpretation of contracts drafted by counsel on behalf of debtor and creditor).

12

part. The theory to set aside the transactions is based, in part, on allegations that BGD's former client, Centrecourt, abused its power causing the D&O Defendants to breach their fiduciary duties in relinquishing control of the debtors. It is this central dispute, the alleged ceding of authority by the D&O Defendants as a result of their relationship with Centrecourt, which puts BGD in a direct conflict position.

The Court finds it is plausible that BGD's prior representation of Centrecourt may cause BGD to act differently.[12] At the very least, representing Spradlin in the D&O Adversary requires BGD to challenge the Equipment Transaction, the subject matter of the services it provided to its former client. *Cf. Filene's Basement*, 239 B.R. at 858 (counsel held an actual adverse interest and was disqualified from representing debtor under § 327(a) where contracts prepared by counsel for both debtor and creditor were the subject of litigation and lawsuit involved the interpretation of those contracts and possible testimony by counsel). The Court finds BGD holds an interest adverse to the estates with respect to the D&O Adversary and is disqualified from representing Spradlin in that action.

  2. <u>The USCM Adversary</u>

The above analysis applies with equal force to the USCM Adversary. The sole defendant, USC Management, LLC ("USCM"),[13] was incorporated on September 30, 2009. The complaint challenges U.S. Coal's management's (including the D&O Defendants' defined above) actions in granting themselves $800,000 from U.S. Coal for investment in USCM. The complaint avers USCM's formation was an improper vehicle for U.S. Coal's management to invest in East Coast Miner LLC, a primary lender to U.S. Coal. U.S. Coal's management was allegedly given such interest to incentivize them to favor lender ECM over other U.S. Coal creditors. Spradlin asserts

---

[12] The amendment of the D&O complaint which BGD claims removes any taint of conflict may be one example of BGD acting differently.

[13] USCM's incorporator, Dean Hunt, was originally a named defendant but was voluntarily dismissed, with prejudice, on August 30, 2016.

U.S. Coal was insolvent when the funds were transferred, and U.S. Coal was not indebted to USCM, not obligated to fund management's interest in USCM, and received no value from funding USCM. Spradlin seeks to avoid the $800,000 transfer as a fraudulent conveyance under the Bankruptcy Code and state law. As reviewed above, the allegations regarding the formation, capitalization and alleged improper purpose for which USCM was organized serve as an additional basis for Spradlin's claims asserted against the D&O Defendants in the D&O Adversary.

USCM's answer, filed subsequent to the hearing on the Motion to Disqualify, states:

> USCM admits that U.S. Coal partially capitalized USCM by contributing $800,000, which was in turn invested in ECM. USCM avers that certain resulting interests in USCM were granted, after a specified vesting period and as incentive compensation, to certain U.S. Coal employees.

[Answer & Affirmative Defenses of USCM ¶ 17, USCM AP ECF No. 24.]

The UST's Motion states that during BGD's representation of U.S. Coal, BGD prepared a restricted company interest agreement granting John Collins, one of the D&O Defendants, a membership interest in USCM as "incentive compensation." The UST argues the complaint against USCM puts BGD in the position of having to argue that a transaction in which it performed the legal work was improper. BGD denies it was involved in the formation or capitalization of USCM or that it prepared a restricted company interest agreement *at that time*. However, BGD concedes it prepared a restricted company interest agreement for U.S. Coal *after* Collins and others were granted a membership interest in USCM, stating:

> <u>After these grants occurred</u>, Ernst & Young, who was providing tax advice to U.S. Coal, raised questions on how the U.S. Coal portion of the capitalization should be characterized for tax purposes. Issues arose as to whether U.S. Coal could invest in its own debt, and whether U.S. Coal should be taxed on future distributions from ECM to USC Management since the membership interests funded by U.S. Coal did not immediately vest in the individuals. At the prompting of Ernst & Young, U.S. Coal asked [BGD] to advise it on such tax issues. [BGD] recommended to U.S. Coal, and prepared for U.S. Coal, a Restricted Company Interest Agreement to address the tax complications of the company's previous grants that provided the investment in USC Management. This work was done solely on behalf of U.S. Coal.

14

[BGD Obj. ¶ 12 (emphasis in original).]

Regardless of the timing or reasons surrounding the preparation of the agreement, the adversary puts BGD in the position of challenging transactions which it reviewed and acted upon, even "if only" for tax purposes. For the same reasons set forth above, BGD holds an interest adverse to the estates with respect to the USCM Adversary and is disqualified from representing Spradlin with respect thereto.

    3.    <u>The Nelson Adversary</u>

In the Nelson Adversary, Spradlin seeks to avoid and recover as a fraudulent conveyance approximately $1.8 million debtors paid to The Nelson Law Firm, LLC ("Nelson Firm") for legal services rendered to the ECM Entities. The general factual underpinnings for the claims are allegations that the Nelson Firm represented the ECM Entities in various state court lawsuits, in at least one of which it appears the ECM Entities and U.S. Coal were co-defendants. However, U.S. Coal had its own counsel in these matters, Nixon Peabody LLP, and Spradlin alleges the debtors received no consideration for the payment of the Nelson Firm's fees.[14] The complaint generally alleges the ECM Entities' improper influence over U.S. Coal as one basis for the alleged improper fee payment.[15]

Only the ECM Entities request BGD's disqualification in the Nelson Adversary; neither the UST nor any other party[16] join in this aspect of the disqualification motion.

Although their position is not entirely clear, the ECM Entities appear to suggest that BGD is disqualified from representing Spradlin in this adversary because for many years BGD served as

---

[14] The Trustee has also sued the ECM Entities in a separate proceeding to recover some of the same fees and concedes she may only have a single satisfaction of these claims. [Compl. ¶ 4, Nelson AP ECF No. 1.]

[15] Spradlin acknowledges that debtors may have been obligated to indemnify the ECM Entities for fees and expenses related to certain loan documents and financing transactions, but that amount is minimal.

[16] The CAM Entities joined in the objection of the ECM Entities generally, but did not provide any specific arguments as to BGD's disqualification in the Nelson Adversary. At the hearing, the CAM Entities' counsel advised the Court that its client did not have a position on BGD's disqualification in the Nelson Adversary.

general counsel for U.S. Coal and BGD is now challenging the actions of debtors' officers and directors in suing the Nelson Firm.  There is no suggestion that BGD ever represented the ECM Entities, the alleged beneficiary of the transfers at issue in the Nelson Adversary.  Further, as conceded by counsel for the ECM Entities and unlike the D&O and USCM Adversaries, BGD was not directly involved in the transactions which are the subject of the Nelson Adversary.  Essentially, the ECM Entities contend that BGD's role as general counsel is enough to warrant disqualification.  The Court disagrees.

As reviewed above, disqualification under § 327(e) requires an adverse interest in the matter on which counsel is to be employed.  The ECM Entities, as the party with the burden of proof, have failed to provide any factual or legal basis upon which this Court can find that BGD has an "actual conflict" or represents or holds any interest adverse to the debtors or their estates with respect to the Nelson Adversary.  *See* 11 U.S.C. §§ 327(c), (e).

## ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that the U.S. Trustee's Motion to Disqualify is GRANTED and BGD is disqualified from representing Spradlin in the D&O Adversary and the USCM Adversary.

IT IS FURTHER ORDERED that the ECM Entities' request to disqualify BGD from representing Spradlin in the Nelson Adversary is DENIED.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Wednesday, December 14, 2016
(tnw)